IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF KENTUCKY, LONDON DIVISION

AMANDA HOSKINS and JONATHAN
TAYLOR,

           Plaintiffs,

           v.

KNOX COUNTY, ET AL.,

           Defendants.

Case No. 17-CV-84

Hon. DAVID L. BUNNING
Mag. HANLY A. INGRAM

JURY TRIAL DEMANDED

**PLAINTIFFS' CONSOLIDATED RESPONSE TO INDIVIDUAL
KENTUCKY STATE POLICE DEFENDANTS' MOTIONS TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION .................................................................................5

FACTS ..................................................................................................6

LEGAL STANDARD ...........................................................................6

ARGUMENT .......................................................................................7

I.    PLAINTIFFS' MALICIOUS PROSECUTION CLAIMS AGAINST THE DEFENDANTS AS ALLEGED IN COUNTS I AND VIII ARE TIMELY ....................................................................................8

II.   PLAINTIFFS' REMAINING CLAIMS ARE TIMELY ...............................9

      A.    Plaintiffs' Claims Did Not Accrue Until All Charges Were Dismissed ...............................................................................10

      B.    *Wallace v. Kato* is Not Controlling Because It Dealt With Pre-Legal Process Arrest. ..................................................................11

      C.    Supreme Court Precedents Dictate That Accrual Is Delayed Until the Termination of the Criminal Case. ........................................12

            1.    Preiser Establishes Habeas As the Exclusive Remedy for Challenges to State Confinement .................................................13

            2.    Heck Extends the Principle to Damages Actions Under §1983 That Necessarily Require Proof That Confinement Is Unlawful .................................................16

            3.    The Other Supreme Court Decisions Allocating Constitutional Claims Between Habeas and §1983 Re-affirm These Same Principles ....................................17

            4.    Applying Supreme Court Precedents to Plaintiffs' Claims Demonstrates That They Did Not Accrue Until the Termination of the Criminal Case ....................................21

      D.    Analogizing Plaintiffs' Claims to Common-Law Torts Confirms the Conclusion That Claims Accrue at the Termination of the Criminal Case... ....................................22

E.    *Wallace's* Statement about *Heck* Does Not Dictate A Different Result..................................................................25

F.    Plaintiffs Allege That Defendant Officers' Misconduct Continued Until Charges Were Dismissed...............................27

III.    **PLAINTIFFS' DUE PROCESS CLAIMS AS ALLEGED IN COUNT II OF THE COMPLAINT ARE PROPERLY PLED.**.................29

A.    Plaintiffs' Fabrication Claims are Actionable Without a Conviction.................................................................30

B.    The Sixth Circuit Instructs that Plaintiffs' Fabrication Claims Are Not Subsumed by Malicious Prosecution Claims. .........................35

IV.    **PLAINTIFFS'CONSPIRACY CLAIM AS ALLEGED IN COUNT V OF THE COMAPLAINT IS PROPERLY PLED** .......................38

V.    **PLAINTIFFS' MALICIOUS PROSECUTION CLAIMS AS ALLEGED IN COUNTS I AND II OF THE COMPLAINT ARE PROPERLY PLED** .......................................41

A.    Plaintiffs Have Sufficiently Alleged Favorable Termination...............42

B.    Plaintiffs Have Sufficiently Alleged that the Defendants Are Liable for Malicious Prosecution. .............................48

C.    Defendants Fallback Malicious Prosecution Arguments Are Without Merit...............................................52

VI.    **PLAINTIFFS' FAILURE TO INTERVENE CLAIM AS ALLEGED IN COUNT IV OF THE COMAPLAINT IS PROPERLY PLED** .............55

VII.    **DEFENDANTS JOHNSON, MEFFORD, FARRIS, AND JOSEPH ARE NOT ENTITLED TO QUALIFIED IMMUNITY UNDER FEDERAL LAW** .....................................58

A.    It Was Clearly Established Long Before 2010 that Defendants' Misconduct Violated the Constitution .................................59

B.    For All Reasons Discussed Above, Defendants Violated Plaintiffs' Clearly Established Constitutional Rights...........................60

**VIII.  DEFENDANTS JOHNSON, MEFFORD, FARRIS, AND JOSEPH ARE NOT ENTITLED TO QUALIFIED IMMUNITY UNDER STATE LAW**..................................................................................................61

**CONCLUSION**.........................................................................................................63

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF KENTUCKY, LONDON DIVISION

| | | |
|---|---|---|
| AMANDA HOSKINS and JONATHAN TAYLOR, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 17-CV-84 |
| v. | ) ) ) | Hon. DAVID L. BUNNING Mag. HANLY A. INGRAM |
| KNOX COUNTY, ET AL., | ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

**PLAINTIFFS' CONSOLIDATED RESPONSE TO INDIVIDUAL
<u>KENTUCKY STATE POLICE DEFENDANTS' MOTIONS TO DISMISS</u>**

NOW COMES Plaintiffs, AMANDA HOSKINS AND JONATHAN
TAYLOR, by their attorneys LOEVY & LOEVY, and respectfully file this
Consolidated Response to Individual Kentucky State Police Defendants'
(Dallas Eubanks, Jason Bunch, Jason York, Mark Mefford, Bryan Johnson,
Kelley Farris, and Jacqualine Joseph) Motions to Dismiss. In response,
Plaintiffs state as follows:

**INTRODUCTION**

This case stems from the wrongful prosecution of Amanda Hoskins and
Jonathan Taylor, and their subsequent imprisonment for nearly a combined
decade of their lives, for a crime they did not commit.  Ms. Hoskins and Mr.
Taylor allege that they were framed for this crime by officers from the City of
Barbourville's Police Department, Knox County Sheriff's Department, and
the Kentucky State Police, in violation of their rights under the U.S.

Constitution and Kentucky law.  In the absence of this misconduct, Plaintiffs would not have been prosecuted.

Plaintiffs have sufficiently alleged that the Defendants violated their Fourth, Fourteenth, and other constitutional rights, as well as their rights under state law.  Defendants' motions to dismiss largely ignore the allegations in the complaint, rely on facts outside the complaint, and cite inapplicable law.  For the reasons discussed below, Defendants' Johnson, Mefford, Farris, Joseph, York, Bunch, and Dallas Eubanks motions to dismiss should be denied.

## FACTS

In 198 paragraphs, the Complaint alleges in detail how Defendants' misconduct violated Plaintiffs' constitutional and state law rights and caused their wrongful prosecutions.  Dckt. No. 1 (Complaint).  Instead of reiterating the Complaint's extensive narrative in their brief, Plaintiffs incorporate their allegations here by reference.  They discuss the Complaint in detail below as necessary to respond to Defendants' particular arguments.

## LEGAL STANDARD

To state a claim upon which relief can be granted, Plaintiffs' complaint need only contain "a short and plain statement of the claim showing that [the plaintiff] is entitled to relief." FED R. CIV. P. 8(a)(2). The "pleading standard Rule 8 announces does not require 'detailed factual allegations,'" only "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, as Rule 8 provides, "the complaint need not set out the facts in detail," *Williams v. Duke Energy Int'l, Inc*., 681 F,3d 788, 799 (6th Cir. 2012), and a complaint may only be dismissed "if it is clear that no violation of a clearly established constitutional right could be found under any set of facts that could be proven consistent with the allegations or pleadings." *Ortega v. U.S. Immigration & Customs Enforcement*, 737 F.3d 435 (6th Cir. 2013) (quoting *Jackson v. Schultz*, 429 F.3d 586, 589 (6th Cir. 2005)).

In reviewing a motion to dismiss, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir.2008).

## ARGUMENT

The Defendants' Motion to Dismiss contends the following:  (1) that Plaintiffs' claims are untimely under Kentucky law; (2) that Plaintiffs' Complaint fails to assert a conspiracy claim; (3) that Plaintiffs' malicious prosecution claims fail as a matter of law; (4) that Plaintiffs fail to properly assert an intentional infliction of emotional distress claim; (5) that Plaintiffs' failure to intervene claim fails as a matter of law; (6) and that Defendants

Johnson, Mefford, Farris and Joseph are entitled to qualified immunity. For the following reasons, Defendants' motions must be denied[1].

## I. PLAINTIFFS' MALICIOUS PROSECUTION CLAIMS AGAINST THE DEFENDANTS AS ALLEGED IN COUNTS I AND VIII ARE TIMELY

To the extent that the Defendants' motions can be construed as arguing that Plaintiffs' malicious prosecution claims are time-barred, such an argument would be misplaced. *See* Dckt. No. 39-1 at 4. "In short, under *Heck*, a malicious-prosecution claim is not available before the favorable termination of criminal proceedings, nor does the limitations period for such a claim begin until the favorable termination of criminal proceedings." *King v. Harwood*, 852 F.3d 568, 579 (6th Cir. 2017). For Mr. Taylor, his criminal charges were dismissed on June 30, 2016. *See* Dckt. No. 1 at ¶ 130. The criminal charges against Ms. Hoskins were dismissed on August 22, 2016. *See* Dckt. No. 1 at ¶ 131. Because the earliest dismissal of charges occurred on June 30, 2016, accrual did not begin until that date. *King v. Harwood*, 852 F.3d 568, 579 (6th Cir. 2017). Plaintiffs' Complaint, filed on April 5, 2017, is well within the one-year statute of limitations, and as a result, the Defendants' arguments must be denied.

---

[1] Plaintiffs' hereby voluntarily dismiss without prejudice their state-law claim for Intentional Infliction of Emotional Distress, as alleged in Count X, against Defendants York, Johnson, Mefford, Dallas Eubanks, Farris, Pickrell, and Bunch.

## II. PLAINTIFFS' REMAINING CLAIMS ARE TIMELY

Because the statute of limitations is an affirmative defense, Plaintiffs need not plead the lack of affirmative defenses to state a valid claim. Fed.R.Civ.P. 8(a); *Cataldo v. U.S. Steel Corp.* 676 F.3d 542, 547 (6th Cir. 2012). Thus, Defendants are not entitled to relief on the pleadings. *Id*.; *U.S. v. Northern Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004). For this reason, a motion to dismiss, "which considers only the allegations in the complaint, is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations." *Cataldo v. U.S. Steel Corp.* 676 F.3d 542, 547 (6th Cir. 2012). In fact, a district court may only dismiss a complaint on statute of limitations grounds when "the allegations in the complaint affirmatively show that the claim is time-barred." *Id*.; *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004); *see also Foss v. Bear, Stearns & Co.*, 394 F.3d 540, 542 (7th Cir. 2005)("Unless the complaint alleges facts that create an ironclad defense, a limitations argument must await factual development.").

In this case, the facts alleged in Plaintiffs' complaint do not establish that Defendants have a statute of limitations defense. Instead, Plaintiffs' Complaint includes allegations that refute any statute of limitations defense, namely: (1) that the earliest charges which form the basis for Plaintiffs' Complaint were not dismissed until June 30, 2016; and (2) that the Defendant Officers continued for more than four years to manipulate and

9

conceal evidence in an effort to secure Plaintiffs' wrongful incarceration for crimes they did not commit.

### A. Plaintiffs' Claims Did Not Accrue Until All Charges Were Dismissed

The Defendants argue that Plaintiffs' claims are time-barred. *See* Dckt. No. 39-1 at 4-8; Dckt. No. 36-2 at 5-7. In their view, Plaintiffs' claims against the Defendants were made outside the one-year statute of limitations. The Defendants, however, conveniently ignore when the underlying criminal charges which form the basis of Plaintiffs' Complaint were dismissed. The Defendants also forget that the Plaintiffs were barred from filing suit for the violation of their due process rights, under *Heck v. Humphrey*, until the criminal case was resolved. As such, the Defendants' arguments must be denied.

