# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## SOUTHERN DIVISION
## AT LONDON

CIVIL ACTION NO. 17-84-DLB-HAI

AMANDA HOSKINS, et al.                                              PLAINTIFFS


V.                        **MEMORANDUM OPINION AND ORDER**


KNOX COUNTY, KENTUCKY, et al.                            DEFENDANTS

* * * * * * * * * * * * * * *

On March 15, 2012, Plaintiffs Amanda Hoskins and Jonathan Taylor were arrested for robbery and murder. Hoskins and Taylor spent three years and five years, respectively, incarcerated and awaiting trial. That trial never came. Instead, in the summer of 2016, the Commonwealth of Kentucky dropped the criminal charges and acknowledged that there was a lack of probable cause to support either prosecution. From the ashes of that criminal case, this civil action arose.

Pursuant to 42 U.S.C. § 1983, the Plaintiffs filed the instant action seeking recompense for alleged violations of their constitutional rights, as well as various state-law torts, against ten law-enforcement officers and the municipal governments those officers represent. Specifically, the Plaintiffs have filed suit against the following Defendants: Kentucky State Police ("KSP") Troopers Jason York, Jason Bunch, and Dallas Eubanks (the "Primary KSP Defendants"); KSP Troopers Bryan Johnson, Mark Mefford, Kelly Farris, and Jackie Pickrell Joseph (the "Secondary KSP Defendants"); Knox County, former Knox County Sheriff John Pickard, and Deputy Derek Eubanks (the

"Knox County Defendants"); and the City of Barbourville and Barbourville Police Officer Mike Broughton (the "Barbourville Defendants"). (Doc. # 1). The Court has federal-question jurisdiction over this matter under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 20, 2010, Katherine Mills's body was found at her home in Flat Lick, Kentucky.[1] (Doc. # 1 at ¶ 20). The Kentucky State Police, the Barbourville Police Department, and the Knox County Sheriff's Department commenced a joint investigation into her murder. *Id.* at ¶ 21. Because $12,000 had been stolen from Ms. Mills's home, the officers believed that the murder was financially motivated. *Id.* at ¶ 22. Early on, the investigation focused on three suspects: Allen Helton—a confidential informant for the investigating agencies—Jesse Lawson—Ms. Mills's grandson by marriage—and Mike Simpson. *Id.* at ¶¶ 23-25. The Plaintiffs allege that there was substantial evidence implicating Helton, Lawson, and Simpson. *Id.* at ¶¶ 25-44. Specifically, the Plaintiffs claim that the Defendant Officers knew that Helton and Simpson were in desperate need for money on the morning of Ms. Mills's murder, that they fled Kentucky immediately after the murder, that Simpson used cash to rent the car they drove from Kentucky to Florida, that they were in possession of a large amount of cash upon their return, that Simpson had prepared a note with a list of purported alibi witnesses before ever being asked about the murder, and that Helton and Lawson had failed polygraph examinations questioning them about their involvement in the robbery and murder of Ms. Mills. *Id.*

---

[1] Given the present procedural context, the factual summary that follows is taken from the Plaintiffs' Complaint (Doc. # 1) and construed in their favor. *See Crugher v. Prelesnik*, 761 F.3d 610, 614 (6th Cir. 2014) (internal citations omitted).

Despite the "mounting evidence against" Helton, Lawson, and Simpson, the Plaintiffs allege that the Defendant Officers conspired to frame them, and accomplished this task by "coercing witnesses, fabricating statements, and committing other acts of egregious misconduct." *Id.* at ¶¶ 45-48. In support of that allegation, the Plaintiffs claim that the Defendant Officers coerced Bob Smith, Christy Branson, Joe King, Allen Helton, and Amber Simpson into fabricating statements that falsely implicated the Plaintiffs; that the Defendant Officers falsely reported that Michael Crump had positively identified the Plaintiffs as the people he saw outside Ms. Mills's home on the day of the murder; and that the Defendant Officers altered and falsified Plaintiff Amanda Hoskins's medical records to nullify her alibi.[2] *Id.* at ¶¶ 50-97, 104.

Based on that fabricated evidence, Trooper York signed criminal complaints and initiated charges against the Plaintiffs. *Id.* at ¶¶ 98, 101. On March 15, 2012—approximately one year and two months after the investigation began—the Plaintiffs were arrested for the robbery and murder of Ms. Mills. *Id.* at ¶ 99-101. After their arrest, the Plaintiffs allege that additional evidence was fabricated against them. Specifically, the Plaintiffs claim that the Defendant Officers coerced Daniel Wilson and Robert Beach into providing false statements that Plaintiff Jonathan Taylor had confessed to the murder.[3] *Id.* at ¶¶ 114-117, 118-125.

---

[2] While most of the Complaint's factual allegations are directed at all "Defendant Officers," several of the allegations name particular officers. For example, the allegations regarding Bob Smith and Michael Crump include collective allegations against the "Defendant Officers," as well as specific allegations against Trooper Jason York, former Sheriff John Pickard, and Trooper Jason Bunch. (Doc. # 1 at ¶¶ 54-55, 61-62).

[3] Troopers Jason York and Mark Mefford are the officers specifically alleged to have coerced Daniel Wilson into providing a false statement. The allegations regarding Robert Beach's coerced statement are directed at all "Defendant Officers," but also name Troopers Jason York and Bryan Johnson in particular.

While they were awaiting trial, the Plaintiffs were incarcerated. *Id.* at ¶¶ 132, 135. But a trial never commenced. On June 29, 2016, the Commonwealth of Kentucky filed a motion seeking dismissal of the criminal charges against Plaintiff Jonathan Taylor because probable cause did not exist. That motion was granted on June 30, 2016, after Taylor had spent approximately five years in jail. *Id.* at ¶¶ 128-130, 132. On July 29, 2016, the Commonwealth filed a similar motion dismissing the criminal charges against Plaintiff Amanda Hoskins. That motion was granted on August 22, 2016, after Hoskins had spent approximately three years in jail. *Id.* at ¶¶ 131, 135.

On April 4, 2017, the Plaintiffs filed the instant action alleging multiple constitutional violations, as well as state-law tort claims against the Defendants. (Doc. # 1). The Barbourville Defendants and the Knox County Defendants filed Answers to Plaintiffs' Complaint on May 2, 2017 and May 3, 2017, respectively. (Docs. # 30 and 31). Instead of answering Plaintiffs' Complaint, the Primary KSP Defendants and the Secondary KSP Defendants (collectively "the KSP Defendants") filed Motions to Dismiss. (Docs. # 36 and 39). Shortly thereafter, the Barbourville Defendants and the Knox County Defendants filed Responses in support of the KSP Defendants' Motions to Dismiss, joining in their co-defendants' arguments and asking the Court to dismiss Plaintiffs' claims against them for the same, and additional, reasons. (Docs. # 44 and 54). After filing their own Response opposing the KSP Defendants' Motions to Dismiss (Doc. # 55), Plaintiffs filed Motions to Strike the Barbourville Defendants' and the Knox County Defendants' Responses as untimely Motions to Dismiss. (Docs. # 56 and 57). The KSP Defendants then filed a Joint Reply in support of their Motions to Dismiss (Doc. # 60), and the Barbourville Defendants and Knox County Defendants filed Responses in opposition to Plaintiffs' Motions to Strike.

(Docs. # 61 and 62).  Thus, the Motions to Dismiss and the Motions to Strike are fully briefed (Docs. # 36, 39, 55, 60, 56, 57, 61, and 62) and ripe for review.[4]

## II.    ANALYSIS

This matter is currently before the Court upon both substantive and procedural motions—four Motions to Dismiss, two of which are disguised as "Responses," and two Motions to Strike.  First, the Court will address the parties' procedural motions, and then the Court will turn to the parties' substantive motions.

### A.    Motions to Strike

Plaintiffs ask the Court to strike the Knox County Defendants' and the Barbourville Defendants' Responses as untimely Motions to Dismiss.  (Docs. # 56 and 57).  The Knox County Defendants and the Barbourville Defendants contest the characterization of their "Responses" as Motions to Dismiss.  (Docs. # 61 at 1; 62 at 2).  Accepting that argument, however, would elevate form over substance.  (Docs. # 44 at 2; 54 at 2) (indicating that the Defendants "file this Response … and concurrently seek dismissal of all claims against them.").    Despite the innocuous titles, the Knox County Defendants and Barbourville Defendants filed dispositive motions masquerading as "Responses."

The trouble, of course, is that neither the Knox County Defendants nor the Barbourville Defendants are in a position to file a procedurally proper dispositive motion.  A motion to dismiss under Rule 12(b)(6) must "be made before pleading," Fed. R. Civ. P. 12(b), and both the Knox County Defendants and the Barbourville Defendants filed

---

[4]    After the briefing on the Motions to Dismiss concluded, Plaintiffs filed a Notice of Supplemental Authority in Support of their Response in Opposition to the Motions to Dismiss.  (Doc. # 79).  The Primary KSP Defendants filed a Notice of Objection to Plaintiffs' Supplemental Authority (Doc. # 81), which the Knox County Defendants, and the Secondary KSP Defendants joined.  (Docs. # 82 and 84).  The Court granted Plaintiffs permission to file the supplemental authority and also permitted the Defendants to file objections thereto.  (Doc. # 83 and 118).  Accordingly, Plaintiffs' supplemental authority and the parties' arguments regarding that authority will be considered in this Memorandum Opinion and Order.

answers before they filed their "me too" motions.[5]  (Docs. # 30 and 31).  Therefore, those post-answer Motions to Dismiss are untimely.  *McGlone v. Bell*, 681 F.3d 718, 728 n.2 (6th Cir. 2012) ("Defendants filed an untimely motion to dismiss pursuant to Federal Rule of 12(b)(6), as it was filed after Defendants' Answer.").

A motion for judgment on the pleadings, on the other hand, would be premature. Under Rule 12(c), a party cannot move for judgment on the pleadings until after the pleadings have "closed."  Fed. R. Civ. P. 12(c).  "As a number of other district courts in this Circuit have noted, the pleadings are not closed until all defendants have filed an answer, even when one defendant has filed a motion to dismiss instead of answering." *Wells Fargo Fin. Leasing, Inc. v. Griffin*, 970 F. Supp. 2d 700, 705 (W.D. Ky. 2013) (citing *Nationwide Children's Hosp., Inc. v. D.W. Dickey & Son, Inc. Emp. Health & Welfare Plan*, No. 2:08-cv-1140-GLF, 2009 WL 5247486, at *1 (S.D. Ohio Dec. 31, 2009); *Dunn-Mason v. JP Morgan Chase Bank Nat'l Ass'n*, No. 11-cv-13419, 2013 WL 4084676, at *4 (E.D. Mich. Aug. 31, 2013); *Horen v. Bd. of Educ. of Toledo Sch. Dist.*, 594 F. Supp. 2d 833, 840 (N.D. Ohio 2009)).  Because the KSP Defendants have not yet filed answers, the pleadings have not "closed" for purposes of Rule 12(c), and any construed Motions for Judgment on the Pleadings would be premature.