To begin, the Defendants rely almost exclusively on Fourth Amendment false arrest cases to support their argument that Plaintiffs' claims begin to accrue at the time of the underlying misconduct. *See* Dckt. No. 39-1 at 5-6; Dckt. No. 36-2 at 5. In support, Defendants cite *Wallace v. Kato*, 549 U.S. 384 (2007), which held that a Fourth Amendment false arrest claim accrues at the time of arrest. Such a strategy is misplaced because there is a vital distinction between *Wallace* and this case: *Wallace* concerned detention before legal process, whereas this case concerns detention after legal process. That distinction is a critical difference when it comes to accrual of Plaintiffs' due process claims. As is discussed in further below,

Plaintiff's claims accrued when the legal proceedings against them were terminated, and those claims are therefore timely.

### B. *Wallace v. Kato* is Not Controlling Because It Dealt With Pre-Legal-Process Arrest

*Wallace v. Kato* concerned a juvenile who was arrested and gave a confession to a murder in 1994. Wallace was indicted, and after an unsuccessful pre-trial attempt to suppress his confession, he was convicted of murder and sentenced to 26 years. In 2002, approximately 8 years after Wallace's initial arrest, his conviction was reversed and the criminal charges against him were dismissed.

In 2003, Wallace filed a § 1983 civil suit, asserting, among other things, that the officers who arrested him violated his Fourth Amendment rights because his initial arrest was unsupported by probable cause. The issue on appeal was whether Wallace's Fourth Amendment claim for false arrest was time-barred. The City of Chicago argued that the claim accrued when Wallace was arrested in 1994, whereas Wallace argued that under the Supreme Court's decision in *Heck v. Humphrey*, the claim did not accrue until the legal proceedings against him were terminated, in 2002. The Court sided with the City, finding that the claim accrued when Wallace appeared before the magistrate and was bound over for trial. 549 U.S. at 391-92. Whereas the Court in *Wallace* determined the accrual of a claim for detention *before* the commencement of legal process, the claims in this case involve unlawful

detention *after* legal process begins. The importance of this distinction is apparent in the discussion that follows.

### C. Supreme Court Precedents Dictate That Accrual Is Delayed Until the Termination of the Criminal Case

A Section 1983 claim that necessarily implies the right to an immediate or speedier release from post-legal-process state confinement does not accrue until after the litigant has secured termination of the criminal proceeding. The Supreme Court's case line from *Preiser v. Rodriguez*, 411 U.S. 475 (1973), to *Skinner v. Switzer*, 562 U.S. 521 (2011), examines "the respective provinces of § 1983 civil rights actions and § 2254 federal habeas petitions," *Skinner,* 562 U.S. at 525, and the Court repeatedly has directed that where a litigant's claim seeks or necessarily implies the right to an immediate or speedier release from state confinement, habeas corpus is the exclusive remedy and a § 1983 claim is not cognizable.

Unless and until the criminal proceedings terminate in the litigant's favor, no § 1983 action may lie. The policy animating these rules is an abiding commitment to federal-state comity and to the principle that federal actions should not interfere with or re-litigate parallel issues being considered in pending state criminal proceedings.

Consistent with these principles, due process claims that allege that detention pursuant to legal process was secured by misconduct such as fabrication of evidence, which misled a court or grand jury, are within the core of federal habeas. According to Supreme Court precedents, a claim like

12

this should never be allowed where it would interfere with pending state criminal, state post-conviction, or federal post-conviction proceedings. Instead, accrual of § 1983 claims, such as fabrication, conspiracy, and failure to intervene in violation of Plaintiffs' Fourth Amendment and Fourteenth Amendment rights are delayed until the termination of criminal proceedings. A close examination of the Supreme Court's cases in this area reveals that this is the correct answer to the accrual question in this case.

1. *Preiser* **Establishes Habeas As the Exclusive Remedy for Challenges to State Confinement**

*Preiser* considered a § 1983 claim for injunctive relief brought by prisoners deprived of good time credits, who argued that their credits should be reinstated and that they should be released from custody. 411 U.S. at 476-77. Considering the allocation of claims between § 1983 and habeas, the Court concluded the § 1983 claim was not cognizable, holding that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Id.* at 500.

That conclusion was based on a historical examination of the exclusive role habeas has played in attacks on confinement. The Court stressed "that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Id.* at 484; *see also id.* (quoting *Fay v.*

13

*Noia*, 372 U.S. 391, 399 n.5 (1963), for the proposition that habeas is used to "inquir[e] into illegal detention with a view to an order releasing the petitioner"). "Whether the petitioner had been placed in physical confinement by executive direction alone, or by order of a court, or even by private parties, habeas corpus was the proper means of challenging that confinement and seeking release." *Id.* at 484.[2]

The *Preiser* Court listed the types of cases for which a habeas action should be the exclusive remedy:

> [W]hether the petitioner's challenge to his custody is that the statute under which he stands convicted is unconstitutional, as in *Ex parte Siebold*, [100 U.S. 371 (1880)]; that he has been imprisoned prior to trial on account of a defective indictment against him, as in *Ex parte Royall*, 117 U.S. 241 (1886); that he is unlawfully confined in the wrong institution, as in *In re Bonner*, 151 U.S. 242 (1894), and *Humphrey v. Cady*, 405 U.S. 504 (1972); that he was denied his constitutional rights at trial, as in *Johnson v. Zerbst*, [304 U.S. 458 (1938)]; that his guilty plea was invalid, as in *Von Moltke v. Gillies*, 332 U.S. 708 (1948); that he is being unlawfully detained by the Executive or the military, as in *Parisi v. Davidson*, 405 U.S. 34 (1972); or that his parole was unlawfully revoked, causing him to be incarcerated in prison, as in *Morrissey v. Brewer*, 408 U.S. 471 (1972)— in each case his grievance is that he is being unlawfully subjected to physical restraint, and in each case habeas corpus has been accepted as the specific instrument to obtain release from such confinement.

---

[2] Most of the Court's opinion in *Preiser* is devoted to defining the scope of federal habeas actions, and thereby the areas in which § 1983 suits are not appropriate. The Court noted that "[b]y the time the American Colonies achieved independence, the use of habeas corpus to secure release from unlawful physical confinement, whether judicially imposed or not, was . . . an integral part of our common-law heritage." 411 U.S. at 485. By the time the Court decided *Preiser*, "the writ of habeas corpus [had] evolved as a remedy available to effect discharge from any confinement contrary to the Constitution or fundamental law[.]" *Id.*

14

*Preiser*, 411 U.S. at 486. It is worth emphasizing that in this passage, the Court states explicitly that habeas corpus—and not § 1983—is the exclusive avenue for a claim that a person "has been imprisoned prior to trial" in violation of the Constitution. *Id.* (citing *Ex parte Royall*, 117 U.S. 241 (1886)).[3]

Though the claims listed in the paragraph above fell technically within the language of § 1983, the Court concluded that "the specific federal habeas corpus statute, explicitly and historically designed to provide the means for a state prisoner to attack the validity of his confinement, must be understood to be the exclusive remedy[.]" 411 U.S. at 489; *see also id.* at 490 ("In short, Congress has determined that habeas corpus is the appropriate remedy for state prisoners attaching the validity of the fact or length of their confinement, and that specific determination must override the general terms of § 1983."). Because the claim for restoration of good time credits sought a speedier release from custody, it fell "squarely within this traditional scope of habeas corpus" and could not be pursued under § 1983. 411 U.S. at 487.

Driving the point home, the Court wrote that the policy reason justifying its holding was "avoid[ing] the unnecessary friction between the federal and state court systems that would result if a lower federal court upset a state court conviction without first giving the state court system an

---

[3] *Ex parte Royall* concluded that federal courts have jurisdiction to consider petitions for habeas corpus concerning illegal pretrial detention in violation of the Constitution, but it held that state prisoners can be required to exhaust state remedies before seeking federal relief. 117 U.S. at 247-48, 251-53.

opportunity to correct its own constitutional errors." 411 U.S. at 490. As a matter of state comity, then, *Preiser* carved out from the purview of § 1983 those claims that attack state confinement, which are traditionally the subject of habeas litigation.

### 2. *Heck* Extends the Principle to Damages Actions Under § 1983 That Necessarily Require Proof That Confinement Is Unlawful

*Heck v. Humphrey*, 512 U.S. 477 (1994), applied the principles set out in *Preiser* to a claim for damages, asking whether a prisoner could seek damages under § 1983 for claims that necessarily implied that his conviction was invalid. *Heck*, 512 U.S. at 478. The Court again construed the issue as a question of allocating claims between § 1983 and habeas, noting that the issue was "the same as the issue was with respect to injunctive relief challenging conviction in *Preiser*[.]" *Id.* at 483.

Analogizing Heck's § 1983 claim to the common-law tort of malicious prosecution, which includes termination of the criminal proceeding in favor of the accused as an element, the Court stressed that it "ha[d] generally declined to expand opportunities for collateral attack," *Id.* at 484-85. Further, the Court emphasized the important policy of "'avoid[ing] parallel litigation over the issues of probable cause and guilt,'" and the "'strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transactions [in state and federal court].'" *Id.* at 484 (quoting 8 Speiser, *et al.*, American Law of Torts § 28:5, at 24 (1991)).

16

These comity principles led the Court to reaffirm that § 1983 suits cannot interfere in the traditional province of habeas corpus. The Court thus concluded that "§ 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement" were not cognizable. 512 U.S. at 486. The Court decided that, in order to sue under § 1983

> for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Heck*, 512 U.S. at 486-87. Before favorable termination, while state remedies and perhaps federal habeas are being pursued, the § 1983 claim "has not yet arisen." *Id.* at 489. The civil claim "does not accrue until the conviction or sentence has been invalidated." *Id.* at 489-90.

### 3. The Other Supreme Court Decisions Allocating Constitutional Claims Between Habeas and § 1983 Re-affirm These Same Principles

In a series of cases following *Heck*, the Court has applied these principles to different types of constitutional claims, each time adhering to the principle that § 1983 suits that seek or that would necessarily require release from confinement must wait until termination of the criminal case. Each time the Court has barred litigants from bringing claims under § 1983

17

that fall within the traditional scope of habeas corpus, and each time it has cited federal-state comity as the reason why.

Thus, in *Edwards v. Balisok*, 520 U.S. 641, 643, 648 (1997), the Court concluded that a § 1983 damages claim challenging prison policies that deprived an inmate of good-time credits was not cognizable because it sought a speedier release from custody. Conversely, in *Muhammed v. Close*, 540 U.S. 749, 754-55 (2004), the Court considered a § 1983 claim that prison disciplinary proceedings violated the Constitution, and it concluded that because relief on the claim would not necessarily affect the fact or length of the inmate's confinement, it was proper under § 1983. *Muhammed* explained the dichotomy this way: "Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus, *Preiser*[, 411 U.S. at 500]; requests for relief turning on the circumstances of confinement may be presented in a § 1983 action." *Muhammed*, 540 U.S. at 750. When a § 1983 suit falls in the former category, it must wait until "favorable termination of [the litigant's] available state, or federal habeas, opportunities to challenge the underlying conviction or sentence." *Id.* at 751.

These rules were again discussed in *Nelson v. Campbell*, 541 U.S. 637, 644-47 (2004), in which the Court considered a § 1983 deliberate indifference challenge brought by a death row inmate to enjoin use of the "cut-down procedure" that Alabama intended to use to assist in his execution. The Court concluded that the claim was cognizable, and it noted that its holding was

18

consistent with the principle that § 1983 damages actions are permissible where they do not interfere in the traditional province of habeas. *Id.* at 646-47. The Court confirmed the policy underlying its rule that § 1983 suits concerning confinement must wait until after termination of criminal proceedings, writing: "This 'favorable termination' requirement is necessary to prevent inmates from doing indirectly through damages actions what they could not do directly by seeking injunctive relief—challenge the fact or duration of their confinement without complying with the procedural limitations of the federal habeas statute." *Id.* at 646-47.