When presented with this procedural predicament, other district courts in this Circuit have considered premature Rule 12(c) motions and permitted post-answer Rule 12(b)(6) motions.  *Horen*, 594 F. Supp. 2d at 840-41 (construing premature Rule 12(c) motion as a Rule 12(b)(6) motion to dismiss after other parties answered); *Signature Combs, Inc. v. United States*, 253 F. Supp. 2d 1028, 1030 (W.D. Tenn. 2003) (considering

---

[5]      The fact that the Knox County Defendants and Barbourville Defendants amended their answers after filing their motions does not alter this result.  (Docs. # 72 and 73).

Rule 12(c) motion, although premature when filed, after all other defendants had answered); *Gillespie v. City of Battle Creek*, 100 F. Supp. 3d 623, 628 (W.D. Mich. 2015) (construing defendants' premature Rule 12(c) motion as a post-answer Rule 12(b)(6) motion where the issues presented in the motion were also raised as affirmative defenses in the answer); *Prade v. City of Akron*, No. 5:14-cv-188, 2015 WL 2169975, at *2 (N.D. Ohio May 8, 2015) (denying motion to strike and converting premature Rule 12(c) motion into post-answer Rule 12(b)(6) motion because issues raised in the motion were sufficiently raised as affirmative defenses in defendant's answer).

Those decisions, however, are not binding on this Court. Nor does the Court find them persuasive. Although the Court generally disfavors piecemeal resolution of the issues, the Court refuses to relax the requirements of the Federal Rules of Civil Procedure to permit procedurally improper motions. Therefore, the Court declines to exercise its discretion to construe and consider the Knox County Defendants' and the Barbourville Defendants' filings as either post-answer Motions to Dismiss or premature Motions for Judgment on the Pleadings.[6] Accordingly, Plaintiffs' Motions to Strike the Knox County Defendants' and the Barbourville Defendants' Responses (Docs. # 56 and 57) are **granted**.

### B. Motions to Dismiss

The Court having determined that the Primary KSP Defendants' and the Secondary KSP Defendants' Motions to Dismiss (Docs. # 36 and 39) are the only

---

[6] That is not to say that the issues resolved in this Memorandum Opinion and Order will be relitigated once the pleadings have closed. The Court is bound by the law-of-the-case doctrine, which provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." *Miller v. Maddox*, 866 F.3d 386, 389 (6th Cir. 2017) (citing *Scott v. Churchill*, 377 F.3d 565, 569-70 (6th Cir. 2004)). Therefore, to the extent the issues raised are identical, and the rationale for the Court's decision is equally applicable to all parties, the Court's subsequent orders will be consistent with this Memorandum Opinion and Order.

substantive motions properly before it, the remainder of the Court's analysis will focus only on the KSP Defendants' Motions to Dismiss.

### 1. Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Put another way, "the plaintiff must allege facts that state a claim to relief that is plausible on its face and that, if accepted as true, are sufficient to raise a right to relief above the speculative level." *Wesley v. Campbell*, 779 F.3d 421, 427 (6th Cir. 2015) (quoting *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 538 (6th Cir. 2012); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Although "plaintiffs need not meet a 'probability requirement' … they must show 'more than a sheer possibility that a defendant has acted unlawfully.'" *Wesley*, 779 F.3d at 427-28 (quoting *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011)). "In ruling on the issue, a district court must 'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.'" *Id.* at 428 (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). After all, the "defendant has the burden of showing that the plaintiff has failed to state a claim for relief." *Id.*

### 2. Federal § 1983 Claims

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged violation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *Miller v. Sanilac Cty.*, 606 F.3d 240, 247 (6th Cir. 2010). "If a plaintiff

fails to make a showing on any essential element of a § 1983 claim, it must fail." *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).

Because § 1983 "is not itself a source of any substantive rights, but instead provides the means by which rights conferred elsewhere may be enforced," the Court's "first task … is to identify the specific constitutional or statutory rights allegedly infringed." *Meals v. City of Memphis*, 493 F.3d 720, 727-28 (6th Cir. 2007) (internal citations omitted). "That [a plaintiff] asserts claims under various constitutional provisions does not control [the Court's] inquiry." *Moldowan v. City of Warren*, 578 F.3d 351, 376 (6th Cir. 2009). "Rather, the critical question is whether the 'legal norms' underlying those claims implicate clearly established constitutional rights." *Id.* (citing *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985)).

The Plaintiffs' Complaint alleges that the Defendants violated their constitutional rights under the Fourth and Fourteenth Amendments when the Defendants conspired to frame them for the robbery and murder of Katherine Mills, manufactured probable cause by fabricating evidence and testimony, initiated a criminal prosecution based on that fabricated probable cause, and unlawfully continued their detention without probable cause until the Commonwealth of Kentucky acknowledged the lack of probable cause and dismissed the charges. (Doc. # 1 at ¶¶ 138-152). Specifically, the Plaintiffs' Complaint asserts seven causes of action based on those alleged constitutional violations.[7] Count One alleges a violation of Plaintiffs' constitutional right to be free from unlawful prosecution and continued detention without probable cause under the Fourth Amendment, based on the Defendants' fabrication of evidence and withholding of

---

[7] The Plaintiffs' Complaint also contains four state-law claims: malicious prosecution, negligent supervision, intentional infliction of emotional distress, and *respondeat superior*. (Doc. # 1 at ¶¶ 182-198).

exculpatory evidence.  *Id.* at ¶¶ 138-147.  Count Two alleges a violation of Plaintiffs' constitutional rights under the Fourth and Fourteenth Amendments, premised on Defendants' fabrication of evidence.  *Id.* at ¶¶ 148-152.  Counts Three, Four, Five, Six, and Seven seek to impose supervisor liability, indirect liability, conspiracy liability, and municipal liability for the aforementioned constitutional violations.[8]  *Id.* at ¶¶ 153-181.

In their Motions to Dismiss, the KSP Defendants argue that the Plaintiffs cannot pursue Counts One and Two simultaneously because they are based on the same constitutional right—the right to be free from continued detention without probable cause under the Fourth Amendment—and the same alleged conduct—the fabrication of evidence—and, thus, the fabrication-of-evidence claim is "subsumed" by the malicious-prosecution claim.  (Docs. # 36-2 at 7; 39-1 at 8).  The Plaintiffs contest the Defendants' characterization of their claims in a two-fold argument.  First, the Plaintiffs claim that an officer's fabrication of evidence can support claims under both the Fourth and Fourteenth Amendments.  (Doc. # 55-1 at 33-35).  And second, the Plaintiffs argue that Sixth Circuit precedent, which has established different elements for malicious-prosecution and fabrication-of-evidence claims, defeats the Defendants' argument.  *Id.* at 35-38.

Therefore, as a threshold matter, the Court must determine whether the Plaintiffs can simultaneously pursue a malicious-prosecution claim and a fabrication-of-evidence claim.  In the simplest of terms, the answer is yes.

The Plaintiffs' reliance on the Fourteenth Amendment, however, is not the reason why.  Under certain circumstances, the Sixth Circuit has refused to "restrict[ ] plaintiff[s]

---

[8]     Counts Six and Seven, which allege § 1983 municipal liability under *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978), are made only against Knox County and the City of Barbourville.  (Doc. # 1 at ¶¶ 172-186).  Similarly, Count Eleven, which seeks to impose *respondeat superior* liability, is alleged only against Knox County and the City of Barbourville.  *Id.* at ¶¶ 196-198.

to one theory of recovery over the other," even when the claims alleged "share a factual premise." *Gregory v. City of Louisville*, 444 F.3d 725, 750 (6th Cir. 2006) (holding that a plaintiff can simultaneously pursue a Fourteenth Amendment *Brady* claim and a Fourth Amendment continued-detention claim against a defendant who has allegedly withheld exculpatory evidence). In *Gregory*, the Sixth Circuit explained that the "legal constructs" of a "continued detention claim, which allege[s] a Fourth Amendment violation, are distinct from a [Fourteenth Amendment] *Brady* claim, which alleges a due process violation." *Id.* Because the Plaintiff had "allege[d] *both* that his detention was unlawfully continued … and that his right to a fair trial was abridged," the Sixth Circuit held that the "situs of the injury" was "distinct" and "therefore Plaintiff should be able to pursue both legal theories." *Id.* It stands to reason that a fabrication-of-evidence allegation would be treated the same way—that is, despite the shared factual premise, a plaintiff could pursue a fabrication-of-evidence claim under both the Fourth and Fourteenth Amendments, if the plaintiff alleged "*both* that his detention was unlawfully continued … and that his right to a fair trial was abridged," such that the "situs of the injury" is "distinct."[9] *Id.* The Plaintiffs, however, have not alleged that their right to a fair trial was abridged. Nor could they, as there was no trial. Therefore, Plaintiffs' fabrication-of-evidence claim has only one constitutional foundation: the Fourth Amendment.