In *Wilkinson v. Dotson*, 544 U.S. 74 (2005), the Court considered a § 1983 challenge brought by inmates to Ohio's parole procedures. *Id.* at 78. The Court started with the proposition "that a prisoner in state custody cannot use a § 1983 action to challenge 'the fact or duration of his confinement.' . . . He must seek federal habeas corpus relief (or appropriate state relief) instead." *Id.* The Court noted that "considerations of linguistic specificity, history, and comity [underlying federal habeas] led the Court to find an implicit exception from § 1983's otherwise broad scope for actions that lie 'within the core of habeas corpus.'" *Id.* at 79. And summarizing its past cases, the Court reiterated:

> Throughout the legal journey from *Preiser* to *Balisok*, the Court has focused on the need to ensure that state prisoners use only habeas corpus (or similar state) remedies when they seek to invalidate the duration of their confinement—either *directly* through an injunction compelling speedier release or *indirectly* through a judicial

19

> determination that necessarily implies the unlawfulness of the State's custody.
>
> *  *  *
>
> These cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief) . . . —*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.

*Id.* at 81-82. Because the claims in *Wilkinson* concerned parole procedures and did not seek an order that would require speedier release from confinement, the Court held that they were cognizable under § 1983. *Id.* at 82.

In *Wallace v. Kato*, discussed above, the Supreme Court considered a Fourth Amendment damages claim brought under § 1983 that concerned the legality of an arrest by police prior to legal process. 549 U.S. at 386-87 & n.1 ("We expressly limited our grant of certiorari to the Fourth Amendment false-arrest claim."); *see also id.* at 389 ("[T]he allegations before us arise from [the defendants'] detention of [the plaintiff] *without legal process* [.]"). The Court held that because the false arrest and imprisonment claims at issue by their very nature concerned only the period of seizure by police prior to legal process issuing, *id.* at 389-90, those claims did not interfere with any pending criminal proceeding or conviction and thus were cognizable under § 1983. *Id.* at 391-96.[4]

---

[4] The holding of *Wallace* reaches no further than this. Everything else in the *Wallace* opinion regarding the reach of *Heck* is *dicta*. That *dicta* is discussed below.

Finally and most recently, the Supreme Court in *Skinner v. Switzer*, 562 U.S. 521, 525 (2011), held that a prisoner could pursue post-conviction DNA testing under § 1983. Because the results of DNA testing did not "necessarily spell speedier release," habeas was not the exclusive remedy and the suit could move forward under the civil rights act. *Id.* "In no event," wrote the Court, "will a judgment that simply orders DNA tests 'necessarily impl[y] the unlawfulness of the State's custody.'" *Id.* (quoting *Dotson*, 544 U.S. at 81).

### 4. Applying Supreme Court Precedents to Plaintiffs' Claims Demonstrates That They Did Not Accrue Until the Termination of the Criminal Case

The Supreme Court's decisions allocating claims between habeas and § 1983 set out clear rules grounded in long-standing policy. Among them, comity requires that federal litigation under § 1983 steer clear of re-litigating parallel issues being considered by the state courts. Federal civil rights cases should similarly not interfere with pending state criminal proceedings and judgments. If a constitutional claim falls within the traditional scope of federal habeas, then habeas is the exclusive remedy and a § 1983 claim is unavailable. In that vein, a claim that seeks a speedier release from state confinement is one that must be brought in habeas. And as a result, a § 1983 claim that necessarily attacks state confinement post-legal-process cannot be brought until the termination of criminal proceedings.

Plaintiffs' due process claims for the Defendants' fabrication of evidence are claims that necessarily interfere with state criminal

21

proceedings. The same is true for Plaintiffs' conspiracy and failure to intervene claims. Litigating these violations in federal court while the same issue is litigated in the state court would turn the principles just discussed on their head. As a result, Plaintiffs' claims accrue at the termination of the criminal proceeding.

### D. Analogizing Plaintiffs' Claims to Common-Law Torts Confirms the Conclusion That Claims Accrue at the Termination of the Criminal Case

The conclusion that Plaintiffs' claims accrue with the termination of criminal proceedings is confirmed by another approach that the Supreme Court has taken to determine accrual rules under § 1983: analogizing the claim at issue to the most similar common-law tort. The *Wallace* Court held that "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." 549 U.S. at 388. Instead, accrual of federal civil rights claims is "governed by federal rules conforming in general to common-law tort principles." *Id.*

According to the Defendants' own motions, the closest common-law analogue to Plaintiffs' § 1983 fabrication claims is a claim of malicious prosecution. *See* Dckt. No. 36-2 at 7; Dckt. No. 39-1 at 8. As in *Heck*, this analogy means that the claim did not accrue until termination of criminal proceedings.

In both *Heck* and *Wallace*, the Court looked to the common-law tort most analogous to the § 1983 claim at issue in order to determine the

appropriate accrual rule. *Heck* considered a claim that a conviction was obtained in violation of the Constitution, and the Court concluded that "[t]he common-law cause of action for malicious prosecution provides the closest analogy . . . because, unlike the related cause of action for false arrest or imprisonment, it permits damages for confinement imposed pursuant to legal process." 512 U.S. at 484. Because damages for illegal imprisonment following legal process were recoverable at common law only in a suit for malicious prosecution, that tort was the best analogy to Heck's claims concerning his conviction and imprisonment. *Id.* Noting that common-law malicious prosecution actions required proof of favorable termination of the criminal proceeding, the Court adopted an accrual rule for Heck's § 1983 suit that similarly required termination of criminal proceedings. *Id.* at 484-87.

The Court in *Wallace* considered a § 1983 claim of false arrest, which was expressly confined to the period of time before a judicial finding of probable cause. 549 U.S. at 386-89 & n.1. Again the Court looked for the best common-law tort analogue, and it concluded that false imprisonment provides the proper analogy to the cause of action asserted against the present [defendants] for the following reason: The sort of unlawful detention remediable by the tort of false imprisonment is detention *without legal process*, . . . and the allegations before us arise from [the defendants'] detention of [the plaintiff] *without legal process* . . . . They did not have a warrant for his arrest.

23

*Id.* at 389. Unlike the tort of malicious prosecution discussed in *Heck*, which required the termination of the criminal proceeding, "a false imprisonment ends once the victim becomes held *pursuant to [legal] process*—when, for example, he is bound over by a magistrate or arraigned on charges." *Id.* As a result, the Court concluded, a Fourth Amendment false arrest claim— concerning the period of time before a judicial determination of probable cause—accrues when legal process issues. *Id.* at 389-90.

Applying this framework to the claims at issue here, it is apparent that the claims at issue here are like *Heck's*—analogous to malicious prosecution—and not like *Wallace's*—analogous to false imprisonment. The sharp dividing line at common law between malicious prosecution and false imprisonment was the issuance of legal process. See 3 W. Blackstone, *Commentaries* \*, 126-27, 138 (describing the royal writ trespass on the case, which was the appropriate form of action for malicious prosecution, and trespass *vi et armis*, which was the form of action for false imprisonment).[5]

---

[5] At common law, a plaintiff claiming unlawful arrest without a warrant or other legal process could challenge its legality only in a suit for false imprisonment, and a plaintiff claiming an illegal seizure pursuant to a warrant or other process had to rely on malicious prosecution. *See, e.g.*, *Morgan v. Hughes*, 100 Eng. Rep. 123, 125-26 (K.B. 1788) ("[A] justice of the peace, who grants a warrant against a person accused, cannot be punished in an action of trespass, though the accusation be false: but if, without any accusation, and knowing the person not to be guilty, he grant his warrant, on which the party is arrested, he is liable to an action on the case by the person unjustly accused."); *Stonehouse v. Elliot*, 101 Eng. Rep. 571, 571-72 (K.B. 1795) (holding that, because a person falsely accused of theft had been brought before a constable who could not initiate legal proceedings, his suit should be for false imprisonment rather than malicious prosecution); *Dinsman v. Wilkes*, 53 U.S. 390, 402 (1852) (Taney, C.J.) (noting that an action against a naval officer who ordered a marine private put in irons for failing to perform his duty had "no analogy

Just like *Manuel*, Plaintiff unambiguously seeks damages for "his (post-legal-process) pretrial detention." *Manuel*, 137 S. Ct. at 919.

### E.  *Wallace*'s Statement About *Heck* Does Not Dictate A Different Result

It is important in this analysis to consider a passing statement in *Wallace*, in which the Court rejected the argument that Fourth Amendment false arrest claims that might "impugn *an anticipated future conviction* cannot be brought until that conviction occurs and is set aside." 549 U.S. at 393; *see also id.* (noting that *Heck* "delays what would otherwise be the accrual date of a tort action until the setting aside *of an extant conviction* which success in that tort action would impugn."). There are a number of reasons that this statement does not warrant a different accrual rule in this case.

At the outset, this statement in *Wallace* must be understood in its context. The question presented in *Wallace* concerned only whether a Fourth Amendment false arrest claim—concerning a seizure before legal process— was timely. 549 U.S. at 386-87 & n.1 ("We expressly limited our grant of

---

to a suit for a malicious prosecution" because no legal process had issued); *Colter v. Lower*, 35 Ind. 285, 286-87 (1871); *Southern R. Co. v. Shirley*, 90 S.W. 597, 599 (Ky. 1906); *Roberts v. Thomas*, 135 Ky. 63, 64 (1909); *Broughton v. State*, 335 N.E.2d 310, 314-15 (N.Y. 1975).

It is worth noting that even an arrest warrant constitutes legal process. *See Cook v. Hart*, 146 U.S. 183, 191 (1892) (discussing an arrest "without warrant or other legal process"); *Gauger v. Hendle*, 349 F.3d 354, 361 (7th Cir. 2003) ("A warrant is legal process, and so a complaint about conduct pursuant to it is a challenge to legal process and thus resembles malicious prosecution."); *Singer v. Fulton County Sheriff*, 63 F.3d 110, 117 (2d Cir. 1995) (in a malicious prosecution suit, "'legal process' will be either in the form of a warrant . . . or a subsequent arraignment").

certiorari to the Fourth Amendment false-arrest claim."); *see also id.* at 389 ("[T]he allegations before us arise from [the defendants'] detention of [the plaintiff] *without legal process*[.]"). The Court decided it was not timely because it had accrued at latest when legal process issued. *Id.* at 397. In that situation, it would be illogical to say from an *ex ante* perspective that because the false arrest might later turn into a false prosecution or conviction, the accrual of that false arrest claim should be delayed (or not) depending on what might (or might not) happen later. That is the point that the Court was making when it refused to apply *Heck* and delay the accrual of Fourth Amendment claims that had already accrued based on an anticipated later event. *Id.* at 392-93. In the end, all that *Wallace* decided is that Fourth Amendment false arrest claims concerning seizures before process accrue when legal process issues and the criminal case begins.

Importantly, *Wallace* did not have occasion to consider at all the accrual of a federal civil claim that attacks a pending state criminal proceeding. Accordingly, on that subject, nothing in *Wallace* upset the longstanding principles on which *Preiser*, *Heck*, and *Wallace* are based. Recall that in *Preiser*, the Supreme Court recognized that claims attacking the legality of pretrial detention were properly the subject of habeas corpus and not a suit under § 1983. 411 U.S. at 486 (stating that habeas is the exclusive remedy where the litigant claims "he has been imprisoned prior to trial") (citing *Ex parte Royall*, 117 U.S. 241). There can be little doubt that a civil

26

suit asserting that a pending criminal proceeding was premised on the
fabrication of evidence, conspiracy, or a failure to intervene would be
actionable only in habeas corpus. Accordingly, such claims, like claims
attacking extant criminal convictions, accrue only after federal habeas
remedies have been satisfied and the criminal proceeding has terminated.