Although Plaintiffs' malicious-prosecution claim and fabrication-of-evidence claim are both based upon the Fourth Amendment and both challenge the constitutionality of

---

[9]     This conclusion is further supported by the Supreme Court's recent decision in *Manuel v. City of Joliet*, 137 S. Ct. 911 (2017), where the Court analyzed the protections afforded by the Fourth and Fourteenth Amendments and defined the boundary between those Amendments. Pretrial detention, where probable cause is lacking, "violates the confined person's Fourth Amendment rights." *Manuel*, 137 S. Ct. at 920 n.8. "[O]nce a trial has occurred, the Fourth Amendment drops out: A person challenging the sufficiency of the evidence to support both a conviction and any ensuing incarceration does so under the Due Process Clause of the Fourteenth Amendment." *Id.*

Plaintiffs' continued detention, the practicalities of litigation and precedent dictate that the claims be analyzed separately. First, a malicious-prosecution claim and a fabrication-of-evidence claim have different elements—most notably, that one requires a plaintiff to prove that there was a lack of probable cause to support the criminal charges and the other does not. *See Morris v. Boyd*, 238 F.3d 422, *3 (6th Cir. 2000) (table) ("A claim of fabricated evidence is a constitutional tort distinct from malicious prosecution, and can be shown without proving that the state lacked probable cause."); *see also Stemler v. City of Florence*, 126 F.3d 856, 872 (6th Cir. 1997) (explaining that a "claim of fabricated evidence does not require a conclusion that the state did not have probable cause to prosecute" the plaintiff); *Caminata v. Cty. of Wexford*, 664 F. App'x 496, (6th Cir. 2016) (noting that plaintiff "allege[d] two Fourth Amendment claims against [defendant]: fabrication of evidence and malicious prosecution" but "consider[ing] the claims together" because of the overlap). Because "the claims have different elements," analyzing those claims separately "is sensible." *Mills v. Barnard*, 869 F.3d 473, 485 (6th Cir. 2017). Furthermore, this analysis aligns with Sixth Circuit precedent, which establishes that a law-enforcement officer's fabrication of evidence violates an individual's constitutional rights, regardless of the strength of or support for the criminal charges. *See Webb v. United States*, 789 F.3d 647, 670 (6th Cir. 2015) ("[E]ven if independent evidence establishes probable cause against a suspect, it would still be unlawful for law-enforcement officers to fabricate evidence in order to strengthen the case against the suspect."). Accordingly, despite the overlap between the claims, "[i]t is not the role of this Court to restrict [Plaintiffs'] choice of viable legal theories," and the Plaintiffs are permitted to proceed on both their malicious-prosecution and fabrication-of-evidence claims

simultaneously.  *Gregory*, 444 F.3d at 750.

Having identified the specific constitutional rights allegedly infringed and determined that the Plaintiffs can simultaneously pursue each of the counts in their Complaint, the Court now turns to the merits of Plaintiffs' claims.  In this case, there is no dispute that Defendants were acting under color of state law.  Therefore, the only question is whether the Plaintiffs were "deprived of a right secured by the Constitution or the laws of the United States." *Redding*, 241 F.3d at 532.  The Court will address each of Plaintiffs' claims and the Motions to Dismiss in turn, construing the Complaint in the light most favorable to Plaintiffs and accepting its allegations as true.

### a.    Count One: Malicious Prosecution

"The Sixth Circuit 'recognizes a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment,' which 'encompasses wrongful investigation, prosecution, conviction, and incarceration.'"  *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (quoting *Barnes v. Wright*, 449 F.3d 709, 715-16 (6th Cir. 2006)). "To succeed on a malicious-prosecution claim under § 1983 when the claim is premised on a violation of the Fourth Amendment, a plaintiff must prove" four elements.  *Id.*  "First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant 'made, influenced, or participated in the decision to prosecute." *Id.* (internal citations omitted).  "Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution."  *Id.*  "Third, the plaintiff must show that as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial seizure."  *Id.* at 308-09 (internal

citations omitted).  And "[f]ourth, the criminal proceeding must have been resolved in the plaintiff's favor."  *Id.* at 309.

The basis of Plaintiffs' malicious-prosecution claim is that the Defendants caused their prosecution and continued detention unlawfully by fabricating and withholding evidence, the absence of either or both of which would have dissolved probable cause. (Doc. # 1 at ¶¶ 102-112; 138-147).  There appears to be no dispute that the Plaintiffs suffered a deprivation of liberty; thus, the Court will focus on the other three elements.

### i.      Made, Influenced, or Participated

The KSP Defendants argue that the Plaintiffs' Complaint fails to allege sufficient facts that support any involvement in the decision to prosecute the Plaintiffs.  (Doc. # 39-1 at 10).  Specifically, the KSP Defendants claim that the Complaint contains no specific factual allegations against Defendant Eubanks,[10] and that Defendants Johnson, Mefford, Farris, and Joseph "were not the driving force behind the prosecution of the Plaintiffs." *Id.* In response, Plaintiffs argue that the Complaint contains ample factual allegations that support their claim that each of the Defendants influenced the decision to initiate charges through their alleged participation in manufacturing evidence, coercing witnesses, and falsely implicating the Plaintiffs.  (Doc. # 55-1 at 49).

To state a claim against the Defendants, the Complaint "must plausibly allege" that the Defendants "'made, influenced, or participated in the decision to prosecute." *Sykes*, 625 F.3d at 308.  "Under the first element, an investigating officer does not escape liability just because someone else (e.g., the prosecutor) made the actual decision to prosecute,

---

[10]      To avoid confusion, the Court notes that all references to "Defendant Eubanks" concern Defendant KSP Trooper Dallas Eubanks, not Knox County Deputy Derek Eubanks.  Because the Court has stricken the Knox County Defendants' Response and is not considering those arguments, the merits of Plaintiffs' claims against Deputy Derek Eubanks are not the subject of this Memorandum Opinion and Order.

so long as the plaintiff can show that the officer 'influenced or participated in the decision to prosecute.'" *Sampson v. Vill. of Mackinaw City*, 685 F. App'x 407, 417 (6th Cir. 2017) (quoting *Sykes*, 625 F.3d at 311-12). But, to be liable for malicious prosecution, "the officer must participate in a way that aids in the decision [to prosecute], as opposed to passively or neutrally participating." *Sykes*, 325 F.3d at 308 n.5. Put another way, the officer's "participation must be marked by some kind of blameworthiness, something beyond mere negligence or innocent mistake," to satisfy the first element of a malicious-prosecution claim. *Johnson v. Moseley*, 790 F.3d 649, 655 (6th Cir. 2015).

The Plaintiffs have plausibly alleged that the Defendants made, influenced, or participated in the decision to prosecute. The Plaintiffs' "attempt to lump all of the officers together under the" broad term "Defendant Officers" is not improper, as the Defendants suggest. (Docs. # 36-2 at 3; 39-1 at 3). The Complaint plainly states that each of the individual law-enforcement officers are referred to collectively as the "Defendant Officers." (Doc. # 1 at ¶ 19). The Complaint then continues on to assert a myriad of specific factual allegations against those "Defendant Officers." Specifically, the Complaint alleges that the Defendant Officers learned of evidence implicating other suspects, reached an agreement to protect those other suspects and frame the Plaintiffs, coerced witnesses, fabricated statements, manipulated evidence, destroyed and withheld material exculpatory evidence, and concealed all of those actions from the prosecutor. *Id.* at ¶¶ 23-25, 30, 45-46, 50-53, 56-58, 63-64, 70, 82-83, 88-89, 102-106, 108, 110-112, 118-125. Therefore, the Complaint sufficiently alleges that each Defendant Officer—without specifically naming them—actively participated in the decision to prosecute Plaintiffs by coercing witnesses, fabricating statements, manipulating evidence, withholding and

destroying exculpatory evidence, and concealing their actions.

At this stage of the case, where the Court is required to accept Plaintiffs' factual allegations as true, that is sufficient. The Plaintiffs are not required to—nor could they be expected to—"make 'detailed factual allegations' about which officer committed which act." *Horn v. City of Covington*, No. 2:14-cv-73-DLB, 2015 WL 4042154, at *6 (E.D. Ky. July 1, 2015) (quoting *Iqbal*, 556 U.S. at 678); *see also Lyons v. Jacobs*, No. 2:16-cv-813-ALM, 2017 WL 4168369, at *6 (S.D. Ohio Sept. 20, 2017) (rejecting Defendants' argument that Plaintiffs failed to state a plausible constitutional violation because Plaintiffs "merely included the names of all the Defendants and lumped them together in a conclusory fashion"). Ultimately, the Plaintiffs may be unable to prove that all ten of the officers were involved in each factual allegation levied against the "Defendant Officers," but that "burden is reserved for later stages of the litigation." *Id.* Accordingly, the Complaint satisfies the first element of Plaintiffs' § 1938 malicious-prosecution claim.

### ii.    Probable Cause

The KSP Defendants also argue that the Plaintiffs' have failed to state a malicious-prosecution claim because "there was probable cause at multiple stages of the criminal proceedings." (Doc. # 39-1 at 10). Specifically, the Defendants highlight the arrest warrants issued by a local judge, a preliminary hearing that found probable cause for the criminal charges, and the grand jury indictments which were returned against Plaintiffs. *Id.* In response, the Plaintiffs point to the Commonwealth's acknowledgment "that probable cause did not exist" at the time the criminal charges were dismissed and argue that Defendants cannot immunize their unconstitutional conduct by using the fabricated

evidence to obtain arrest warrants, survive a preliminary hearing, or secure grand-jury indictments.  (Doc. # 55-1 at 47, 52-54).

To state a plausible § 1983 malicious-prosecution claim, the plaintiff must allege "that there was a lack of probable cause for the criminal prosecution."  *Sykes*, 625 F.3d at 308.  "Probable cause to initiate a criminal prosecution exists where 'facts and circumstances are sufficient to lead an ordinarily prudent person to believe the accused was guilty of the crime charged.'"  *Webb v. United States*, 789 F.3d 647, 666 (6th Cir. 2015).  Whether probable cause exists is determined by the totality of the circumstances." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

"As a general rule, 'the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause.'"  *Webb*, 789 F.3d at 660 (quoting *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006)).  There is, however, a "long-held exception to that general rule"—"when the defendant knowingly or recklessly presented false testimony to, or omitted critical information from, the grand jury in order to obtain that indictment," the presumption of probable cause is rebuttable.  *Jones v. Clark Cty.*, 690 F. App'x 334, 335 (6th Cir. 2017) (citing *Sykes*, 625 F.3d at 312). Therefore, "[t]he existence of an indictment is … not a talisman that always wards off a malicious-prosecution claim."  *Mills*, 869 F.3d at 180.  Even so, "not every failed criminal prosecution will sustain a subsequent malicious-prosecution claim."  *Bickerstaff v. Lucarelli*, 830 F.3d 388, 397 (6th Cir. 2016) (citing *Harris v. United States*, 422 F.3d 322, 327 (6th Cir. 2005)).

Of particular relevance here, "pre-indictment nontestimonial acts that were material to the prosecution of a plaintiff [can] rebut the presumption of probable cause

established by a grand-jury indictment." *Mills*, 869 F.3d at 180 (citing *King v. Harwood*, 852 F.3d 568, 587-80 (6th Cir. 2017)). The "presumption that the grand-jury indictment is evidence of probable cause is rebuttable and not conclusive" if three requirements are met:

> (1) a law-enforcement officer, in the course of setting a prosecution in motion, either knowingly or recklessly makes false statements (such as affidavits or investigative reports) or falsifies or fabricates evidence; (2) the false statements and evidence, together with any concomitant misleading omissions, are material to the ultimate prosecution of the plaintiff; and (3) the false statements, evidence, and omission do not consist solely of grand-jury testimony or preparation for that testimony (where preparation has a meaning broad enough to encompass conspiring to commit perjury before the grand jury).