### F.  Plaintiffs Allege That Defendant Officers' Misconduct Continued Until Charges Were Dismissed

Defendants rely on a state-law case in arguing that Plaintiffs' due
process claims accrue at the time of the alleged misconduct, rather than the
dismissal of criminal charges.  *See* Dckt. No. 39-1 at 5; Dckt. No. 36-2 at 5.
Defendants' reliance on such a case is without merit.  Indeed, "the accrual
date of a § 1983 cause of action is a question of federal law that is *not*
resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007)
(emphasis in original); *see also Johnson v. Memphis Light Gas & Water Div.*,
777 F.3d 838 (6th Cir. 2015).

Ironically, although Defendants seek to analogize Plaintiffs' Fourth
and Fourteenth Amendment due process claims to those of false arrest for
statute of limitations purposes, they argue that Plaintiffs' fabrication claims
are akin to *Brady* claims in arguing that Plaintiffs' failed to state a claim.
*See* Dckt. No. 29-1 at 7; Dckt. No. 36-2 at 6 ("due process claims based on
alleged fabrication of false evidence are similar in nature to *Brady*-based due
process claims for alleged suppression or concealment of evidence…").
Another Court in this district has already determined that *Heck* makes clear

that a plaintiff cannot assert a *Brady* claim until the conviction has been
invalidated once and for all. *Cristini v. City of Warren*, No. 07-11141, 2012
WL 5508369, at *18 (E.D. Mich. Nov. 14, 2012). The same holds true here,
Plaintiffs could not pursue due process claims against the Defendants for the
fabrication of evidence until the resolution of their criminal cases. *Id.* As
such, accrual did not begin until the dismissal of criminal charges.

Additionally, although specific pieces of fabricated evidence were noted
within the Complaint, Plaintiffs also alleged that the Defendants
manipulated physical evidence, manufactured false inculpatory evidence, and
lost or destroyed material exculpatory evidence over a five-year period. *See*
Dckt. No. 1 at ¶ 108. The Defendants, in their motion to dismiss,
acknowledge that Plaintiffs' allegations were pled in this manner. *See* Dckt.
39-1 at 6. In doing so, the Defendants implicitly concede that Plaintiffs'
Complaint was adequately pled with regard to statute of limitations.

In an effort to bypass Plaintiffs' allegations that the Defendants
fabricated evidence over a five year period, Defendants contend that the
related paragraphs contained in Plaintiffs' Complaint "lacks specificity" and
as such, should be ignored under *Twombly*. *See* Dckt. No. 39-1 at 6. The
Defendants make such an argument while ignoring the factual predicate of
Plaintiffs' Complaint. Plaintiffs' forty page Complaint lays out in
excruciating detail, through 198 paragraphs, how the Defendants constantly
fabricated evidence over a five year period to frame them for a murder that

28

they did not commit.  *See* Dckt. No. 1.  As stated above, the "pleading

standard Rule 8 announces does not require 'detailed factual allegations,'"

only "more than an unadorned, the-defendant-unlawfully-harmed-me

accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Thus, as Rule 8 provides, "the

complaint need not set out the facts in detail," *Williams v. Duke Energy Int'l,*

*Inc.*, 681 F,3d 788, 799 (6th Cir. 2012).  Here, however, Plaintiffs have laid

out specific instances of fabrication, while also alleging that the Defendants

continued this fabrication for nearly five years.  *See* Dckt. No. 1 at ¶¶ 45-97,

108, 114-125.  As a result, Defendants' motions to dismiss Plaintiffs' claims

on statute of limitations grounds must be denied.

### III.    PLAINTIFFS' DUE PROCESS CLAIMS AS ALLEGED IN COUNT II OF THE COMPLAINT ARE PROPERLY PLED

Although the crux of Defendants' motions seek the dismissal of Plaintiffs'

due process claims on statute of limitations grounds, the Defendants also

make a fallback argument relating to the substance of Plaintiffs' fabrication

claims.  *See* Dckt. No. 36-2 at 6-7; No. 39-1 at 7-8.  In doing so, the Defendants

argue that Plaintiffs' cannot bring a fabrication claim because they were not

convicted.  *See* Dckt. No. 36-2 at 6-7; No. 39-1 at 7-8.  But the Defendants'

arguments ignore the elements of Plaintiffs' fabrication claims and the

longstanding case law that applies.

29

## A. Plaintiffs' Fabrication Claims are Actionable Without a Conviction

Plaintiffs' due process claim for the fabrication of evidence under the Fourth Amendment must survive. Contrary to the Defendants' representation, as a legal matter, a conviction is not an element of a due process claim for fabrication of evidence. The Sixth Circuit recently reaffirmed that a plaintiff need not be convicted in order to have a viable due process claim based upon the fabrication of evidence. *Webb v. U.S.*, 789 F.3d 647, 668-670 (6th Cir. 2015)[6].

In *Webb*, the plaintiff was arrested and later indicted for participating in a drug trafficking scheme. *Id.* at 652. A witness against the plaintiff eventually revealed that the investigating officer "conspired with him to frame innocent individuals – including [plaintiff]…" *Id.* A subsequent investigation concluded that the plaintiff did not participate in the crimes for which he was charged and that the investigating officers "knowingly" made "false reports and testimony." *Id.* Shortly thereafter, all charges were dismissed and the plaintiff filed a lawsuit that included a claim for

---

[6] Defendants' reliance on *Stillwagon* is misplaced. To begin, the district court in *Stillwagon* improperly conflated fabrication claims with Brady claims for purposes of its' analysis. *Stillwagon v. City of Delaware*, 175 F. Supp. 3d 874, 899-901 (S.D. Ohio 2016). As discussed above and below, the Sixth Circuit has instructed through *Webb*, *Stemler*, *Spurlock*, and *Gregory* that fabrication claims should be considered as separate from other due process violations. Further, the analysis in *Stillwagon* focuses exclusively on *Moldowan v. City of Warren*, without any discussion of *Webb*, *Stemler*, *Spurlock*, or *Gregory*, the cases in this Circuit which govern fabrication claims. Unlike the Sixth Circuit cases relied upon by Plaintiffs, *Stillwagon* is not binding on this Court and distorts the law which governs due process claims. For these reasons, the Defendants' reliance on *Stillwagon* must be rejected.

fabrication of evidence.  *Id*. at 653, 657.   On appeal, the Sixth Circuit reversed the district court's granting of summary judgment on plaintiff's fabrication claims.  *Id*. at 668-670.  In doing so, the Court reiterated that "a person's constitutional rights are violated when evidence is knowingly fabricated and a reasonable likelihood exists that the false evidence would have affected the decision of the jury." (*citing to Gregory v. City of Louisville*, 444 F.3d at 737 (6th Cir. 2006); *Webb v. U.S.*, 789 F.3d at 667 (6th Cir. 2015). Put simply, by providing plaintiff with a trial on his fabrication claims, the Sixth Circuit clearly acknowledged that such claims exist for individuals whose due process rights were violated through the fabrication of evidence, regardless of whether a conviction was obtained.

In this Circuit, officers are liable for violating a defendant's constitutional rights if they intentionally developed false evidence, tampered with evidence, assisted a witness in committing perjury, and/or misled prosecutors, in an effort to cause an accused to be wrongfully prosecuted for a crime that he did not commit. *See*, *e.g.*, *Gregory v. City of Louisville*, 444 F.3d 725, 745 n.2 (6th Cir. 2006) (fabricating evidence violates clearly established law); *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (knowingly using false evidence violates clearly established rights); *United States v. Bagely*, 473 U.S. 667, 679 n.7 (1985) (use of perjured testimony and the deliberate suppression of favorable evidence violates established rights).  A Fourth Amendment fabrication of evidence claim exists where a defendant knowingly

31

manufactures evidence, thereby effecting a seizure. *Spurlock v. Satterfield,* 167 F.3d 995, 1006 (6th Cir.1999); *Robertson v. Lucas*, 753 F.3d 606, 616 (6th Cir. 2014); *Webb v. United States*, 789 F.3d 647, 667 (6th Cir. 2015).

The Sixth Circuit is not alone in allowing a freestanding fabrication claim.  Indeed, "every court of appeals that has considered the question of whether a state actor has violated the defendant's right to due process of law by fabricating evidence to charge or convict the defendant has answered the question in the affirmative." *See Whitlock v. Brueggemann,* 682 F.3d 567, 585 (7th Cir.2012) (collecting court of appeals cases); *Halsey v. Pfeiffer*, 750 F.3d 273, 292 (3d Cir. 2014).

The allegations contained in Plaintiffs' Complaint clearly exceed the test delineated above.  Plaintiffs' Complaint includes detailed examples of the Defendants fabrication of false evidence in order to obtain and continue criminal charges against Plaintiffs. *See* Dckt. No. 1 at ¶50-120.  Because of the fabrication, Plaintiffs were charged with murder and incarcerated for nearly a combined decade of their lives. *See* Dckt. No. 1 at ¶¶ 58-66 (fabricated police reports indicating that eyewitness identified Mr. Taylor); ¶¶ 67-70 (fabricated reports alleging that Ms. Hoskins confessed to jailhouse informant); ¶¶ 71-76 (fabricated statement implicating Plaintiffs in murder); ¶¶ 77-84 (fabricated statement from informant and alternate suspect that implicated Ms. Hoskins); ¶¶ 85-89 (fabricated medical records); ¶¶ 90-97

(fabricated statement indicated that Mr. Taylor confessed). In this way, the Plaintiffs suffered an extreme liberty deprivation - but for the Defendants' fabrication of evidence, they would have not been charged with murder and incarcerated for nearly a combined decade of their lives. *Id*. at ¶102. The Defendants committed such misconduct in their effort to cause Plaintiffs to be wrongfully prosecuted for a crime that they did not commit. *Id*. at ¶ 102-113. The Defendants' fabrication of evidence "actively misled prosecutors, who relied on the false evidence fabricated by the Defendant Officers to" pursue and continue charges against the Plaintiffs. *Id*. at. ¶112. As stated above, the evidence here illustrates that the Defendants' fabricated evidence falsely incriminating Plaintiffs, and that without this evidence, there would have been no basis for a jury to issue an indictment. As a result, Defendants attempt to dismiss Plaintiffs' Fourth Amendment due process fabrication claim must be denied.

The Defendants also argue that Plaintiffs' Fourteenth Amendment due process claim fails because they were not convicted. This argument, too, must be rejected. As discussed above, a Plaintiff need not be convicted in order to plead a viable due process claim based upon the fabrication of evidence. *Webb v. U.S.*, 789 F.3d 647, 668-670 (6th Cir. 2015).

To prove a due process claim for the fabrication of evidence under the Fourteenth Amendment, Plaintiffs must only show that the defendants knowingly fabricated evidence and that there is a reasonable likelihood that

the fabricated evidence affected the outcome of the prosecution[7]. *See Webb v. U.S.* 789 F.3d 647, 667 (6th Cir. 2015); *Stemler v. City of Florence,* 126 F.3d 856, 872 (6th Cir.1997); *Ransaw v. Lucas, No. 1:09 CV 02332, 2013 WL 6179418, at \*6 (N.D. Ohio Nov. 25, 2013); Gregory v. City of Louisville*, 444 F.3d 725, 737 (6th Cir. 2006); *Cole v. Carson*, 802 F.3d 752, 765-73 (5th Cir. 2015)(holding that the Fourteenth Amendment provides a due process right to be free from the falsification of evidence used to induce a prosecutor to initiate an unwarranted prosecution.); *see also Fields v. Wharrie* 740 F.3d 1107, 1112 (7th Cir. 2014)(holding that the "fabrication of evidence harmed the defendant before and not just during the trial, because it was used to help indict him.").