*King*, 852 F.3d at 587-88.

The Plaintiffs have alleged just that—that "the Defendant Officers fabricated or manipulated all of the evidence of guilt" in the underlying criminal case and set their prosecutions in motion with false statements and fabricated evidence, apart from any grand-jury testimony they may have given. (Doc. # 1 at ¶¶ 105, 109, 112-113). If those allegations are taken as true, as the Court is required to take them, any presumption of probable cause created by the warrant, the preliminary hearing, or the grand-jury indictment is rebuttable. Therefore, the Defendants' argument that probable cause existed does not warrant dismissal of Plaintiffs' claim. The Complaint adequately alleges that there was a lack of probable cause for Plaintiffs' criminal prosecutions, and thus, the second element of Plaintiffs' § 1938 malicious-prosecution claim is satisfied.

### iii.    Favorable Termination

Lastly, the KSP Defendants argue that the Complaint fails to adequately allege that the underlying prosecution was terminated in the Plaintiffs' favor. (Docs. # 36-2 at 9;

39-1 at 11). Although the Defendants concede that "Plaintiffs' Complaint alleges that the criminal proceedings were dismissed against them in a manner indicative of their innocence," the Defendants attack the truth of that allegation and claim that the criminal proceedings were dismissed without prejudice "because several key witnesses had become unavailable due to death, injury, or disappearance" and "other key witnesses were anticipated to change their testimony." *Id.*

"The determination of whether a termination is sufficiently favorable ultimately rests with the trial court as a matter of law, absent a factual dispute relative to the circumstances of the dismissal." *Ohnemus v. Thompson*, 594 F. App'x 864, 866 (6th Cir. 2014) (citing *Davidson v. Castner-Knott Dry Goods Co., Inc.*, 202 S.W.3d 597, 606 (Ky. Ct. App. 2006)). Both the Sixth Circuit and Kentucky courts have looked to the Restatement (Second) of Torts § 660 for guidance on whether a proceeding was terminated in the accused's favor. According to that section of the Restatement, "proceedings are 'terminated in favor of the accused' … only when their final disposition is such as to indicate the innocence of the accused." Restatement (Second) of Torts § 660. Put another way, the termination of the proceedings "must go to the merits of the accused's professed innocence for the dismissal to be 'favorable' to him." *Ohnemus*, 594 F. App'x at 867. Thus, a plaintiff can satisfy the favorable-termination element when the dismissal is "one-sided" and "not the result of any settlement or compromise." *Id.* (citing *Feinberg v. Townsend*, 107 S.W.3d 910, 912 (Ky. Ct. App. 2003)). If the dismissal is "not the unilateral act of the prosecutor" and the accused sacrifices "something to secure dismissal of the charges," the termination of the proceedings is not favorable to the

accused. *Id.* at 867 (citing *Broaddus v. Campbell*, 911 S.W.2d 281, 284 (Ky. Ct. App. 1995)).

First, that the dismissal of Plaintiffs' criminal case was without prejudice is of little significance. Kentucky courts have held that "a dismissal of a case—whether it be with or without prejudice—constitutes a 'final termination' for purposes of" malicious-prosecution claims. *Davidson*, 202 S.W.3d at 604. And furthermore, a review of the Complaint reveals that the Plaintiffs have affirmatively alleged that the charges against them were dismissed in a manner indicative of their innocence. (Doc. # 1 at ¶¶ 127, 141, 183). The Defendants' claim that such an allegation is untrue fails to warrant relief at the motion-to-dismiss stage, where the Court must construe the Complaint in the light most favorable to Plaintiffs, accept its allegations as true, and draw all reasonable inferences in their favor. Therefore, the allegations in the Complaint satisfy the fourth element of Plaintiffs' § 1938 malicious-prosecution claim.

That conclusion does not foreclose the possibility that the Defendants may ultimately prove that the dismissal of the Plaintiffs' criminal charges was the result of a compromise, a procedural technicality, the exercise of prosecutorial discretion, or some other method of dismissal that is not indicative of Plaintiffs' innocence, which would likely prove fatal to their § 1983 malicious-prosecution claim. *See, e.g.*, *Ohnemus*, 594 F. App'x at 867 (affirming dismissal of malicious-prosecution claim where the dismissal of the criminal charge was the result of a mutual agreement in which the plaintiff paid restitution); *Evridge v. Rice*, No. 3:11-cv-40-DCR, 2011 WL 6014407, at *5 (E.D. Ky. Dec. 2, 2011) (dismissing malicious-prosecution claim where plaintiff participated in an informal pre-trial diversion program). Dismissal on that basis today, however, would be premature.

Accordingly, Plaintiffs' Complaint plausibly alleges a Fourth Amendment malicious-prosecution claim against the Defendants, and the KSP Defendants' Motions to Dismiss (Doc. # 36 and 39) are **denied** with respect to Count One.

### b.     Count Two: Fabrication of Evidence

"A Fourth Amendment claim for fabrication of evidence lies where a defendant knowingly manufactures probable cause, thereby effecting a seizure." *Robertson v. Lucas*, 753 F.3d 606, 616 n.5 (6th Cir. 2014).  To state a fabrication-of-evidence claim, the Plaintiffs must plausibly allege that the Defendants knowingly fabricated evidence against them and that there was a reasonable likelihood that the false evidence would have affected the decision of the jury. *Gregory*, 444 F.3d at 737 (citing *Stemler*, 126 F.3d at 872).

As explained above, the Plaintiffs can simultaneously pursue their malicious-prosecution and fabrication-of-evidence claims, both of which are predicated on the Fourth Amendment.   That conclusion, however, gives rise to another threshold issue regarding Plaintiffs' fabrication-of-evidence claim: Is it timely?   The KSP Defendants argue that Plaintiffs' fabrication-of-evidence claim is untimely and barred by the statute of limitations. (Docs. # 36-2 at 5; 39-1 at 5-6).

### i.     Statute of Limitations[11]

"After pinpointing" the specific constitutional right at issue, the Court "must determine the elements of, and rules associated with, an action seeking damages for its

---

[11]      The Court notes that "a motion under Rule 12(b)(6), which considers only the allegations in the complaint, is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012); *see also Hall v. City of Williamsburg*, No. 6:16-cv-304-DCR, 2017 WL 3668113, at *4 (E.D. Ky. Aug. 24, 2017).  Therefore, only when the allegations in the complaint affirmatively show that the claim is time-barred," is dismissal under Rule 12(b)(6) appropriate. *Id.*

violation." *Manuel v. City of Joliet*, 137 S. Ct. 911, 920 (2017). Although § 1983 "provides a federal cause of action … in several respects … federal law looks to the law of the State in which the cause of action arose." *Wallace v. Kato*, 549 U.S. 384, 387 (2007). "That is so for the length of the statute of limitations: It is that which the State provides for personal-injury torts." *Id.* (citing *Owens v. Okure*, 488 U.S. 235, 249-50 (1989); *Wilson v. Garcia*, 471 U.S. 261, 279-80 (1985)). Thus, in Kentucky, § 1983 actions are subject to the one-year statute of limitations set forth in Ky. Rev. Stat. Ann. § 413.140(1)(a). *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990); *Bonner v. Perry*, 654 F.3d 424 (6th Cir. 2009).

The "accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace*, 549 U.S. at 388. "Aspects of § 1983 which are not governed by reference to state law are governed by federal rules conforming in general to common-law tort principles." *Id.* "Under those principles, it is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action," or in other words, "when the plaintiff can file suit and obtain relief." *Id.* (internal citations and quotation marks omitted).

Here, the parties agree that a one-year statute of limitations applies. They disagree, however, on when Plaintiffs' fabrication-of-evidence claim accrued—that is, the date on which the applicable one-year statute of limitations began to run. Plaintiffs argue that their fabrication-of-evidence claim accrued when the underlying criminal prosecutions were terminated in their favor—on June 30, 2016 and August 22, 2016. (Doc. # 55-1 at 8). The Defendants insist that the Plaintiffs' fabrication-of-evidence claim accrued much earlier, either when their allegedly unlawful detention began—on March

15, 2012—or when the last alleged act of fabrication of evidence occurred—on February 26, 2014. (Docs. # 36-2 at 5; 39-1 at 5; 60 at 5-6).

These are familiar arguments. In fact, they mirror arguments recently presented to the Supreme Court. In *Manuel*, the Supreme Court clarified that the plaintiff, who was arrested and detained for nearly seven weeks—on the basis of allegedly fabricated evidence—and secured dismissal of his criminal case before proceeding to trial, could challenge his "post-legal-process pretrial detention" under the Fourth Amendment. *Manuel*, 137 S. Ct.at 917-19. Then, the Supreme Court acknowledged the difficult statute-of-limitations question raised by post-legal-process pretrial detention claims and outlined the parties' arguments:

> Manuel and the City offer competing views about what accrual rule should govern a § 1983 suit challenging post-legal-process pretrial detention. According to Manuel, that Fourth Amendment claim accrues only upon the dismissal of criminal charges… Relying on this Court's caselaw, Manuel analogizes his claim to the common-law tort of malicious prosecution. An element of that tort is the termination of the … proceeding in favor of the accused; and accordingly, the statute of limitations does not start to run until that termination takes place. Manuel argues that following the same rule in suits like his will avoid conflicting resolutions in § 1983 litigation and criminal proceedings by precluding the possibility of the claimant succeeding in the tort action after having been convicted in the underlying criminal prosecution…
>
> The City, however, contends that any such Fourth Amendment claim accrues (and the limitations period starts to run) on the date of the initiation of legal process… According to the City, the most analogous tort to Manuel's constitutional claim is not malicious prosecution but false arrest, which accrues when legal process commences. And even if malicious prosecution were the better comparison, the City continues, a court should decline to adopt that tort's favorable-termination element and associated accrual rule in adjudicating a § 1983 claim involving pretrial detention. That element, the City argues, makes little sense in this context because the Fourth Amendment is concerned not with the outcome of a prosecution, but with the legality of searches and seizures.