---

[7] Indeed, the Supreme Court has long held that the due process clause of the Fourteenth Amendment prohibits the use of false evidence, including fabrications by police officers, in state criminal prosecutions. *See Mooney v. Holohan*, 294 U.S. 103, 112 (1935) (*per curiam*) (state actors violate due process rights when they "depriv[e] a defendant of liberty through a deliberate deception of court and jury by the presentation of testimony known to be perjured"); *Brown v. Mississippi*, 297 U.S. 278, 286 (1936) (same); *Pyle v. Kansas*, 317 U.S. 213, 215–16 (1942) (allegations of false statements and perjured testimony made under threat by local police violates due process); *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (same principle); *Moldowan v. City of Warren*, 578 F.3d 351, 379 (6th Cir. 2009)(recognizing that due process violations exist under the Fourteenth Amendment when police suppress exculpatory evidence).

The circuit courts, of course, apply this binding guidance. *See, e.g., Spurlock*, 167 F.3d at 1005 (relying on *Mooney* and *Pyle* when holding that police fabrication and coercion of witness testimony violated due process); *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989) (*relying on United States v. Bagley*, 473 U.S. 667, 679 n.8 (1989), which in turn relied on *Mooney*, *Pyle*, and *Napue*); *see also, e.g., Curran v. Delaware*, 259 F.2d 707, 713 (3rd Cir. 1958) (stating that when law enforcement officers procure false testimony it violates the right described in *Mooney* and *Pyle*); *Smith v. Florida*, 410 F.2d 1349, 1350–51 (5th Cir. 1969) (same).

Plaintiffs' obligation to demonstrate that there is reasonable likelihood that the fabricated evidence affected the *outcome* of the prosecution—nearly ten combined years of incarceration - is satisfied by Plaintiffs' Complaint which alleges that the fabricated evidence was introduced as the basis for the indictments that resulted in Plaintiffs' continued incarceration for crimes that they did not commit. *See* Dckt. No. 1 at ¶102-112. In this way, the Plaintiffs suffered an extreme liberty deprivation - but for the Defendants' fabrication of evidence, they would have not been charged with murder and incarcerated for nearly a combined decade of their lives. *Id.* at ¶105-109. Thus, the factual allegations supporting fabricated evidence claims demonstrate the Complaint's sufficiency rather than any defect. As a result, Plaintiffs' Fourteenth Amendment fabrication claim must also survive.

### B. The Sixth Circuit Instructs that Plaintiffs' Fabrication Claims Are Not Subsumed by Malicious Prosecution Claims

The Defendants next argue that Plaintiffs are estopped from alleging due-process claims based upon the fabrication of evidence because they have similar but separate and legally cognizable claims for malicious prosecution. *See* Dckt. No. 39-1 at 8; *See* Dckt. No. 36-2 at 7. As revealed below, Defendants' position has no legal support. In fact, the Sixth Circuit rejected this exact argument in *Gregory v. City of Louisville*, 444 F.3d 725, 737 (6th Cir. 2006) and later in *Webb v. U.S.*, 789 F.3d at 670 (6th Cir. 2015)(holding that "even if independent evidence establishes probable cause against a

35

suspect, it would still be unlawful for law-enforcement officers to fabricate evidence in order to strengthen the case against that suspect."); *see also Stemler v. City of Florence*, 126 F.3d 856, 872 (6th Cir. 1997)("A claim of fabrication of evidence does not require a conclusion that the state did not have probable cause to prosecute the claimant.")

In *Gregory*, the plaintiff's *Brady* claims were dismissed at the summary judgment stage because they were conflated with his malicious prosecution claims. *Id*. at 747-748.  In reversing, the Sixth Circuit held that:

> "This Court disagrees with the district court, however, that this similarity restricts Plaintiff to one theory of recovery over the other. The legal constructs of plaintiff's continued detention claim, which allege a Fourth Amendment violation, are distinct from a *Brady* claim, which alleges a due process violation. Plaintiff alleges *both* that his detention was unlawfully continued due to Katz's failure to disclose exculpatory evidence (what Plaintiff and the district court term his "malicious prosecution" claim) and that his right to a fair trial was abridged. The *situs* of injury is distinct and therefore Plaintiff should be able to pursue both legal theories. It is not the role of this Court to restrict Plaintiff's choice of viable legal theories. Other courts have allowed plaintiffs to pursue two legal theories under § 1983 premised on the same underlying facts. *Atkins v. County of Riverside,* 151 Fed.Appx. 501, 505–06 (9th Cir.2005) (unpublished opinion) (permitting plaintiff to pursue, simultaneously, both a fabrication of evidence claim and a *Brady* violation claim)."

*Id*. at 750-751.

As mentioned above in *Gregory*, the Sixth Circuit has cautioned against restricting "Plaintiff's choice of viable legal theories."  *Id*. at 750-751. Thus, other courts in this Circuit have held that the independent claims (fabrication, conspiracy, failure to intervene, etc…) that Plaintiffs bring here are appropriately pled as separate claims.  *Ransaw v. Lucas,* 2013 WL

6179418, at *6 (N.D. Ohio Nov. 25, 2013)(rejecting the Magistrate Judge's recommendation that the claim be dismissed as duplicative of his claim for fabrication of evidence); *Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010) (holding that Plaintiff had cognizable claims for malicious prosecution in addition to due process claim for *Brady* violations); *Gregory v. City of Louisville*, 444 F.3d 725 (6th Cir. 2006)(holding that Plaintiff had cognizable claims for malicious prosecution in addition to due process claims); *Webb v. U.S.*, 789 F.3d at 670 (6th Cir. 2015)(holding that "even if independent evidence establishes probable cause against a suspect, it would still be unlawful for law-enforcement officers to fabricate evidence in order to strengthen the case against that suspect."); *Stemler v. City of Florence*, 126 F.3d 856, 872 (6th Cir. 1997).

     Other circuits agree with the Sixth Circuit's determination that Plaintiffs' can bring separate claims for fabrication and malicious prosecution.  For example, the Second Circuit held that, "[r]equiring that a plaintiff join a fabrication claim with a malicious prosecution claim would come close to making "a mockery of the notion that Americans enjoy the protection of due process of the law and fundamental justice." *Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 130 (2d Cir.1997).

     As the Supreme Court has explained, Section 1983 was intended "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to

37

victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161, 112 S.Ct.

1827, 1830 (1992). "A rule of law foreclosing civil recovery against police

officers who fabricate evidence, so long as they have other proof justifying the

institution of the criminal proceedings against a defendant, would not follow

the statute's command or serve its purpose." *Halsey v. Pfeiffer*, 750 F.3d 273,

293 (3d Cir. 2014).

Plaintiffs' due process fabrication claims are independent of their

malicious prosecution claims. The malicious prosecutions claims depend on

the allegation that they were prosecuted without probable cause, which is not

an element of a due process claim based upon fabrication of false evidence.

*Webb v. U.S.*, 789 F.3d at 670 (6th Cir. 2015)(holding that "even if

independent evidence establishes probable cause against a suspect, it would

still be unlawful for law-enforcement officers to fabricate evidence in order to

strengthen the case against that suspect."); *Stemler v. City of Florence*, 126

F.3d 856, 872 (6th Cir. 1997)("A claim of fabrication of evidence does not

require a conclusion that the state did not have probable cause to prosecute

the claimant.")  Thus, although Plaintiffs' here have a separate legally

cognizable claim for malicious prosecution, they should not be estopped from

asserting due process claims based upon the fabrication of evidence.

## IV.    PLAINTIFFS' CONSPIRACY CLAIM AS ALLEGED IN COUNT V OF THE COMPLAINT IS PROPERLY PLED

"A civil conspiracy is an agreement between two or more persons to injure

another by unlawful action. Express agreement among all the conspirators is

not necessary to find the existence of a civil conspiracy. [Indeed], [e]ach conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged conspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985).

Plaintiffs acknowledge that "conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003). The Complaint more than adequately satisfies this standard, especially given the fact that Defendants, not Plaintiffs, are the ones with first-hand knowledge of the conspiracy. *Quinones v. Szorc*, 771 F.2d 289, 291 (7th Cir. 1985) ("The very nature of a conspiracy obscures most, if not all, information about the alleged conspirators' agreement; circumstantial evidence of the conspiracy, particularly regarding the overt acts performed in furtherance of the conspiracy, is all that is ordinarily obtainable before discovery and trial. This is particularly true where, as here, much of the information regarding…the formation of the conspiracy [is] in the hands of the defendant.").

39

Here, such allegations include:

- That the Defendants learned significant evidence implicating two alternate suspects but conspired to frame Plaintiffs for the murder because one of the true perpetrators was an informant for the Defendants at the time of the investigation.  Dckt. No. 1 at ¶¶ 23-24.

- That Defendants York and Pickard promised consideration to Mr. Smith so long as he stood silent regarding information that implicated the true perpetrators and instead falsely implicated Plaintiffs in the murder. *Id*. at ¶ 52-57.

- That the Defendants fabricated a report claiming that an eyewitness identified Mr. Taylor and Ms. Hoskins. *Id*. at ¶ 58.

- That Defendant York fabricated statements for Christy Branson, Joe King, and Amber Simpson which falsely implicated Plaintiffs in the murder. *Id*. at ¶¶ 68, 72, 91.

- That the Defendants were fully determined to frame Plaintiffs, and together, obtained a number of false statements that allowed them to initiate false charges. *Id*. at ¶77.

- That Defendants Pickard and York fabricated a false statement for Mr. Helton that implicated Plaintiffs in the murder of Ms. Mills. *Id*. at ¶ 82-84.

- That the Defendants altered Ms. Hoskins' medical records to comport with the false statement that was attributed to Mr. Helton. *Id*. at ¶85-89.

- That the Defendants withheld from prosecutors, from Plaintiffs, and from Plaintiffs' counsel the manner in which they fabricated or manipulated all of the evidence of guilt. *Id*. at ¶105.

These allegations alone, which must be presumed as true at this juncture, more than meet the requisite pleading standard. But instead of focusing on these, and the other comprehensive allegations detailing the conspiracy to frame Plaintiffs, found in paragraphs 20 through 131 of the Complaint (*i.e.* the "Facts" section of Plaintiff's Complaint), the Defendants generally claim that Plaintiffs "give no factual allegations to support this premise." *See* Dckt. No. 39-1 at 9, Dckt. No. 36-2 at 8. In short, Defendants argue, by completely ignoring Plaintiffs' factual allegations, that Plaintiffs have not sufficiently pleaded conspiracy. This argument is absurd, without legal support, and should be rejected by this Court.

## V. PLAINTIFFS' MALICIOUS PROSECUTION CLAIMS AS ALLEGED IN COUNTS I AND VIII OF THE COMPLAINT ARE PROPERLY PLED

The Defendants argue that Plaintiffs' state and federal malicious prosecution claims fail. In doing so, Defendants maintain that Plaintiffs fail to meet the favorable termination requirement for malicious prosecution claims. Defendants further argue that certain Defendants are not liable

because of their limited involvement in the underlying investigation.   The Defendants' arguments are without merit and must be rejected.