*Id.* at 921 (internal citations, quotation marks, and alterations omitted). Unfortunately, however, the Supreme Court declined to resolve the statute-of-limitations issue. *Id.* at 922. Therefore, the Court must determine the appropriate accrual rule without the benefit of any helpful binding precedent.[12]

"In defining the contours and prerequisites of a § 1983 claim, including its rule of accrual, courts are to look first to the common law of torts." *Manuel*, 137 S. Ct. at 920. "Sometimes, that review of common law will lead a court to adopt wholesale the rules that would apply in a suit involving the most analogous tort." *Id.* "But not always." *Id.* at 921. "Common-law principles are meant to guide rather than to control the definition of § 1983 claims, serving 'more as a source of inspired examples than of prefabricated components.'" *Id.* (quoting *Hartman v. Moore*, 547 U.S. 250, 258 (2006)). Therefore, "[i]n applying, selecting among, or adjusting common-law approaches, courts must closely attend to the value and purposes of the constitutional right at issue." *Id.*

Much like the parties in *Manuel*, the parties here attempt to analogize Plaintiffs' Fourth Amendment fabrication-of-evidence claim to common-law torts. Plaintiffs urge the Court to adopt the accrual rule for malicious-prosecution claims, which postpones accrual until the favorable termination of criminal proceedings. (Doc. # 55-1 at 8-27). The Defendants, on the other hand, argue that such a rule makes little sense in the post-legal-process pretrial detention context because there is no "existing conviction or sentence in jeopardy of being impugned or invalidated." (Doc. # 60 at 7). Instead, the Defendants suggest that the Court adopt the accrual rules for unlawful-arrest claims. *Id.* at 5-6.

---

[12] Although the Sixth Circuit has addressed the statute-of-limitations and accrual rules for fabrication-of-evidence claims since the Supreme Court's decision in *Manuel*, the fabricated evidence in that case was allegedly used to obtain a conviction, and thus, involved a Fourteenth Amendment claim, not a Fourth Amendment claim. *Mills v. Barnard*, 869 F.3d 473, 484 (6th Cir. 2017).

Because the parties rely heavily on the cases that establish the accrual rules for malicious-prosecution claims—*Heck v. Humphrey*, 512 U.S. 477 (1994)—and unlawful-arrest claims—*Wallace v. Kato*, 549 U.S. 384—a review of those cases is warranted.

In *Heck*, a state prisoner brought a § 1983 action alleging that his conviction violated his constitutional rights. Specifically, the prisoner-plaintiff claimed that officers had conducted an unlawful investigation, knowingly destroyed exculpatory evidence, and relied on an unlawful voice-identification procedure to obtain his conviction. *Heck*, 512 U.S. at 479. Thus, the Supreme Court found itself "at the intersection of the two most fertile sources" of federal civil-rights litigation—the Civil Rights Act of 1871, 42 U.S.C § 1983, and the federal habeas corpus statute, 28 U.S.C. § 2254. *Id.* at 480. Although both of those statutes "provide access to a federal forum for claims of unconstitutional treatment at the hands of state officials … they differ in their source and operation." *Id.* And critically, "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement … even though such a claim may come within the literal terms of § 1983." *Id.* at 481. Therefore, the *Heck* Court had to answer a difficult question: What becomes of a § 1983 claim that cannot be brought because the individual is required to seek habeas corpus relief instead? The Court provided a simple answer: a § 1983 cause of action does not exist—at least not yet.

Therefore, "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question

by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87. "A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983." *Id.* at 487.

Because a prisoner-plaintiff "has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus," the *Heck* Court determined that "the statute of limitations poses no difficulty while the state challenges are being pursued, since the § 1983 claim has not yet arisen." *Id.* at 489. Analogizing the prisoner-plaintiff's § 1983 claim to the common-law tort of malicious prosecution, the *Heck* Court reasoned as follows:

> Just as a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor… so also a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated.

*Id.* at 489-90.

Therefore, *Heck*'s holding and its delayed-accrual rule for statute-of-limitations purposes is straight-forward. A § 1983 claim that would render a conviction or sentence invalid does not accrue until the conviction or sentence has been invalidated. And accordingly, the statute of limitations does not begin to run until that conviction or sentence is invalidated.

Applying *Heck*'s rule, however, has proved to be easier said than done. Many courts extended *Heck*'s rule and reasoning to pre-conviction situations in which a § 1983 claim, if successful, would necessarily imply the invalidity of a potential or future conviction. *See, e.g.*, *Shamaeizadeh v. Cunigan*, 182 F.3d 391, 398 (6th Cir. 1999); *Covington v. City of New York*, 171 F.3d 117, 124 (2d Cir. 1999); *Smith v. Holtz*, 87 F.3d

108, 113 (3d Cir. 1996); *Washington v. Summerville*, 127 F.3d 552, 556 (7th Cir. 1997);

*Harvey v. Waldron*, 210 F.3d 1008, 1014 (9th Cir. 2000); *Beck v. City of Muskogee Police*

*Dep't*, 195 F.3d 553 (10th Cir. 1999); *Uboh v. Reno*, 141 F.3d 1000, 1006-07 (11th Cir.

1998).  But, the Supreme Court has since made clear that "the *Heck* rule for deferred

accrual is called into play only when there exists a conviction or sentence that has not

been … invalidated."  *Wallace*, 549 U.S. at 389.  In other words, *Heck* has "no application

in the pre-conviction context."  *Fox v. DeSoto*, 489 F.3d 228, 237 (6th Cir. 2007).

As such, the Defendants argue that the lack of a conviction against Plaintiffs

prevents *Heck*'s delayed-accrual rule from applying here.  (Doc. # 60 at 7-8).  In its place,

Defendants point to *Wallace* as the proper guidepost for the case at bar.  *Id*.  The Court

agrees with the Defendants on the first point—because the Plaintiffs were never

convicted, their reliance on *Heck* is unavailing.  That *Heck* does not apply, however, does

not mean that *Wallace* controls or that *Wallace* establishes the accrual date for Plaintiffs'

fabrication-of-evidence claim.[13]  Rather, *Wallace* simply serves as an example of the type

of analysis this Court must undertake—the Court must look to the common law of torts,

select the most analogous tort, and fashion an appropriate accrual rule.

In *Wallace*, the plaintiff filed suit under § 1983, seeking damages and challenging

his arrest as unlawful under the Fourth Amendment.  *Wallace*, 549 U.S. at 386.  The

plaintiff's arrest led to a lengthy interrogation and a confession, and he was convicted of

first-degree murder and sentenced to twenty-six years in prison.  *Id*.  On direct appeal,

---

[13]     If it did, there would have been no reason for the Supreme Court to remand *Manuel* for consideration of the accrual issue.  In that case, the plaintiff was arrested and detained for nearly seven weeks on the basis of allegedly fabricated evidence.  There was no extant criminal conviction.  Nevertheless, the statute-of-limitations issue—specifically, "what accrual rule should govern a § 1983 suit challenging post-legal-process pretrial detention"—was front and center.  *Manuel*, 137 S. Ct. at 921.

the Appellate Court of Illinois determined that the officers had arrested the plaintiff without probable cause, and remanded for a new trial. *Id.* at 387. Instead of retrying the case, prosecutors dropped the charges. *Id.* Almost a year after the criminal prosecution was dismissed, the plaintiff filed suit under § 1983. *Id.* By that time, however, approximately nine years and two months had passed since plaintiff's unlawful arrest. The defendants argued the suit was untimely. The Supreme Court agreed.

Looking to the common law of torts, the *Wallace* Court found that the tort of false imprisonment provided the "proper analogy" and borrowed the corresponding accrual rules for his § 1983 unlawful-arrest claim:

> The running of the statute of limitations on false imprisonment is subject to a distinctive rule—dictated, perhaps, by the reality that the victim may not be able to sue while he is still imprisoned: Limitations begin to run against an action for false imprisonment when the alleged false imprisonment ends.

*Id.* at 389 (internal citations and quotation marks omitted). "Thus, to determine the beginning of the limitations period," the Court had to "determine when [plaintiff's] false imprisonment came to an end." *Id.* Rejecting plaintiff's "contention that his false imprisonment ended upon his release from custody, after the State dropped the charges against him," the Court determined that plaintiff's false imprisonment "ended much earlier, when legal process was initiated against him." *Id.* at 390. That conclusion was dictated by the common law of torts:

> Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held *pursuant to such process*—when, for example, he is bound over by a magistrate or arraigned on charges. Thereafter, unlawful detention forms part of the damages for the entirely distinct tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by *wrongful institution* of legal process.

*Id.* at 389-90.  Therefore, the *Wallace* Court held that the statute of limitations on plaintiff's § 1983 unlawful-arrest claim "commenced to run when he appeared before the examining magistrate and was bound over for trial," and that consequently, plaintiff's claim was time-barred.  *Id.* at 392.

But, *Wallace*'s logic is less persuasive in the fabrication-of-evidence context. Because a false-imprisonment claim is based upon "detention without legal process," it makes sense that the claim accrues when the constitutional violation ceases—"at the time the [plaintiff] becomes detained pursuant to legal process."  *Id.* at 389, 397.  Pretrial detention, on the other hand, "can violate the Fourth Amendment not only when it precedes, but also when it follows, the start of legal process in a criminal case."  *Manuel*, 137 S. Ct. at 918.  Put another way, the commencement of legal process is of no consequence to a claim challenging pretrial detention if the lack of probable cause continues.  *Id.* at 918-19 ("Legal process has gone forward, but it has done nothing to satisfy the Fourth Amendment's probable-cause requirement.").

Why, then, should a Fourth Amendment claim for unlawful pretrial detention accrue—and the statute of limitations begin to run—when legal process commences, an event that the Supreme Court has held has no significance in the pretrial-detention context?  The answer is simple—it should not.

Accordingly, the Court finds that the common-law tort of malicious prosecution provides the proper analogy to the Plaintiffs' fabrication-of-evidence claim, for much the same reasons as the Supreme Court explained in *Heck*:

> The common-law cause of action for malicious prosecution provides the closest analogy to claims of the type considered here because, unlike the related cause of action for false arrest or imprisonment, it permits damages for confinement imposed pursuant to legal process.  If there is a false arrest

> claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more.  But a successful malicious prosecution plaintiff may recover, in addition to general damages, compensation for any arrest or imprisonment, including damages for discomfort or injury to his health, or loss of time and deprivation of the society.

*Heck*, 512 U.S. at 484 (internal citations and quotation marks omitted).