### A. Plaintiffs Have Sufficiently Alleged Favorable Termination

The Defendants first argue that Plaintiffs cannot meet the favorable termination requirement for their state and federal malicious prosecution claims.  *See* Dckt. No. 36-2 at 9-10; Dckt. No. 39-1 at 11-12.  In making this argument, Defendants state that "[t]he prosecutor's motion to dismiss explained in detail that probable cause was now lacking because several key witnesses had become unavailable due to death, injury, or disappearance and other key witnesses were anticipated to change their testimony."  *See* Dckt. No. 39-1 at 11; Dckt. No. 36-2 at 9.  The Defendants' argument is without merit.

As a factual matter, Plaintiffs' criminal proceedings were terminated in their favor because their criminal charges were dismissed without any conditions.  *See* Dckt. No. 1 at ¶126-131. This Court's inquiry could end here as other courts in this Circuit have found that "an unconditional, unilateral dismissal of criminal charges or an abandonment of a prosecution by the prosecutor or the complaining witness that results in the discharge of the accused generally constitutes a termination in favor of the accused."[8] *Ash v.*

---

[8] The Sixth Circuit is not alone in favoring the side of Plaintiffs in this regard as the Seventh Circuit has addressed this issue as well. There, it is well established that the failure to appear alone is enough to defeat summary judgment on the issue of favorable termination. *See, e.g., Lopez v. City of Chicago*, No. 09 C 3349, 2011 WL

*Ash,* 72 Ohio St.3d 520, 522, 651 N.E.2d 945 (1995); s*ee also Douglas v. Allen,* 56 Ohio St. 156, 160–61, 46 N.E. 707 (1897) (finding a *nolle prosquei* sufficient to satisfy state-law malicious prosecution's termination element); *see also Williams v. Crosby*, 43 F. Supp. 3d 794, 805–06 (N.D. Ohio 2014)(holding that "an unconditional, unilateral dismissal of criminal charges or an abandonment of a prosecution by the prosecutor or the complaining witness that results in the discharge of the accused generally constitutes a termination in favor of the accused."); *White v. Rockafellow,* 181 F.3d 106, *1 (6th Cir.1999).

Second, both state and federal law affirm that a favorable termination is met when the underlying proceedings have been "dismissed for reasons reflecting on the merits of the case." *Evridge v. Rice*, 2011 WL 6014407, 4 (E.D.Ky.2011) citing to *Davidson v. Castner–Knott Dry Goods Co.*, 202 S.W.3d

1557757, at *3–4 (N.D. Ill. Apr. 25, 2011) (finding that summary judgment was not warranted where a malicious prosecution plaintiff presents evidence that the prosecutor abandoned a charge because the complaining witness failed to appear for trial, since a reasonable jury could conclude that probable cause was lacking and the dismissal was indicative of innocence) (citing *Velez v. Avis Rent A Car Sys.*, Inc., 308 Ill. App. 3d 923, 928, 721 N.E.2d 652, 656-7 (1999); *see, also Edwards v. Vill. of Park Forest,* 2009 WL 2588882, at *6 (N.D.Ill. Aug.20, 2009) ("a reasonable jury could infer that the lack of probable cause was itself the reason for the officers' failure to appear"); *Mahaffey v. Misner,* 2009 WL 2392087, at *3 (N.D.Ill. July 31, 2009) (failure of complaining witness to appear "supports a finding of favorable termination" and defeats a motion for summary judgment); *Woods v. Clay,* 2005 WL 43239, at *15 (N.D.Ill. Jan.10, 2005) (genuine issue of material fact existed "as to whether the charges were terminated in plaintiffs' favor [when officer] failed to appear in court…"); *Petrovic v. City of Chicago,* 2008 WL 4286954, at *10 (N.D.Ill. Sept.16, 2008) (where charge is dismissed *nolle prosequi* "because [the prosecutor's] complaining witness refused to testify, a rational jury could find that the *nolle prosequi* indicated her innocence").

597, 605 (Ky .App.2006). In a recent unpublished opinion, the Sixth Circuit

Court of Appeals discussed Kentucky courts' analysis of the third element of

a malicious prosecution claim. The court noted that "[t]he determination of

whether a termination is sufficiently favorable ultimately rests with the trial

court as a matter of law, absent a factual dispute relative to the

circumstances of the dismissal." *Ohnemus v. Thompson*, 594 Fed.Appx. 864,

866 (6th Cir.2014) (2015) (quoting *Davidson v. Castner–Knott Dry Goods Co.,*

*Inc.*, 202 S.W.3d 597, 606 (Ky.Ct.App.2006)).

   The allegations contained in Plaintiffs' Complaint well exceed the

standard for favorable termination. *See* Dckt. No. 1 at 127-131. Indeed, the

criminal cases against Plaintiffs were "ultimately dismissed…in a manner

indicative of their innocence." Id. at 127. Additionally, and as Plaintiffs'

Complaint reveals, the prosecutor's motion to dismiss acknowledges that

probable cause did not exist at the time of dismissal. *Id*. at 129. In support,

the motion itself revealed that "changes in the testimony of the above

witnesses" led to the dismissal of Plaintiffs' criminal charges. *Id*. Curiously,

Defendants attach the prosecutor's motion the criminal charges in support of

their motions to dismiss. *See* Dckt. No. 36-3 at 1-4. In the prosecutor's

motion to dismiss, it was revealed that multiple witnesses (Daniel Wilson,

Robert Beach, and Joe King) recanted their prior statements alleging that

Plaintiffs' confessed to committing murder. *Id*. at 1-2. Put simply, Plaintiffs'

criminal cases were dismissed on the merits, and likewise because of their

44

innocence, not because of procedural issues.  With this backdrop, Plaintiffs'
have well exceeded the favorable termination requirement for a federal
malicious prosecution claim.

The Defendants also argue that Plaintiffs have failed to meet the
favorable termination requirement of their state-law malicious prosecution
claims.  Defendants attempt to rely upon *Davidson* for the proposition that
Plaintiffs have not met the favorable termination standard.  *See* Dckt. No. 39-
1 at 11; See Dckt. No. 36-2 at 10.  But *Davidson* actually illustrates that
Plaintiffs far exceed the baseline in this case and deserve to move forward
with their malicious prosecution claims.

In *Davidson*, the defendants argued that the dismissal did not occur
because the prosecutors believed Plaintiff was innocent, but rather, was
"dismissed because attainment of evidence necessary to fully prosecute her
was not readily available."  *Davidson v. Castner-Knott Dry Goods Co.*, 202
S.W.3d at 605 (Ky. Ct. App. 2006).  There, the plaintiff maintained that
favorable termination was motivated by the prosecutor's discovery of other
evidence that indicated their innocence.  *Id.*  The Court in *Davidson*
ultimately held that the plaintiff was entitled to a trial on the malicious
prosecution claims because a factual dispute existed as to the underlying
reasons for dismissal.  *Id.* at 606.  Here the record is stronger than that in
*Davidson* as the dismissal of Plaintiffs' criminal cases were unconditional,
ordered as a result of the prosecutor's motion, and done because probable

45

cause no longer existed.  Dckt. No. 1 at ¶126-131.  As such, dismissal of Plaintiffs' malicious prosecution claims at this stage, where Plaintiffs' allegations must be taken as true, is inappropriate.

Next, the strength of Plaintiffs' state-law malicious prosecution claim is further bolstered by decades of precedent in Kentucky courts.  In fact, the Kentucky Court of Appeals has looked to § 660 of the Restatement (Second) of Torts for guidance on when a proceeding has terminated in the accused's favor. *Alcorn v. Gordon*, 762 S.W.2d 809, 811 (Ky.Ct.App.1988). According to the portion of the Restatement relied upon by the court, "[p]roceedings are 'terminated in favor of the accused' ... only when their final disposition is such as to indicate the innocence of the accused." *Id.* (citing Restatement (Second) of Torts § 660). In other words, the termination of the proceedings at issue "must go to the merits of the accused's professed innocence for [it] to be 'favorable' to [her]." *Ohnemus*, 594 Fed.Appx. at 867 (citations omitted) (collecting case law for support). Furthermore, "[i]n order for a termination of proceedings to be favorable to the accused, the dismissal must be one-sided and *not the result of any settlement or compromise.*" *Id.* (emphasis added) (citations omitted). If the dismissal is "not the unilateral act of the prosecutor" and the accused "[gives] up something to secure dismissal of the charges," the termination of the proceedings is not favorable to the accused. *Broaddus v. Campbell*, 911 S.W.2d 281, 284

(Ky.Ct.App.1995). In Kentucky, "it is settled that a dismissal by compromise of the accused is not a termination favorable to the accused." *Id.*

Here the dismissal of Plaintiffs' criminal case was not a compromise. *See* Dckt. No. 1 at ¶126-131. Nor was it conditional. *Id.* Significantly, the dismissal was not the result of a motion on behalf of the Plaintiffs, but rather, the prosecuting agency. *Id.* Indeed, the prosecutor filed a motion to dismiss Plaintiffs' criminal case because probable cause ceased to exist. *Id.* And while Plaintiffs acknowledge that the prosecutor's motion to dismiss listed a number of bases for dismissal, one significant reason is undisputable. Probable cause was absent, in part, because "key witnesses were anticipated to change their testimony." *Id.* at ¶129. Put simply, the prosecutor knew witnesses intended to testify in a way that supported Plaintiffs' innocence. Such testimony would have been damning for the prosecution. Because of this, the prosecution decided to dismiss the case instead of losing at a criminal trial.

Defendants claim that alternative reasons existed for the lack of probable cause that is distinct from Plaintiffs' innocence. *See* Dckt. No. 39-1 at 11; Dckt. No. 36-2 at 9. In doing so, Defendants point to a single sentence in the motion to dismiss that revealed that witnesses in the case became unavailable because of death, injury or disappearance. *Id.* Yet, even these reasons continue to support Plaintiffs' position that the cases were dismissed on the merits. For instance, it is entirely plausible that witnesses who were

47

characterized in the motion to dismiss as having "disappeared" may not have been missing at all.  Indeed, and consistent with the allegations contained in Plaintiffs' Complaint, those witnesses may have just refused to parrot the fabricated and false statements attributed to them by the Defendants in this case.  In sum, Plaintiffs have met the favorable termination required for their federal and state malicious prosecution claims.  As such, the Defendants' arguments must be denied.

### B.  Plaintiffs Have Sufficiently Alleged that the Defendants Are Liable for Malicious Prosecution

Defendants Johnson, Mefford, Farris, and Joseph attempt to distort the legal standard that applies to malicious prosecution claims by arguing that they were not the driving force behind the prosecution of Plaintiffs, and as such, a jury would not find against them for any claim of malicious prosecution.  *See* Dckt. No. 39-1 at 10.  As is discussed below, the Defendants can be held liable for malicious prosecution even when they are not the driving force behind the prosecution.

The Sixth Circuit holds that "an officer may be responsible for commencing a criminal proceeding against a plaintiff, where the officer made, influenced, or participated in the decision to prosecute."  *Sykes v. Anderson,* 625 F.3d 294, 311 (6th Cir. 2010).  Specifically, a viable malicious prosecution claim exists when Plaintiffs present "some evidence" that the impact of the Defendants "misstatements and falsehoods in his investigatory

48

materials extended beyond the Plaintiffs' initial arrest and ultimately influenced the Plaintiffs' continued detention." *Id*. at 316. Such influence, however, "is not narrowly limited to the introduction" of Defendants "false statements as evidence at the preliminary hearing but can also be based on" the Defendants "knowing misstatements…to the prosecutor or his pressure of influence over an individual who either made the decision to prosecute or testified at the preliminary hearing." *Id*. Plaintiffs well exceed the standard outlined in *Sykes*.