Although not a perfect fit, because a fabrication-of-evidence claim does not require Plaintiffs to prove that the prior criminal proceedings terminated in their favor, the common-law tort of malicious prosecution is the most apt analogy.  Both malicious-prosecution and fabrication-of-evidence claims seek recompense for the same injury—unlawful post-legal-process pretrial detention—and permit recovery of the same damages.  Essentially, the claims are two sides of the same coin—that is, two theories of liability for unlawful pretrial detention under the Fourth Amendment.

By contrast, the common-law tort of false imprisonment has little in common with Plaintiffs' fabrication-of-evidence claim.  The nature of the injuries and the remedies provided are entirely distinct.  While an unlawful arrest has a definite duration—from the initial seizure until the start of legal process—fabrication of evidence can occur and give rise to a Fourth Amendment claim at any time—before arrest, after arrest but before legal process, or during post-legal-process pretrial detention.[14]  Moreover, the wisdom behind the accrual rule for false-imprisonment and wrongful-arrest claims—that the harm is complete and the injury has ended—amounts to sheer folly in the fabrication-of-evidence context.  Therefore, Defendants' attempt to fit Plaintiffs' fabrication-of-evidence claim into *Wallace*'s unlawful-arrest accrual rule is akin to shoving a square peg into a round hole.

---

[14]     Of course, fabrication of evidence could also occur during a trial, but that would give rise to a Fourteenth Amendment claim.

Given the value and purposes of the constitutional right at issue—the right to be free from unlawful pretrial detention based on the fabrication of evidence—the Court finds that the common-law tort of malicious prosecution bears the closest resemblance to Plaintiffs' fabrication-of-evidence claim. Thus, that claim accrued—and the statute of limitations began to run—when the criminal proceedings terminated in Plaintiffs' favor— on June 30, 2016 and August 22, 2016. Accordingly, Plaintiffs' fabrication-of-evidence claim, which was brought within one year of the termination of the underlying criminal proceedings, is not time-barred and the KSP Defendants' Motions to Dismiss (Doc. # 36 and 39) are **denied** with respect to Count Two.[15]

### c.    Count Three: Supervisor Liability

For personal liability against a supervisor, "liability must be based on more than *respondeat superior*." *Phillips v. Roane Cty., Tenn.*, 534 F.3d 531, 543 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). "Nor can liability of supervisors be based solely on the right to control employees" or "simple awareness of employees' misconduct." *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 470 (6th Cir. 2006) (internal citations omitted). Rather, "a supervisory official's failure to supervise, control, or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident or misconduct or in some other way directly participated in it.'" *Id.* (quoting *Shehee*, 199 F.3d at 300). "At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Shehee*, 199 F.3d at 300. "A mere failure to act will not suffice to establish supervisory liability." *Essex v. Cty. of Livingston*,

---

[15]    The KSP Defendants have not challenged the sufficiency of the Complaint's factual allegations supporting Plaintiffs' fabrication-of-evidence claim.

518 F. App'x 351, 355 (6th Cir. 2013) (citing *Gregory*, 444 F.3d at 751). Therefore, personal liability against a supervisor "under § 1983 must be based on active unconstitutional behavior." [16] *Shehee*, 199 F.3d at 300.

The KSP Defendants argue that Plaintiffs' supervisory-liability claim must be dismissed for two reasons. First, the Defendants claim that the supervisory-liability claim is barred by the statute of limitations. (Doc. # 39-1 at 8). Second, the Defendants argue that Plaintiffs' supervisory-liability claim fails as a matter of law because it is based on Defendant Joseph's "mere failure to act," which does not support supervisory liability. *Id.* at 14-15. In response, the Plaintiffs argue that the Complaint states a plausible supervisor-liability claim against Defendant Joseph because the Complaint alleges that she "was personally involved in the underlying investigation and the misconduct that ensued." (Doc. # 55-1 at 59 n.12).

As for timeliness, the Defendants claim that the one-year statute of limitations began to run when the unconstitutional supervision occurred, which allegedly "happened at least three years prior to the filing of this suit." (Doc. # 39-1 at 8). But that argument is illogical. Supervisor-liability claims do not exist in a vacuum, separated from the underlying subordinate's actions that give rise to the claim. Instead, supervisor-liability claims are derivative of—and dependent upon—the underlying unconstitutional actions of the supervisors' subordinates. Thus, it would make little sense for the statute of limitations for a supervisor-liability claim to start running—and expire—before the statute of limitations for the underlying malicious-prosecution or fabrication-of-evidence claims

---

[16] In contrast, official-capacity or municipal-liability claims "do not require direct participation in or encouragement of the specific acts; rather, these claims may be premised on a failure to act." *Essex*, 518 F. App'x at 355 (citing *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012)).

have even started to run. Especially given that a successful supervisor-liability claim requires the supervisor's active participation in the underlying constitutional violation. Therefore, logic and common sense command that both the supervisor-liability claim and the underlying § 1983 claim upon which it is based accrued at the same time.[17] As such, the Plaintiffs' supervisor-liability claim accrued—and began to run—at the same time as the malicious-prosecution and fabrication-of-evidence claims upon which it is based: when the criminal proceedings terminated in the Plaintiffs' favor.

In addition to being timely, Plaintiffs' supervisor-liability claim is supported by sufficient factual allegations. Although the Complaint alleges that Defendant Joseph "failed to adequately train and supervise the individual Defendant Officers," the Complaint also alleges that she was "personally involved in the case against Plaintiffs" and knew or should have known of her "subordinates' unconstitutional actions and related misconduct." (Doc. # 1 at ¶¶ 154-155). Specifically, the Plaintiffs have alleged that Defendant Joseph directly participated, encouraged, authorized, or knowingly acquiesced in the alleged fabrication of evidence, coercion of witnesses, manipulation of evidence, and concealment of material exculpatory evidence. *Id.* at ¶¶ 23-25, 30, 45-46, 50-53, 56-58, 63-64, 70, 82-83, 88-89, 102-106, 108, 110-112, 118-125. Even though those specific factual allegations are made against all of the "Defendant Officers," that term includes Defendant Joseph. *Id.* at ¶ 19. As the Court has previously explained, at the motion-to-dismiss stage, the Plaintiffs are not required to make detailed factual allegations

---

[17] And other courts agree. *See, e.g.*, *McCarty v. Gilchrist*, 646 F.3d 1281, 1289 (10th Cir. 2011) (applying the same accrual date to plaintiff's failure-to-train and failure-to-supervise claims as the underlying constitutional claims); *Alvarado v. Hudak*, No. 14-cv-9641, 2015 WL 9489912, at *2 (N.D. Ill. Dec. 30, 2015) (borrowing accrual date of underlying constitutional claim for plaintiff's supervisor-liability claim); *Ellis v. Lewis*, No. 5:12-cv-3122, 2014 WL 4384036, at *6 (E.D.N.C. Sept. 3, 2014) (finding plaintiff's supervisor-liability claim "arose out of the same conduct as plaintiff's Eighth Amendment claim" and determining the claims have the same accrual date).

specifically linking Defendant Joseph to particular actions.  *See supra* pp. 16-17.  Instead, Plaintiffs can broadly allege factual allegations against multiple defendants en masse. And the Court is required to accept those factual allegations as true.  Here, the Complaint alleges more than a mere "failure to act" and sufficiently states a plausible § 1983 supervisor-liability claim.  Accordingly, the KSP Defendants' Motions to Dismiss (Doc. # 36 and 39) are **denied** with respect to Count Three.

### d.    Count Four: Failure to Intervene

Although most failure-to-intervene claims involve allegations of excessive force, the Sixth Circuit has extended the failure-to-intervene theory of liability beyond the excessive-force context.  *See Smith v. Ross*, 482 F.2d 33, 36-37 (6th Cir. 1973); *see also Bruner v. Dunaway*, 684 F.2d 422, 426 (6th Cir. 1982); *Johnson v. Vill. of Ottawa Hills*, 5 F. App'x 390, 395 (6th Cir. 2001).  Thus, a police officer can be liable under § 1983 when he or she fails to intervene and prevent constitutional violations.  To plausibly state a failure-to-intervene claim, Plaintiffs must show that the Defendants "(1) observed or had reason to know that [constitutional harm] would be or was [taking place], and (2) had both the opportunity and the means to prevent the harm from occurring."  *Sheffey v. City of Covington*, 564 F. App'x 783, 793 (6th Cir. 2014) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)).  This is true regardless of whether the individual violating the plaintiff's constitutional rights is a fellow officer or a supervisor.  *Smith v. Heath*, 691 F.2d 220, 224-25 (6th Cir. 1982).  Defendants cannot be held liable, however, unless there was "a realistic opportunity to intervene and prevent harm."  *Wells v. City of Dearborn Heights*, 538 F. App'x 631, 640 (6th Cir. 2013) (citing *Ontha v. Rutherford Cty., Tenn.*, 222 F. App'x 498, 507 (6th Cir. 2007)).

The KSP Defendants argue that Plaintiffs' failure-to-intervene is time-barred by the statute of limitations and fails as a matter of law. (Docs. # 36-2 at 11-12; 39-1 at 8, 13-14). Specifically, the Defendants claim that Plaintiffs "cannot allege in one instance that [a defendant] perpetrated a bad act and in another that he should have intervened in stopping the bad act." *Id.* (citing *Walker v. City of Lebanon*, No. 3:12-cv-855-JGH, 2013 WL 6185402 (W.D. Ky. Nov. 25, 2013)). Neither of those arguments warrant dismissal of Plaintiffs' fabrication-of-evidence claim.

For the very same reasons as Plaintiffs' supervisor-liability claim, Plaintiffs' failure-to-intervene claim is timely. Logic and common sense command that the same accrual date govern both the failure-to-intervene claim and the underlying § 1983 claims that the Defendants are alleged to have failed to intervene and prevent. Without further elaboration, the Plaintiffs' failure-to-intervene claim accrued—and began to run—at the same time as the malicious-prosecution and fabrication-of-evidence claims upon which it is based: when the criminal proceedings terminated in the Plaintiffs' favor.