There is no question that Defendants Johnson, Mefford, Farris, and Joseph influenced the decision to initiate charges against Plaintiffs through the misconduct that they committed with the other Defendants. As discussed at length in Plaintiffs' Complaint, these Defendants went out of their way to manufacture evidence that falsely implicated the Plaintiffs in Ms. Mills' murder. Dckt No. 1 at ¶¶23-27, 45-49, 57, 122-125. The Defendants committed such egregious misconduct while knowing that two other individuals were likely responsible for the murder. *Id*. The Defendants then used this false evidence to initiate charges. *Id*. at ¶ 102-103. As Plaintiffs' Complaint alleges, "the Defendant Officers actively concealed the falsity of the evidence they fabricated, the methods by which they fabricated, and the scope of their fabrication." *Id*. at ¶106. Because of this, the Defendants "actively misled prosecutors, who relied on the false evidence fabricated by the Defendant Officers to continue to pursue the prosecution of Mr. Taylor

49

and Ms. Hoskins." *Id.* at ¶112.  That these Defendants did not sign the

criminal complaint is not harmful to Plaintiffs' claims.  Indeed, based upon

the detailed allegations contained in Plaintiffs' Complaint, there is no

question that Defendants Johnson, Mefford, Farris, and Joseph influenced

the decision to initiate charges against Plaintiffs as a result of their

misconduct and made efforts to illegitimately continue the initiation of

charges through their continued misconduct.  For these reasons, Defendants'

arguments fail.

Ignoring the factual allegations in Plaintiffs' Complaint, Defendants

Johnson, York and Bunch argue that Plaintiffs have not set forth specific

allegations of misconduct against them.  To be sure, Plaintiffs' Complaint sets

forth specific instances of each of these Defendants fabricating evidence in an

effort to frame Plaintiffs.  For example, Defendants Bunch and York

fabricated a false report claiming that Mr. Crump identified Mr. Taylor as

someone involved in Ms. Mills' murder.  *Id.* ¶62-66.   Prior to doing so, Mr.

Crump informed the Defendants that he could not make an identification

"because he was unable to see who actually was present at Ms. Mills'

residence when he drove past." *Id.* at ¶63.  This false and fabricated evidence

was then relied upon by the prosecuting agency to initiate charges against

Plaintiffs.  *Id.* at ¶ 109.    Additionally, Plaintiffs' Complaint contains specific

allegations of misconduct against Defendants Johnson as well[9]. Specifically, in February of 2014, Defendants Johnson and York met with Robert Beach. *Id*. at ¶122. There, the Defendants manufactured a statement from Mr. Beach that alleged Mr. Taylor had confessed to the murder of Ms. Mills. *Id*. at ¶123-125. That false and fabricated statement was later relied upon by the prosecutor to continue the false initiation of charges against the Plaintiffs. *Id*. at ¶112-113. These factual allegations, among others, are more than sufficient to state a claim for malicious prosecution against Defendant Johnson.

Finally, because it is well established that a co-conspirator is liable for actions of their co-conspirators in furtherance of that conspiracy, *Hooks*, 771 F.2d at 943-44, the Defendants are liable for malicious prosecution through the false and fabricated statements manufactured by the other Defendants with whom they entered into a conspiracy with. *See also United States v. Frost*, 914 F.2d 756, 762 (6th Cir. 1990) (noting that "each member of a conspiracy becomes responsible for acts in furtherance of the conspiracy committed by his co-conspirators"); *cf. Proffitt v. Ridgway*, 279 F.3d 503, 507

---

[9] According to Plaintiffs' Complaint, Defendant York manufactured a significant amount of evidence, including the alteration of medical records, to frame Plaintiffs for a murder they did not commit. *See* Dckt. No. 1. Defendant York does not have a good faith basis for challenging the sufficiency of factual allegations in Plaintiffs' Complaint. Even more, Defendant York personally initiated the charging process by signing the criminal complaints against each Plaintiff. *Id*. at ¶ 98. Therefore, any attempt by Defendant York to extract himself from the charging process is without merit. As such, Plaintiffs' malicious prosecution claims against Defendant York must survive.

(7th Cir. 2002) (noting that, "in civil as in criminal law" a conspirator is liable "for the wrongful acts of the other conspirators committed within the scope of the conspiracy."); *Grove Press, Inc. v. Angleton*, 649 F.2d 121, 122 (2d. Cir. 1981) ("A conspiracy is alleged for the purpose of showing that a wrong was committed jointly by the conspirators and that, because of their common purpose and interest, the acts of one may be imputed to the others."). As mentioned above, the conspiracy that the Defendant Officers entered into resulted in false and fabricated statements that were used to initiate false charges against Plaintiffs for a murder they did not commit. *See* Dckt. 1 at ¶109-111. Therefore, Defendants contention that Plaintiffs failed to state plausible claims for malicious prosecution should be denied.

### C. Defendants Fallback Malicious Prosecution Arguments Are Without Merit

Defendants Johnson, Mefford, Farris, and Joseph make a number of arguments that are entirely outside of the allegations contained in Plaintiffs' Complaint. In so doing, the Defendants claim that probable cause existed at multiple stages of the criminal proceeding, that a warrant was issued by a local judge, that a preliminary hearing was conducted with a finding of probable cause, and that a Knox County Grand Jury returned indictments for both Plaintiffs upon a finding of probable cause. *See* Dckt. No. 39-1 at 10. As an initial matter, Defendants improperly assert facts not in the complaint. Further, the Defendants have failed to submit any documents reflecting a grand jury indictment, preliminary hearing transcript, or arrest warrant that

52

they claim should be judicially noticed by this Court.  *Id.*  Because a court generally may not consider facts outside the complaint on a motion to dismiss, Defendants' arguments in this regard are entirely misplaced and should not be considered.  *See, e.g. Amini v. Oberline College*, 259 F.3d 493, 502 (6th Cir. 2001).

Defendants arguments must be still be rejected even if this extraneous information was considered by the Court.  Defendants claim that they are absolved of civil liability because an arrest warrant was issued and a preliminary hearing conducted.  *See* Dckt. No. 39-1 at 10.  The Sixth Circuit has held otherwise.  "It is well established in this circuit that "[p]olice officers cannot, in good faith, rely on a judicial determination of probable cause [to absolve them of liability] when that determination was premised on an officer's own material misrepresentations to the court." *Gregory v. City of Louisville,* 444 F.3d 725, 758 (6th Cir.2006); *Sykes v. Anderson*, 625 F.3d 294, 312 (6th Cir. 2010).  Here, the entire basis for the initiation of charges was the false and fabricated evidence manufactured by the Defendants.  See Dckt. No. 1 at ¶102-111.

Further, even if the court were to consider these facts from outside the complaint, a grand jury indictment does not conclusively determine the existence of probable cause.  An officer's false statements to the grand jury are sufficient to overcome the presumption of probable cause.  *France v. Lucas*, 836 F.3d 612, 616 (6th Cir. 2016)(an indictment does not establish

probable cause when it "was obtained wrongfully by police officers who knowingly presented false testimony to the grand jury…"); *Robertson v. Lucas*, 753 F.3d 606, 616 (6th Cir. 2014).  In *King v. Harwood*, 852 F.3d 568 (6th Cir. 2017), the Sixth Circuit clarified that such false statements to the grand jury are not necessary to overcome the presumption.  The Court explained that plaintiffs can bring such claims where the officers also engaged in unprotected acts such as falsifying affidavits and fabricating evidence. *Id.* at 587. It held:

> (1) a law-enforcement officer, in the course of setting a prosecution in motion, either knowingly or recklessly makes false statements (such as in affidavits or investigative reports) or falsifies or fabricates evidence; (2) the false statements and evidence, together with any concomitant misleading omissions, are material to the ultimate prosecution of the plaintiff; and (3) the false statements, evidence, and omissions do not consist solely of grand-jury testimony or preparation for that testimony … the presumption that the grand-jury indictment is evidence of probable cause is rebuttable and not conclusive.

*Id.* at 587–88.[10]

Here, Plaintiffs have sufficiently stated a claim. First, they allege that the Defendants, in the course of setting Plaintiffs' prosecution in motion, deliberately made false statements in reports and falsified or fabricated evidence to falsely implicate Plaintiffs.  Dckt. No. 1 at ¶¶ 45-125. Plaintiffs also allege there was no probable cause for their arrest or prosecution. *Id.* at ¶¶102-113, 140.

---

[10] The court further explained, "evidence of an officer's actions prior to and independent of his grand-jury testimony may call into question the presumption of probable cause created by an indictment even if a malicious prosecution plaintiff may not bring in evidence of the grand-jury testimony itself to do so." *Id.* at 590.

Second, Plaintiffs have sufficiently alleged that Defendants' false statements and fabricated evidence were material to their ultimate prosecution. *Id.* at ¶ 170 (Defendants "knew that the witness statements used to initiate these charges against Mr. Taylor and Ms. Hoskins were false, fabricated, and the product of improper coercion.  Even still, the Defendant Officers used these statements to falsely initiate charges against Mr. Taylor and Ms. Hoskins."); *id.* ¶ 102 ("As a result of the Defendant Officer continued fabrication of evidence…and continued manipulation of witnesses, Mr. Taylor and Ms. Hoskins were subject to continued prosecution on capital murder chargers."); *id.* ¶ 107 ("The evidence that was fabricated, falsified, and manufactured by the Defendant Officers was the only evidence linking Mr. Taylor and Ms. Hoskins to the murder that they were charged with and was the only basis upon which prosecutors filed and maintained charges against them."); *Id.* ¶ 109.

Third, as described above, Plaintiffs have sufficiently alleged that Defendants' false statements and fabricated evidence do not consist solely of grand jury testimony. *Id.* ¶¶ 45-100, 114-125. In sum, viewing the allegations and all inferences therefrom in Plaintiffs' favor, Counts I and VIII withstand dismissal.

## VI.  PLAINTIFFS' FAILURE TO INTERVENE CLAIM AS ALLEGED IN COUNT IV OF THE COMPLAINT IS PROPERLY PLED

Count IV involves another due process claim: that Defendants York, Bunch, Eubanks, Johnson, Mefford, Farris and Joseph, amongst others, while

constitutional violations were being committed, "stood by without intervening to prevent the misconduct, despite having a reasonable opportunity to do so." *See* Dckt. No. 1 at 161. The Defendants do not argue that the failure to intervene is not an actionable claim under § 1983, as it most certainly is. It is clear that there are circumstances under which police officers can be held liable for failure to protect a person from having their constitutional rights violated. *Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *Bates v. Bruner*, 459 U.S. 1171, 103 S.Ct. 816 (1983).

In fact, generally speaking, a police officer who fails to act to prevent the violation of a person's constitutional rights may be held liable when (1) the officer observed or had reason to know that the constitutional right would be or was being violated, and (2) the officer had both the opportunity and the means to prevent the harm from occurring. *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.1994).