A review of the Complaint reveals that Plaintiffs have sufficiently stated a § 1983 failure-to-intervene claim. The Complaint alleges that all of the "Defendant Officers" learned of evidence implicating other suspects, reached an agreement to protect those other suspects and frame the Plaintiffs, coerced witnesses, fabricated statements, manipulated evidence, withheld and destroyed material exculpatory evidence, and concealed all of those actions from the prosecutor. *Id.* at ¶¶ 23-25, 30, 45-46, 50-53, 56-58, 63-64, 70, 82-83, 88-89, 102-106, 108, 110-112, 118-125. Although some factual allegations are directed at particular officers, other factual allegations are alleged against the Defendant Officers en masse. Despite the Defendants' argument to the contrary, the

Plaintiffs have not alleged a "nonsensical" claim that one of the Defendants "failed to intervene against himself" or herself. *Walker*, 2013 WL 6185402, at * 6. Rather, Plaintiffs' 198-paragraph Complaint contains a litany of factual allegations that support their claim that the Defendants observed or had reason to know that other Defendants were committing constitutional violations—framing the Plaintiffs, coercing witnesses, fabricating statements, manipulating evidence, withholding and destroying material exculpatory evidence, and concealing those actions from the prosecutor—and had both the opportunity and the means to prevent that harm from occurring, but failed to intervene. Therefore, the KSP Defendants' Motions to Dismiss (Doc. # 36 and 39) are **denied** with respect to Count Four.

### e.    Count Five: Conspiracy

"A civil conspiracy claim under § 1983 … lies when there is 'an agreement between two or more persons to injure another by unlawful action.'" *Robertson*, 753 F.3d at 622 (quoting *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007)). To prevail on such a claim, the Plaintiffs must allege "'that (1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed' in furtherance of the conspiracy that caused the injury." *Id.* (quoting *Revis*, 489 F.3d at 290).

"It is well-settled that conspiracy claims must be pled with some degree of specificity." *Id.* (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)). "[V]ague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Id.* However, "Plaintiffs are not required to prove an express agreement among all the conspirators.'" *Id.* (quoting *Hooks v. Hooks*, 771 F.2d 935, 944

(6th Cir. 1985)).  Nor do Plaintiffs need to allege or produce direct evidence of the conspiracy; "circumstantial evidence may provide adequate proof."  *Weberg v. Franks*, 229 F.3d 514, 528 (6th Cir. 2000); *Bazzi v. City of Dearborn*, 658 F.3d 598, 606 (6th Cir. 2011).

The KSP Defendants seek dismissal of Plaintiffs' conspiracy claim, arguing that the claim is barred by the one-year statute of limitations and that the Complaint contains no factual allegations that support a conspiracy claim.  (Doc. # 36-2 at 7-8; 39-1 at 8-9).  In response, Plaintiffs argue that the claim is not time-barred and that the Complaint satisfies the pleading standard, "especially given the fact that Defendants, not Plaintiffs, are the ones with first-hand knowledge of the conspiracy."  (Doc. # 55-1 at 39).

The statute of limitations on a civil-rights conspiracy claim "generally begins to run at the time of the last overt act in furtherance of the conspiracy."  *Branham v. Micro Comput. Analysts, Inc.*, No. 5:07-cv-305-JMH, 2008 WL 1868016, at *2 (E.D. Ky. Apr. 24, 2008); *see also Tucker v. Heaton*, No. 5:14-cv-183-TBR, 2015 WL 3935883, at *4 (W.D. Ky. June 26, 2015) (the "limitations period commences only when the last overt act performed in compliance with the objective of the conspiracy has been accomplished."). The Plaintiffs have alleged that the Defendants committed several overt acts in furtherance of the conspiracy, including coercing witnesses, fabricating statements, manipulating evidence, withholding and destroying exculpatory evidence, and concealing their actions.  (Doc. # 1 at ¶¶ 23-25, 30, 45-46, 50-53, 56-58, 63-64, 70, 82-83, 88-89, 102-106, 108, 110-112, 118-125).  While the coercion, fabrication, and manipulation of evidence are alleged to have last occurred on February 26, 2014, other overt acts—the withholding of exculpatory evidence and concealment of the fabricated evidence—are

alleged to have occurred until the Plaintiffs' criminal charges were dismissed. *Id.* at ¶¶ 110-112. Therefore, the statute of limitations began to run on June 30, 2016 and August 22, 2016, and Plaintiffs' § 1983 conspiracy claim is not time-barred.

The Plaintiffs have sufficiently stated a § 1983 conspiracy claim against the Defendants. Although several of Plaintiffs' allegations are conclusory and mimic the elements of a § 1983 conspiracy claim (Doc. # 1 at ¶¶ 165-171), they are supported by facts that allege that each of the Defendants coerced witnesses, fabricated statements, manipulated evidence, withheld and destroyed material exculpatory evidence, and concealed those actions from the prosecutor. *Id.* at ¶¶ 23-25, 30, 45-46, 50-53, 56-58, 63-64, 70, 82-83, 88-89, 102-106, 108, 110-112, 118-125. The Court is wholly unpersuaded by the Defendants' attempt to focus only on the factual allegations directed at particular officers and ignore all of the collective factual allegations against the "Defendant Officers." Again, at this stage of the proceedings, where the Court is required to accept all of Plaintiffs' factual allegations as true, those collective allegations are sufficient. Accordingly, the Complaint states a § 1983 conspiracy claim against the Defendants with sufficient specificity, and the KSP Defendants' Motions to Dismiss (Doc. # 36 and 39) are **denied** as to Count Five.

### f.    Qualified Immunity

In their Motions to Dismiss, the KSP Defendants suggest that they are qualifiedly immune from Plaintiffs' § 1983 claims and include a sole citation to *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). (Doc. # 39-1 at 14-15) (arguing that "[e]ven if the Court finds that the Complaint state a sufficient cause of action against Defendants … they are nonetheless entitled to qualified immunity," stating the qualified-immunity rule, and then

moving on to address the merits of Plaintiffs' § 1983 supervisor-liability claim).  The Defendants' cursory argument fails to convince the Court that they are entitled to qualified immunity.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow*, 457 U.S. at 818).  Qualified immunity also balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Id.*

There is a "two-tiered inquiry" for resolving claims of qualified immunity.  *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013) (citing *Austin v. Redford Twp. Police Dep't*, 690 F.3d 490, 496 (6th Cir. 2012)).  First, the Court must determine whether "the facts alleged make out a violation of a constitutional right."[18]  *Id.*  If the plaintiff has shown a violation of a constitutional right, then the Court must proceed to the second step and "ask if the right at issue was 'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated" the right.  *Id.*

To survive a motion to dismiss on qualified-immunity grounds, both inquiries must be resolved in the Plaintiffs' favor.  *See Wesley*, 779 F.3d at 489.  The Plaintiff bears "the burden of showing that" the Defendants are "not entitled to qualified immunity."  *Johnson*, 790 F.3d at 653; *see also Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).  "At the pleading stage, this burden is carried by alleging facts plausibly making

---

[18]     The Court recognizes that the sequential procedure mandated in *Saucier v. Katz*, 533 U.S. 194 (2001) is no longer required.  *See Pearson*, 555 U.S. at 227.

out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right."  *Id.* (citing *Wesley*, 779 F.3d at 428).

"Because qualified immunity is 'an immunity from suit rather than a mere defense to liability … it is effectively lost if a case is erroneously permitted to go to trial.'"  *Pearson*, 555 U.S. at 231 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  Accordingly, the Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage in litigation."  *Id.* at 232 (citing *Hunter*, 502 U.S. at 227).  The Sixth Circuit, however, has clarified that only truly "insubstantial claims against government officials should be resolved … prior to broad discovery," *Johnson*, 790 F.3d at 653, and has cautioned that "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity."  *Wesley*, 779 F.3d at 433.  Thus, "[a]lthough an officer's entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12."  *Id.* at 433-34 (internal citations and quotation marks omitted).

With respect to the second prong of the qualified-immunity analysis, the KSP Defendants have not argued that the constitutional rights allegedly violated were not clearly established at the time of the Defendant Officers' actions.  Nor could they.  At the time of Plaintiffs' arrest and pretrial detention, they had a clearly established right to be free from malicious prosecution and fabricated evidence under the Fourth Amendment.  *Spurlock v. Satterfield*, 167 F.3d 995, 1005 (6th Cir. 1999) ("[P]laintiffs sufficiently raised claims that allege violations of their constitutional rights… Namely, that Satterfield and other defendants wrongfully investigated, prosecuted, convicted, and incarcerated them;

that Satterfield fabricated evidence and manufactured probable cause; that they were held in custody, despite a lack of probable cause to do so; and that Satterfield and others conspired to maliciously prosecute and convict them. Satterfield cannot seriously contend that a reasonable police officer would not know that such actions were inappropriate and performed in violation of an individual's constitutional … rights.").

Therefore, despite the lack of any developed argument, the Court assumes that the Defendants' qualified-immunity argument rests on the first prong—whether the facts alleged make out a constitutional violation. As this Court has explained in detail above, the Plaintiffs have sufficiently stated plausible claims for malicious prosecution, fabrication of evidence, supervisor liability, failure to intervene, and conspiracy under § 1983. Accordingly, the KSP Defendants are not entitled to qualified immunity.

### 3. State-Law Claims

#### a. Count Eight: Malicious Prosecution

To state a malicious-prosecution claim under Kentucky law, a plaintiff must plausibly allege six elements: (1) the defendant initiated, continued, or procured a criminal or civil judicial proceeding against the plaintiff; (2) the defendant acted without probable cause; (3) the defendant acted with malice, which, in the criminal context, means seeking to achieve a purpose other than bringing an offender to justice; (4) the proceeding terminated in favor of the person against whom it was brought; (5) a lack of probable cause for the proceeding; and (6) the plaintiff suffered damages as a result of the proceeding. *Martin v. O'Daniel*, 507 S.W.3d 1, 11-12 (Ky. 2016). Because malicious-prosecution claims are disfavored under Kentucky law, "claimants alleging malicious prosecution must strictly comply with each element of the tort." *Garcia v. Whitaker*, 400

S.W.3d 270 (Ky. 2013).

As with the § 1983 malicious-prosecution claim, the KSP Defendants seek dismissal of Plaintiffs' state-law malicious-prosecution claim, arguing that the allegations in the Complaint fail to satisfy the second, third, and fifth elements. (Doc. # 36-2 at 9; 39-1 at 10-12). And, for the exact same reasons, those arguments fail. *See supra* pp. 14-20. The Plaintiffs have plausibly alleged that each Defendant Officer—albeit, without specifically naming them—actively influenced or participated in the decision to prosecute Plaintiffs by coercing witnesses, fabricating statements, manipulating evidence, withholding and destroying exculpatory evidence, and concealing their actions. (Doc. # 1 at ¶¶ 23-25, 30, 45-46, 50-53, 56-58, 63-64, 70, 82-83, 88-89, 102-106, 108, 110-112, 118-125). The Plaintiffs also allege that there was a lack of probable cause for their criminal prosecutions and that the charges against them were dismissed in a manner indicative of their innocence. *Id.* at ¶¶ 105, 109, 112-113, 127, 141, 183. Therefore, the Plaintiffs have sufficiently stated a state-law malicious-prosecution claim and the KSP Defendants' Motions to Dismiss (Doc. # 36 and 39) are **denied** as to Count Eight.