Plaintiffs easily satisfy the elements in support of their failure to intervene claim against the Defendants.  As mentioned *supra*, the KSP Defendants conducted a joint investigation with other Defendants from the Barbourville Police Department and Knox County Sheriff's Department that resulted in the fabrication of evidence, coercion of witnesses, and withholding of exculpatory evidence relating to alternate suspects for the murder of Ms. Mills. *See* Dckt. No. 1 at ¶21-131. Further, "[i]n their conspiracy to frame Plaintiffs for the murder of Ms. Mills, the Defendant Officers continued

coercing witnesses and fabricating false evidence in order to initiate illegitimate charges…" *Id*. at ¶57.  Additionally, the Defendants "manipulated and manufactured a number of witnesses including Mr. Helton, Mr. King, Ms. Simpson, Mr. beach, Ms. Branson, and Mr. Crump.  The Defendant Officers threatened and coached these witnesses and others, and otherwise inducted individuals who otherwise had no knowledge to be false witnesses…" *Id*. at ¶104.  At no time did the Defendants inform Plaintiffs, their counsel, or the prosecutors of the underlying misconduct that was being engaged in during the joint investigation.  *Id*. at ¶105. This failure to intervene was not limited in time or scope by the Defendants – indeed, it continued for nearly five years as Plaintiffs sat in jail for a crime that they did not commit. *Id*. at ¶107-108. Although the Defendants participated in this conspiracy on their own volitions, they also never once intervened to stop the other Defendants from framing Plaintiffs for crimes they did not commit. *Id*. at ¶104-108.  As such, Plaintiffs' failure to intervene claim must succeed as the Defendants were present when Plaintiffs' constitutional rights were violated and had the opportunity to prevent those violations from occurring but failed to do so.[11]

---

[11] Citing an unreported case, the Defendants claim that Defendants Bunch, Mefford, Johnson, and York cannot be sued for failing to intervene on occasions where they, alone, committed acts that violated Plaintiffs' constitutional rights.  *See* Dckt. No. 39-1 at 13; Dckt. No. 36-2 at 12.  The Defendants' argument is entirely misplaced. Plaintiffs specifically alleged that Defendants Bunch, Mefford, and Johnson failed to intervene on occasions where other officers committed misconduct.  Dckt. No. 1 at ¶62-66 (Bunch), ¶114-117 (Mefford); ¶118-125 (Johnson).  Plaintiffs' Complaint lists

## VII.  DEFENDANTS JOHNSON, MEFFORD, FARRIS, AND JOSEPH ARE NOT ENTITLED TO QUALIFIED IMMUNITY UNDER FEDERAL LAW

Finally, Defendants Johnson, Mefford, Farris, and Joseph generically assert that qualified immunity protects them from suit.  *See* Dckt. No. 39-1 at 14.  These Defendants do not reveal to what claims qualified immunity applies to.  *Id.*   Nonetheless, Plaintiffs respond as follows.

This Circuit follows a two-step inquiry in reviewing a claim for qualified immunity: (1) whether the plaintiff has asserted a violation of a known constitutional right; and (2) whether the constitutional right was so clearly established at the time in question that a reasonable official in the defendant's position would have known that he was violating the plaintiff's constitutional rights. *Hutsell v. Sayre*, 5 F3d 996, 1003 (6th Cir. 1993).  To the extent that the Defendants argue that Plaintiffs have not set forth sufficient facts to establish an underlying constitutional violation at this stage, the Defendants contention fails for all of the reasons described more fully above.

Apart from arguing that Plaintiffs have not proven that their constitutional rights were violated, some Defendants invocation of qualified immunity focuses solely on whether various laws were clearly established at the time of Defendants' misconduct.  As is shown above and below, the

---

nearly forty pages of allegations where Defendant York and other Defendants committed misconduct together and he failed to intervene on a single-occasion. Dckt. No. 1.

Defendants violated clearly established laws during the course of the Mills'

homicide investigation.

### A. It Was Clearly Established Long Before 2010 that Defendants' Misconduct Violated the Constitution

The Defendants argue that they are entitled to immunity from

Plaintiffs' constitutional claims because the law was not clearly established

are without merit. Plaintiffs' fabrication claims were well established before

the events at issue. *See Gregory, 644 F.3d, 725,* at 760; *Mooney v. Holohan*,

294 U.S. 103 (1935), *Pyle v. Kansas*, 317 U.S. 213 (1942), and *Napue v.*

*Illinois*, 360 U.S. 264 (1959), for the proposition that it has been clearly

established for nearly 100 years that fabricating evidence for use against a

criminal defendant violates due process. Furthermore, each of the remaining

constitutional violations that Plaintiffs allege violated their clearly

established rights at the time of the Mills homicide[12]. *See, e.g., Hinchman v.*

*Moore*, 312 F.3d 198, 205–06 (6th Cir. 2002) ("[f]alsifying facts to establish

probable cause to arrest and prosecute an innocent person is of course

patently unconstitutional") (citing *Hill v. McIntyre*, 884 F.2d 271, 275 (6th

---

[12] Defendant Joseph cites a number of cases for the proposition that Section 1983 liability does not attach for a mere failure to act. *See* Dckt. No. 39-1 at 14. Notably, these cases predate the Mills investigation and reveal that it was clearly established by 2010 that Defendant Joseph could be held responsible under a supervisory liability theory because she was personally involved in the underlying investigation. *Doe v. City of Roseville*, 296 F.3d 431, 439-40 (6th Cir. 2012). As the Complaint makes clear, Plaintiff has included Defendant Joseph as part of their allegations against the Defendant Officers. *See* Dckt. No. 1 at ¶¶ 17, 19, 104. Because Defendant Joseph was personally involved in the underlying investigation and the misconduct that ensued, she is not shielded by the supervisory liability cases to which the Defendants point.

Cir. 1989)); *Spurlock*, 167 F.3d at1004-06 (the right to be free from malicious

prosecution is clearly established law for purposes of qualified immunity);

*Windswor v. Tennessean*, 719 F.2d 155, 165 (6th Cir. 1983) (recognizing

"freedom from a governmental conspiracy to violate one's civil rights is a

clearly established right); *Stovall v. Denno*, 388 U.S. 293, 302 (1967)(holding

that suspects have a constitutional right to be free from identification

procedures "so unnecessarily suggestive and conducive to irreparable

mistaken identification" that the identification's use violates due process of

law).

### B. For All Reasons Discussed Above, Defendants Violated Plaintiffs' Clearly Established Constitutional Rights

For the reasons discussed already, Defendants motion to dismiss must

be denied on the second part of the qualified immunity analysis—namely,

whether Plaintiffs' constitutional rights were violated. *See Pearson v.

Callahan*, 555 U.S. 223, 232 (2009) (courts ask whether the facts alleged

describe the violation of a protected right); *Gregory*, 444 F.3d 725, at 751

(courts cannot resolve disputed issues of fact related to qualified immunity).

Here, there are no disputed facts, as this Court is required to "construe the

complaint in the light most favorable to the plaintiff, accept its allegations as

true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v.

NCAA*, 528 F.3d 426, 430 (6th Cir.2008).  Plaintiffs' Complaints forth in great

detail how the Defendants framed them for a crime that they did not commit.

See Dckt. No. 1.  The Defendants accomplished their task through the

manipulation of witnesses, coercion of witnesses, fabrication of witness statements, and a host of other misconduct. *Id*. at ¶102-106. This misconduct violated Plaintiffs clearly established constitutional rights. As such, the Defendants' qualified immunity argument must be rejected.

## VIII. DEFENDANTS JOHNSON, MEFFORD, FARRIS, AND JOSEPH ARE NOT ENTITLED TO QUALIFIED IMMUNITY UNDER STATE LAW

Defendants Johnson, Mefford, Farris and Joseph also seem to imply that they are protected by qualified immunity, under state-law, for the constitutional violations - almost exclusively intentional torts - that they committed in this case[13]. *See* Dckt. No. 39-1 at 16. The Defendants' argument is mistaken.

The Defendants intentionally framed Plaintiffs for murder. See Dckt. No. 1 at ¶¶ 18-19, 23, 45-125. Their actions were performed in bad-faith. Id. at ¶ 182-186. State-law qualified immunity is unavailable for the Defendants on all of Plaintiffs' claims because they were not acting in good-faith when they committed such egregious misconduct[14]. *Martin v. O'Daniel*, 507 S.W.3d 1, 5–6 (Ky. 2016), *as corrected* (Sept. 22, 2016), *reh'g denied* (Feb. 16,

---

[13] To begin, Defendants have not met their burden of establishing that the acts alleged in Plaintiff's complaint were performed within the scope of their discretionary duties.

[14] The Defendants argue that their acts were discretionary rather than ministerial. See Dckt. No. 39-1 at 15-16. This argument is a non-sequitur, as police officers do not have discretion to intentionally violate the constitutional rights of citizens. As stated supra, the Defendants actions were performed in bad-faith, and as such, qualified immunity does not attach.

2017)(holding that qualified official immunity is available only to officials
acting in good faith).

Further, the Defendants' vague argument that qualified immunity
applies across the board is a misnomer.  Here, only a single count out of
eleven alleges that any Defendant (Defendants Pickrell and Pickard for
negligent supervision) was negligent during the underlying investigation.
*See* Dckt. No. 1 at 37.   Because Defendant Pickrell was personally involved
in the investigation and the underlying misconduct that ensued, she is liable
as a supervising officer.  *Horn v. City of Covington*, No. CIV.A. 14-73-DLB-
CJS, 2015 WL 4042154, at *7 (E.D. Ky. July 1, 2015).

Additionally, the remaining claims in Plaintiffs' Complaint are
intentional torts. *See* Dckt. No. 1.  In *Yanero*, the Supreme Court of Kentucky
limited the application of state-law qualified immunity to negligent
conduct. *Yanero v. Davis*, 65 S.W.3d 510, 527 (Ky. 2001).   Under *Yanero* and
its' progeny, the Defendants are not even arguably protected by a state-law
qualified immunity for the remaining ten counts, all intentional torts,
contained in Plaintiffs' Complaint.

For example, Plaintiffs' Complaint includes claims for state and federal
malicious prosecution claims.  *See* Dckt. No. 1 at  28, 36.  Defendants cannot
argue that they are protected by state-law qualified immunity for their role
in causing Plaintiffs' malicious prosecution[15].  Indeed, a state-law qualified

---

[15] The factual predicate for Defendants' argument in support of a discretionary
classification must not be considered.  The Defendants claim that there is "no

immunity defense is unavailable to public officers who acted "*with the malicious intention* to cause a deprivation of constitutional rights or other injury ...." *Yanero v. Davis*, 65 S.W.3d at 523 (Ky. 2001)(quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Here, the Defendants acted maliciously when they deprived Plaintiffs of their constitutional rights and framed them for murder. *See* Dckt. No. 1 at ¶¶ 18-19, 23, 45-125, 182-186. In the process, the Defendants, including Defendant Pickrell, fabricated evidence, coerced witnesses, and withheld evidence relating to the true perpetrators in order to initiate and continue false charges against the Plaintiffs. *Id*. For the aforementioned reasons, the Defendants state-law qualified immunity argument must be rejected.

## CONCLUSION

Plaintiffs have sufficiently alleged that the Defendants violated their Fourth, Fourteenth, and other constitutional rights, as well as their rights under state law. The Defendants' motions to dismiss largely ignore the allegations in the complaint, rely on facts outside the complaint, and cite inapplicable law. As such, and for the reasons discussed above, Defendants' Johnson, Mefford, Farris, Joseph, York, Bunch, and Dallas Eubanks motions to dismiss should be denied.

---

flowchart, organizational roadmap, or policy dictating how each murder investigation is conducted…" *See* Dckt. No. 39-1 at 16. None of this information, or the remaining information on this page, is contained in Plaintiffs' Complaint. As such, it must not be considered. *Mediacom Se.LLC v. BellSouth Telecomms., Inc.,* 672 F.3d 396, 400 (6th Cir.2012); *Rose v. Hartford Underwriters Ins. Co.,* 203 F.3d 417, 420 (6th Cir.2000)

63

RESPECTFULLY SUBMITTED,


/s/ Elliot Slosar
*One of Plaintiff's Attorneys*

Arthur Loevy
Jon Loevy
Michael Kanovitz
Elliot Slosar
Amy Staples
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607
(312) 243-5900
Fax: (312) 243-5902

## <u>CERTIFICATE OF SERVICE</u>

I, Elliot Slosar, an attorney, hereby certify that on July 5, 2017, I filed the foregoing motion via the Court's CM/ECF System and thereby served a copy on all counsel of record.

<u>/s/ Elliot Slosar</u>