### b.    Count Nine: Negligent Supervision

"Kentucky's recognition of torts based upon negligent hiring, negligent training, negligent supervision, and negligent retention is well established." *MV Tansp., Inc. v. Allgeier*, 433 S.W.3d 324, 336 n.10 (Ky. 2014). As for negligent supervision, "Kentucky has adopted the Restatement (Second) of Agency § 213 which illustrates the requirements for establishing a claim of negligent supervision." *Booker v. GTE.net LLC*, 350 F.3d 515, 517 (6th Cir. 2003). "[A]n employer may be held liable for negligent supervision only if he or she knew or had reason to know of the risk that the employment

created." *Id.*

The KSP Defendants seek dismissal of Plaintiffs' negligent-supervision claim against Defendant Joseph, arguing that the claim is barred by the statute of limitations and because Defendant Joseph is entitled to qualified immunity under Kentucky law. (Doc. # 39-1 at 8, 15-18). In response, the Plaintiffs contest the Defendants' characterization of investigatory and supervisory acts as "discretionary" and further claim that the Defendants' "actions were performed in bad-faith." (Doc. # 55-1 at 61).

Because the tort of negligent-supervision is derivative of—and dependent upon—the underlying tort of the supervisors' subordinates, the Plaintiffs' negligent-supervision claim accrued—and began to run—at the same time as the common-law malicious-prosecution claim upon which it is based: when the criminal proceedings terminated in the Plaintiffs' favor. *See Grego v. Meijer, Inc.*, 187 F. Supp. 3d 689, 694 (W.D. Ky. 2001) (borrowing the statute of limitations that governed the underlying tort). Therefore, the negligent-supervision claim is not barred by the one-year statute of limitations.

Nor does state-law qualified official immunity shield Defendant Joseph from Plaintiffs' negligent-supervision claim. "Qualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment; (2) in good faith; and (3) within the scope of the employee's authority." *Yanero v. Davis*, 65 S.W.3d 510, 521-22 (Ky. 2001). "Conversely, an officer or employee is afforded no immunity from tort liability for the negligent performance of a ministerial act, *i.e.*, one that requires only obedience to the orders of others, or when the officers duty is absolute, certain, and imperative, involving merely execution of a specific

act arising from fixed and designated facts." *Id.* at 522.

Put simply, whether qualified immunity is available depends "on the function performed." *Id.* at 521. "If the act was discretionary and within the scope of authority, the burden shifts to the Plaintiffs 'to establish by direct or circumstantial evidence that the discretionary act was not performed in good faith.'" *Nichols v. Bourbon Cty. Sheriff's Dep't*, 26 F. Supp. 3d 634, 642 (E.D. Ky. 2014) (quoting *Yanero*, 65 S.W.3d at 523).

Therefore, the Court must determine whether the alleged actions—or inactions—taken by Defendant Joseph were "discretionary" or "ministerial." "An act is not necessarily 'discretionary' just because the officer performing it has some discretion with respect to the means or method to be employed." *Yanero*, 65 S.W.3d at 521. Nor is a ministerial act converted into a discretionary act solely because "a necessity may exist for the ascertainment of … facts." *Id.*

In addition to alleging that she was personally involved in the misconduct, the Complaint alleges that Defendant Joseph "had a duty to properly train and supervise" the other Defendant Officers and "provide adequate policies to prevent" the fabrication of evidence, fabrication of witness statements, and concealment of material exculpatory evidence, but that she was negligent in the "training, supervision, and discipline of the Defendant Officers." (Doc. # 1 at ¶¶ 188-190). Supervision and training are discretionary functions. *Nichols*, 26 F. Supp. 3d at 642; *Rowan Cty. v. Sloas*, 201 S.W.3d 469, 480 (Ky. 2006); *Doe v. Magoffin Cty. Fiscal Court*, 174 F. App'x 962, 973 (6th Cir. 2006). Thus, the Plaintiffs must allege that Defendant Joseph acted in bad faith in failing to train or supervise the other Defendant Officers.

In *Yanero*, the Kentucky Supreme Court adopted the United States Supreme Court's definition of "bad faith," which has "both an objective and subjective aspect":

> The objective element involves a presumptive knowledge of and respect for "basic, unquestioned constitutional rights." *Wood v. Strickland*, 420 U.S. 308, 322 (1975). The subjective component refers to "permissible intentions." *Id.* Characteristically, the Court has defined these elements by identifying the circumstances in which qualified immunity would not be available. Referring both to the objective and subjective elements, we have held that qualified immunity would be defeated if an official "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury...."

*Yanero*, 65 S.W.3d at 523 (citing *Harlow*, 457 U.S. at 815).

Therefore, "in the context of qualified official immunity, 'bad faith' can be predicated on a violation of a constitutional, statutory, or other clearly established right which a person in the public employee's position presumptively would have known was afforded to a person in the plaintiff's position, *i.e.*, objective unreasonableness; or if the officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive." *Id.*

The Plaintiffs claim that Defendant Joseph failed to "properly train, and supervise" the other Defendant Officers and failed to "provide adequate policies to prevent" the fabrication of evidence, coercion of witness statements, and concealment of exculpatory evidence. (Doc. # 1 at ¶ 188). And the Plaintiffs further allege that the "grossly negligent and negligent … training, supervision, and discipline of the Defendant Officers" resulted in the deprivation and violation of Plaintiffs' constitutional rights. *Id.* at ¶ 189.

At the pleading stage, where the Court must "construe the complaint in the light most favorable to the [Plaintiffs], accept its allegations as true, and draw all reasonable

inferences in favor of the [Plaintiffs]," the Complaint contains sufficient factual allegations to suggest bad faith. *Wesley*, 779 F.3d at 428. "If an officer 'knew or reasonably should have known that the action he took would violate a [clearly established] right of the plaintiff,' bad faith may be found to exist." *Sloas*, 201 S.W.3d at 485-86 (quoting *Yanero*, 65 S.W.3d at 523). The failure to train and supervise investigating officers on the duty to disclose exculpatory evidence and refrain from fabricating inculpatory evidence suggests something more "than an honest mistake or oversight"; instead, it "indicate[s] some 'likelihood of the injury,' and 'bad faith' on the part of" Defendant Joseph. *Id.* at 485-86.

In the absence of training and supervision on proper investigative techniques, Defendant Joseph knew, or should have known, that violations of constitutional rights were likely. *Id.* Therefore, the Plaintiffs have sufficiently alleged bad faith on the part of Defendant Joseph. Accordingly, Plaintiffs' state-law negligent-supervision claim against Defendant Joseph will not be dismissed and the KSP Defendants' Motions to Dismiss (Doc. # 36 and 39) are **denied** as to Count Nine.

### c.    Count Ten: Intentional Infliction of Emotional Distress

Under Kentucky law, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *See* Restatement (Second) of Torts § 46. Outrageous conduct "is a deviation from all reasonable bounds of decency and is utterly intolerable in a civilized community." *Craft v. Rice*, 671 S.W.2d 247, 250-51 (Ky. 1984).

Kentucky courts often characterize intentional infliction of emotional distress as a "gap-filler" tort. *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 299 (Ky. App.

1993). "[W]here an actor's conduct amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed, and the conduct was not intended only to cause extreme emotional distress in the victim, the tort of outrage will not lie." *Id.* Although intentional infliction of emotional distress can also be a "stand-alone tort under the right facts," the Kentucky Supreme Court has held that "there can be only one recovery on a given set of facts." *Childers v. Geile*, 367 S.W.3d 576, 582 (Ky. 2012).

The KSP Defendants seek dismissal of Plaintiffs' intentional-infliction-of-emotional-distress claim against them, arguing that the Complaint fails to allege that the Defendants' conduct was "intended solely to inflict emotional distress" and that Plaintiffs are barred from pursuing damages for the tort of outrage because they can recover emotional damages under a traditional theory of tort. (Docs. # 36-2 at 10-11; 39-1 at 12-13). In response, the Plaintiffs concede that they have failed to state a plausible intentional-infliction-of-emotional-distress claim and voluntarily dismiss that claim against the KSP Defendants. (Doc. # 55-1 at 8 n.1). Therefore, the KSP Defendants' Motions to Dismiss (Doc. # 36 and 39) are **granted** with respect to Count Ten.

### III. CONCLUSION

Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

(1) Plaintiffs Amanda Hoskins and Jonathan Taylor's Motion to Strike (Doc. # 57) Defendants City of Barbourville and Mike Broughton's Response to Co-Defendants' Motion to Dismiss is **granted**;

(2)     Defendants City of Barbourville and Mike Broughton's Response to Co-Defendants' Motion to Dismiss (Doc. # 44) is **stricken from the record**;

(3)     Plaintiffs Amanda Hoskins and Jonathan Taylor's Motion to Strike (Doc. # 56) Defendants Knox County, John Pickard, and Derek Eubank's Response to Co-Defendants' Motion to Dismiss is **granted**;

(4)     Defendants Knox County, John Pickard, and Derek Eubank's Response to Co-Defendants' Motion to Dismiss (Doc. # 54) is **stricken from the record**; and

(5)     Defendants Jason York, Dallas Eubanks, and Jason Bunch's Motion to Dismiss (Doc. # 36) and Defendants Bryan Johnson, Mark Mefford, Kelly Farris, and Jackie Pickrell Joseph's Motion to Dismiss (Doc. # 39) are **GRANTED** as to **Count Ten** (intentional infliction of emotional distress), and **DENIED** as to **Count One** (§ 1983 malicious prosecution) **Count Two** (§ 1983 fabrication of evidence), **Count Three** (§ 1983 supervisor liability), **Count Four** (§ 1983 failure to intervene), **Count Five** (§ 1983 conspiracy), **Count Eight** (state-law malicious prosecution), and **Count Nine** (state-law negligent supervision).

This 15th day of March, 2018.



Signed By:

*David L. Bunning*

United States District Judge

K:\DATA\Opinions\London\17-84 Hoskins MOO re MTDs.docx