IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY, LONDON DIVISION
*ELECTRONICALLY FILED*

| | |
|---|---|
| AMANDA HOSKINS and ) <br> JONATHAN TAYLOR ) <br>       PLAINTIFFS ) <br> ) <br> V. ) <br> ) <br> KNOX COUNTY, CITY OF ) <br> BARBOURVILLE ET AL. ) <br>       DEFENDANTS ) | Case No.: 6:17-cv-00084 |

**DEFENDANT CITY OF BARBOUVILLE'S AND
DEFENDANT MIKE BROUGHTON'S
RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION TO BAR CERTAIN TESTIMONY OF WILLIAM DEE FRYER**

Come Defendants, the City of Barbourville and Mike Broughton, by and through counsel, and for their response in opposition to Plaintiffs' motion to bar certain testimony of Defendants' police practices expert, William Dee Fryer, hereby states as follows:

If Officer Broughton's Motion for Summary Judgment is denied, his police practices expert, William Dee Fryer, should be permitted to testify at trial regarding his complete opinions. In their Motion, Plaintiffs seek to exclude three opinions provided by Mr. Fryer. Specifically, Plaintiffs seek to bar Mr. Fryer from providing his opinion regarding lead law-enforcement officers' obligations to disclose exculpatory evidence, his opinion that Officer Broughton acted in conformity with standard police practices and procedures when he did not interrupt Detective York's interviews, and his interpretation of Amanda Hoskins' audio-recorded interview. Defendants respectfully request that the Court deny Plaintiffs' Motion and allow Mr. Fryer to testify in conformity with all of his disclosed opinions.

1

## APPLICABLE FACTS

Though the Court is well briefed on the facts of this case, a short soliloquy of Plaintiffs' specific allegations against Officer Broughton provides necessary context for the Court to assess Mr. Fryer's opinions and Plaintiffs' narrow challenges thereto. Plaintiffs were charged in 2012 for the 2010 robbery and murder of Katherine Mills in Flat Lick, an unincorporated community in Knox County. The Knox County Sheriff's Department turned the investigation into Ms. Mills' death over to the Kentucky State Police. Detective York led the KSP investigation. In the end, Knox County Commonwealth Attorney, Jackie Steele, dismissed the criminal charges against Plaintiffs, without prejudice. Plaintiffs subsequently filed this civil action alleging violations of their constitutional rights including claims against Barbourville Police Officer Mike Broughton.

Of note, the evidence is uncontradicted that (1) the homicide investigation was outside the Barbourville Police Department's jurisdiction, conducted by the Kentucky State Police, and led by Detective York; (2) Officer Broughton's limited involvement was confined to two days in early 2011 during the criminal investigation that spanned from December 2010 through March 2012; (3) Detective York was present for each of Officer Broughton's interactions; (4) Officer Broughton himself did not threaten, coerce, fabricate, or misrepresent any evidence in the criminal investigation; and (5) Officer Broughton had no involvement in the criminal prosecution which lasted from March 2012 through July 2017. Yet Plaintiffs allege that Officer Broughton violated their constitutional rights. Specifically, Plaintiffs maintain that Officer Broughton participated in and influenced the decision to prosecute by "assisting in the fabrication of Helton's [March 2012] statement [] and withholding from the prosecution the circumstances leading to the fabrication, by participating and encouraging Defendant York's threats to frame

Ms. Hoskins, and by withholding the facts surrounding the unduly-suggestive photo array and Defendant York's desire to use it to frame Mr. Taylor." (Doc # 204 at Page ID # 15171-7.)

**ARGUMENT**

I. **Mr. Fryer's Opinions Regarding Documentation by a Lead Investigator**

   A. **Not an Impermissible Legal Opinion**

In their Motion to Bar Certain Testimony of Mr. Fryer, Plaintiffs mischaracterize Mr. Fryer's opinion and improperly depict it as a legal conclusion styled as an expert opinion. To determine whether a police practices expert has provided a legal conclusion rather than an expert opinion, federal courts look to the specific claims alleged in the lawsuit. *Jimenez v. City of Chicago*, 732 F.3d 710 (7th Cir. 2013). In this case, if Plaintiffs' malicious prosecution claim is allowed to proceed against Officer Broughton, a jury will be asked to determine whether Officer Broughton participated in and influenced the decision to prosecute. Plaintiffs will ask the jury to find that Officer Broughton did participate and influence the decision to prosecute, relying on evidence that Officer Broughton did not create his own, independent documentation of the three interviews he was present for. According to Plaintiffs, by failing to document these interviews, Officer Broughton withheld evidence, the absence of which would have dissolved probable cause.

However, to be liable for malicious prosecution, "the officer must participate in a way that aids in the decision [to prosecute], as opposed to passively or neutrally participating." *Sykes v. Anderson*, 625 F.3d 294, 308 n.5 (6th Cir. 2010). Put another way, the officer's "participation must be marked by some kind of blameworthiness, something beyond mere negligence or innocent mistake." *Johnson v. Moseley*, 790 F.3d 649, 655 (6th Cir. 2015). This is different from a Fourteenth Amendment due process claim based on *Brady* violations where the plaintiff is not

3

required to demonstrate that the evidence was destroyed or concealed in bad faith. *Moldowan v. City of Warren*, 578 F.3d 351, 388-89 (6th Cir. 2009). As noted in Plaintiffs' Motion, the police have an unwavering constitutional duty to preserve and disclose evidence where the exculpatory value is apparent and the failure to fulfill that obligation constitutes a Fourteenth Amendment due process violation. *Id*. However, Plaintiffs' claims against Officer Broughton are not based on Fourteenth Amendment due process violations (nor could they be) as Plaintiffs' criminal case did not proceed to trial. Instead, Plaintiffs' § 1983 claims are premised on the alleged violation of their Fourth Amendment rights and as noted above, negligence is insufficient to maintain a claim for malicious prosecution.

"There is a difference between stating a legal conclusion and providing concrete information against which to measure abstract legal concepts." *United States v. Blount*, 502 F.3d 674, 680 (7th Cir. 2007). In the context of constitutional tort claims, "[w]hen an expert offers an opinion relevant to applying a legal standard," the "expert's role is 'limited to describing sound professional standards and identifying departures from them.'" *Jimenez* at 721 (citation omitted). Specifically, "[e]xpert testimony regarding relevant professional standards can give a jury a baseline to help evaluate whether a defendant's deviations from those standards were merely negligent or were so severe or persistent as to support an inference of intentional or reckless conduct that violated a plaintiff's constitutional rights." *Id*. at 721-22.

Mr. Fryer's testimony regarding Barbourville Police Officer Mike Broughton's obligations during his limited assistance in a Kentucky State Police investigation is necessary for a jury to consider when determining whether Officer Broughton's participation is marked by some sort of blameworthiness. Officer Broughton has consistently maintained that his limited participation in the Kentucky State Police investigation did not rise to the level of participation

4

necessary to maintain a claim for malicious prosecution. Further, Officer Broughton has always maintained that his limited involvement was in conformity with his training and consistent with Kentucky police practices and procedures.

Plaintiffs have failed to acknowledge that it was not Officer Broughton's responsibility to document Detective York's interviews. Instead, Plaintiffs have continued to allege that Officer Broughton acted in violation of Plaintiffs' constitutional rights when he did not make his own reports – even though Detective York was leading and recording the interviews. In his report, Plaintiffs' police practices expert, Charles Drago, has opined

> A police investigator is obligated to document all his/her activities that are relevant to the case. All evidence must be carefully collected and properly documented in the proper police report. The investigator must document all evidence whether it is exculpatory or inculpatory. It is not up to the investigator to decide what evidence he will document and what evidence he will conceal.

Drago Report at page 22. (ME 83.)

Mr. Fryer's opinion is necessary to provide context for the jury when they evaluate the claims against Officer Broughton. Mr. Fryer's opinions, unlike Drago's, are consistent with the Supreme Court's opinion in *Moore v. Illinois* where they stated "[w]e know of no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case." 408 U.S. 786, 795, 92 S.Ct. 2562, 2568, 33 L.Ed.2d 706 (1972). *See also United States v. Agurs*, 427 U.S. 97, 109, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Wagster v. Overberg*, 560 F.2d 735, 741 (6th Cir. 1977); *Koubriti v. Convertino*, 593 F.3d 459, 471–72 (6th Cir. 2010).

Mr. Fryer's opinions that Officer Broughton's actions were in conformity with accepted investigation methods falls within the scope of testimony that courts routinely allow. Mr. Fryer's opinion regarding an assisting officer's documentation responsibilities in an investigation outside

5

his jurisdiction and while in the presence of the lead investigator is helpful, relevant, and probative of important issues in this case: whether the Officer Broughton's actions were merely negligent or whether he acted with intent.

### B. Not in Contradiction to 6th Circuit Precedent

Plaintiffs have challenged Mr. Fryer's opinions under an inapplicable Fourteenth Amendment Brady analysis. Specifically, Plaintiffs maintain that Mr. Fryer's opinion runs afoul of *Moldowan v. City of Warren*, 578 F.3d 351, 388-89 (6th Cir. 2009). In so arguing, Plaintiffs have mischaracterized Mr. Fryer's opinion. Plaintiffs note no case in the 6th Circuit or any other jurisdiction states only the lead detective has an obligation to document and disclose exculpatory or impeachment evidence derived from a criminal investigation. Defendants do not disagree. Sixth Circuit case law is clear that the police have an unwavering constitutional duty to preserve and disclose evidence *where the exculpatory value is apparent* and the failure to fulfill that obligation constitutes a *due process violation*. *Moldowan* at 388-89. However, Plaintiffs' claims against Officer Broughton are not based on Fourteenth Amendment due process violations. Nor could they be, as Plaintiffs' criminal cases did not proceed to trial. Instead, Plaintiffs' 1983 claims are premised on the alleged violation of their Fourth Amendment rights. Specifically, "the basis of Plaintiffs' malicious-prosecution claim is that the Defendants caused their prosecution and continued detention unlawfully by fabricating and withholding evidence, the absence of either or both of which would have dissolved probable cause." (Doc. #119 at Page ID # 763 citing Doc. # 1 at ¶¶ 102-112; 138-147.) Plaintiffs' misapplication of *Fourteenth* Amendment case law in their Motion further illustrates why Mr. Fryer's opinion is necessary for a jury to understand the *Fourth* Amendment claims against Officer Broughton.

Mr. Fryer's opinion is not, as Plaintiffs claim, the misunderstanding that police officers can ignore the obligations imposed by the United States Constitution to ensure criminal defendants enjoy the right to a fair trial. At no point does Mr. Fryer opine that it is acceptable for the police to fail to document exculpatory evidence, withhold exculpatory evidence, or destroy exculpatory evidence. Instead, Mr. Fryer's report details how it is common practice for the lead investigator and his/her agency to conduct all investigative actions and to only request assistance from a local law enforcement agency when the need arises. (Fryer Report at Page 4, Doc # 218-2 at Page ID # 16208.) Accordingly, an assisting officer would not be expected to take notes or to record the interview unless the officer in charge asked them to or they learned information applicable to a separate case they themselves were working on. (Fryer Depo at Pages 115-118, Doc # 218-1 at Page ID # 16044-47.) Officer Broughton's duties and responsibilities as a Barbourville Police Officer – providing requested assistance to a KSP Detective in a KSP investigation – were limited based on the particular circumstances of this case and the standard customs, practices, and procedures applicable to assisting officers in Kentucky. (Fryer Report at Page 5, Doc # 218-2 at Page ID # 16209.)

By cherry-picking Mr. Fryer's Report, Plaintiffs have mischaracterized Mr. Fryer's opinion and failed to include his application of the opinion to the facts of this case based on his expertise. Mr. Fryer opined that it was not required or reasonable for Officer Broughton to take or maintain his own notes concerning Amanda Hoskins' interview – not that it was proper for Detective York to fail to document the interview. Mr. Fryer based his opinion, limited to Officer Broughton, on the fact that

> the lead investigator was present, conducting, recording, and documenting the interview himself. This would be customary and proper practice in Kentucky as it was York and not Broguhton who initiated and conducted the interview and was

7

>responsible for maintaining investigation reports. It would be York's notes that would be used to prepare the KSP in investigation reports for the case file.

[Fryer Report at 6, Doc # 218-2 at Page ID # 16210].

Despite Plaintiffs' implication otherwise, Mr. Fryer specifically testified police officer *are* required to properly document evidence and interviews in an investigation. (Fryer Depo at Pages 107-120, Doc # 218-1 at Page ID # 16036-49.) However, Mr. Fryer provided context for which police officers are in charge of the investigation and maintaining the case file. To that end, Mr. Fryer opined that when Officer Broughton allowed Detective York to use the Barbourville Police Department station to conduct two interviews and agreed to sit in, this did not create an obligation for Officer Broughton to maintain his own personal copy of any notes, reports, observations, or recordings *in addition* to those compiled by the lead detective. (Fryer Report at Page 5 Doc # 218-2 at Page ID # 16209.)

Mr. Fryer's expert testimony on applicable professional standards in Kentucky is relevant because it "can give a jury a baseline to help evaluate whether a defendant's deviations from those standards were merely negligent or were so severe or persistent as to support an inference of intentional or reckless conduct that violated a plaintiff's constitutional rights." *Jiminez.* at 721–22. Mr. Fryer's opinion provides the standard police practices, customs, and procedures applicable to Officer Broughton to allow the jury to determine whether Officer Broughton's failure to document Detective York's interviews was consistent with, or a departure from, standard police practices. It will then be for the jury to determine whether Officer Broughton's actions demonstrate the necessary blameworthiness to find him liable. It is true that Mr. Fryer's opinions have direct implications for applying legal standards, but that is exactly why his testimony was relevant. *Id.* at 721. Mr. Fryer's opinion is limited to professional practices in this case applied to Officer Broughton alone, and he does not stray from these bounds to provide

8

an impermissible legal conclusion in contradiction of binding Sixth Circuit precedent. Accordingly, Plaintiffs' Motion to Bar Certain Testimony of Mr. Fryer should be overruled.

### C. Is Supported by Foundation

Plaintiffs do not challenge Mr. Fryer's qualifications as a police practices expert. Rightly so: He has over 47 years of experience, including 25 years as an officer with the Lexington Police Department and 26 years as a police instructor. (Fryer Report at Page 1, Doc # 218-2 at Page ID # 16205.) Furthermore, he has participated in dozens of homicide investigations, was the lead investigator on half of those investigations, and assisted in numerous multi-agency investigations. (Fryer Depo at 88-91, Doc # 218-1 at Page ID # 16017-20.) During this time, he has interviewed hundreds of people. (Fryer Depo at 209, Doc # 218-1 at Page ID # 16138.) Instead, Plaintiffs allege Mr. Fryer's opinion is unreliable because it lacks foundation. As set forth below, Mr. Fryer has ample knowledge and experience to opine on these issues; Plaintiffs' argument is, at best, one for cross-examination.

Plaintiffs specifically criticize Mr. Fryer for failing to point to training at the Kentucky Department of Criminal Justice that would have instructed officers that the obligation to document and disclose evidence does not apply to secondary officers involved in a criminal investigation. However, there is a reason for this: the reason for offering police practices testimony is precisely because there are not clearly written standards, and experts, qualified by their experience, are necessary to inform the jury about what the prevailing practices and methods are. This approach is explicitly contemplated by the rules. "In certain fields, experience is the predominant, if not the sole basis for a great deal of reliable expert testimony." Advisory Committee Notes to Rule 702. Courts have therefore consistently held that an expert may offer testimony based on experience alone. *See Champion v. Outlook Nashville, Inc.*, 380

9

F.3d 893, 908-08 (6th Cir. 2004); *Thomas v. Chattanooga*, 398 F.3d 426, 432 (6th Cir. 2005); *King v. Taylor*, No. 10-96-KSF, 2013 WL 1914512, at *3 (E.D. Ky. May 8, 2013); *Luna v. Bell*, 2013 WL 12316066 at *6 (M.D. Tn. August 1, 2013).

Mr. Fryer based his opinion – that a secondary assisting officer like Officer Broughton does not have an obligation to take his own contemporaneous notes while the lead investigator is recording the interview – on his significant experience with law enforcement practices in Kentucky. Mr. Fryer has over forty (40) years of experience as an officer, an assisting officer, a lead investigator, an instructor, and a consultant. (Fryer Report at 1-2, Doc # 218-2 at Page ID # 16205-06.) Mr. Fryer testified at his deposition that his opinions on the delegation of interview documentation are based on commonly accepted police practices in Kentucky. (Fryer Deposition at 85-87, Doc # 218-1 at Page ID # 16014-16.) He does not disagree that criminal defendants are entitled to exculpatory evidence before their trial. Instead, he provides his opinion as to who is responsible for maintaining and turning over to the prosecution a complete case file. Using his experience and expertise, Mr. Fryer provides the generally accepted standards in Kentucky for the delegation and assignment of tasks in a Kentucky State Police investigation that includes assistance from outside local law enforcement agencies.

Police practices experts are precisely the kind of experts who may testify reliably based solely on experience. Plaintiffs cite no case law or authoritative police administration source to suggest that a police practices expert must identify a written source to establish prevailing practices. Further, there is nothing to suggest that *any* written authority – including binding case law – mandates each officer present during an interview must create duplicative documentation. This is especially true in the unique circumstances of this case where multiple law enforcement agencies were present at an event and the lead detective from the investigating agency was

present and recording the interviews. It is impossible to cite something that does not exist. Mr. Fryer's testimony is consistent with the opinions provided by other police practices experts who have provided opinions in this case. *See* Jack Ryan's Deposition Testimony at 339-349 (obligation of lead detective to document investigation or those who assist outside the lead investigator's presence); Jack Ryan's Deposition Testimony at 379 (CLEA does not have a model policy directing assisting officers to provide documentation); Jack Ryan's Deposition Testimony at 387-388 (understood police practice that assisting officers are not required to document); Carl Christiansen Deposition Testimony at 127-130 (lead officer has the discretion to request second officer document the interview). Drago, by contrast, failed to provide any citations to support his *positive* assertions about generally accepted police practices regarding assisting officers from outside agencies. Instead, he relies on his own personal experiences to support his opinions. Plaintiffs cite no authority to support their contention that Mr. Fryer's experience and review of the materials in this case, standing alone, are unreliable. The fact that Mr. Fryer relies on specialized knowledge gained throughout his career does not obligate him to produce a bibliography of every document that informs his experience. Further, Mr. Fryer is not required to meet the citation standards imposed on lawyers in legal briefing in his Report. Courts have explicitly rejected *Daubert* arguments based on the quality of citations. *See Sanders v. City of Chicago Heights*, 2016 WL 4398011, at *10 (N.D. Ill. Aug. 18, 2016).

Given the Mr. Fryer's half-century of experience and his unquestioned familiarity with the subject areas on which he offered an opinion, his opinions are not speculative. Mr. Fryer's extensive personal knowledge, experience and training, as well as the work he undertook to prepare his expert report for this case, provides "a reliable basis in the knowledge and experience of [the relevant] discipline." *Daubert* , v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592

(1993). (Fryer Depo at Pages 233-242, Doc # 218-1 at Page ID # 160162-71.) The opinions reached by Mr. Fryer in his report rest on a reasonable foundation. To the extent Plaintiffs are concerned that Mr. Fryer did not explicitly explain how his experiences served as a sufficient basis for his opinions, they may explore those concerns on cross-examination, but those concerns do not provide any basis for excluding his testimony.

## II. Mr. Fryer's Opinion Regarding Intervention in Amanda Hoskins' Interview

### A. Not an Outcome Determinative Legal Opinion

Should Plaintiffs' failure to intervene claim proceed to trial, the jury will be asked to determine whether Officer Broughton failed to intervene and prevent the violation of their constitutional rights. A claim for failure to intervene requires Plaintiffs to show that Officer Broughton (1) observed or had reason to know that constitutional harm would be or was taking place, and (2) had both the opportunity and the means to prevent the harm from occurring." *Sheffey v. City of Covington*, 564 F. App'x 783, 793 (6th Cir. 2014) (*quoting Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)). Perhaps finally acknowledging that Officer Broughton's *only* opportunities to intervene in the criminal investigation were during the three interviews he was present for in early 2011, Plaintiffs argue that Mr. Fryer's opinion regarding whether Officer Broughton observed a constitutional violation by Detective York during Amanda Hoskins' interview is an outcome determinative opinion. However, Mr. Fryer's opinion is not a legal conclusion styled as an expert opinion. Nor is it outcome determinative of Plaintiffs' failure to intervene claim.

Mr. Fryer's opinion has been mischaracterized by Plaintiffs. Plaintiffs' argument appears to imply that Mr. Fryer is of the opinion that Officer Broughton should never have stopped Detective York – even if Officer Broughton observed Detective York violating Ms. Hoskins'

12

constitutional rights. However, the next sentence of Mr. Fryer's report clarifies this issue – Mr. Fryer goes on to note that Officer Broughton would have stopped Detective York "if he saw or heard a reason to do so." (Fryer Report at Page 7, Doc # 218-2 at Page ID # 16211.) This is consistent with the training Officer Broughton received and standard police practices in Kentucky that requires an officer to prevent or stop misconduct by another officer. (Fryer Report at Page 7, Doc # 218-2 at Page ID # 16211.) Mr. Fryer was clear in his testimony that standard Kentucky police practices dictates a police officer who witnesses another officer's misconduct is expected to stop and report the misconduct. (Fryer Deposition at 80-81, Doc # 218-1 at Page ID # 16009-10.) As established *supra*, Mr. Fryer's testimony regarding police practices in Kentucky is admissible and does not constitute an impermissible legal opinion – even though it is relevant to applying a legal standard. It will be then up to the jury to determine whether Officer Broughton's conduct demonstrated a failure to intervene in the violation of Plaintiffs' *constitutional rights*. Understandably, Plaintiffs do not agree with Mr. Fryer's opinion. Plaintiffs' criticisms may be fodder for cross-examination, but they do not serve as a basis to bar Mr. Fryer's opinion.

### III. Mr. Fryer's Opinion Regarding Amanda Hoskins' Audio-Recorded Interview

Plaintiffs ask the Court to bar Mr. Fryer's opinions regarding his review of Ms. Hoskins' interview which Detective York recorded. The recording was made using an audio device and a video recording was not made. As acknowledged throughout this litigation, Officer Broughton was present for this interview and it took place at the Barbourville Police Department. Plaintiffs contend that Mr. Fryer's opinion regarding the audio recording should be excluded as it does not satisfy the helpfulness standard.

In support of their argument, Plaintiffs cite to *Estate of Collins v. Wilburn*, 253 F. Supp. 3d 989, 992 (E.D. Ky. 2017). In *Wilburn*, the court found that Plaintiffs' expert was not relevant or reliable in an excessive force 1983 action where the incident was captured on video that could be viewed by the jury. Specifically, the Court found the expert was not better suited than the jury to interpret the video and the expert was not permitted to provide the opinion that the use of force depicted in the video was excessive.

*Wilburn* is distinguishable and thus does not support the exclusion of Mr. Fryer's testimony regarding the audio recording disclosed in discovery. Mr. Fryer's opinion regarding the recording is not offered to simply to interpret what the jury will hear. Unlike the expert's opinion in *Walton*, Mr. Fryer's opinions are helpful to the jury. For example, Mr. Fryer's opinion on Ms. Hoskins' tone goes to the issue of whether Officer Broughton failed to intervene in an interview where Ms. Hoskins' constitutional rights were being violated. Plaintiffs have specifically alleged this interview was hostile and included a threat by Detective York to frame Ms. Hoskins for murder. Officer Broughton has testified neither allegation is true. It will be up to the jury to determine the credibility of the witnesses, but they will also be asked whether Officer Broughton's actions indicate he participated in the knowing violation of Plaintiffs' constitutional rights. Mr. Fryer's opinions regarding the audio will assist the jury in determining whether Officer Broughton acted in conformity with the training he received and standard police practices in Kentucky.

### IV. Mr. Fryer's Reliance on Statements Made by Officer Broughton During Phone Conversation

Finally, Plaintiffs argue in a footnote that Mr. Fryer may not base his opinions on statements made by Officer Broughton in a phone call. Plaintiffs cite to unpublished district court cases out of New Jersey, the Western District of Tennessee, and the Eastern District of

Michigan in support. However, Plaintiffs' reliance is misplaced. These cases involve a party's failure to disclose documents and recordings. Here, Plaintiffs argument is premised on Officer Broughton's failure to produce notes, reports, or recordings regarding statements made during a phone conversation. Plaintiffs fail to note how any statement disclosed in Mr. Fryer's report or testified to at his deposition was previously undisclosed by Officer Broughton through discovery and his seven hour deposition. Further, Plaintiffs fail to identify any rule or case law to support that statements made during a phone conversation between a party and their expert must be memorialized in a document or recording to be relied upon. While Plaintiffs may not agree with Officer Broughton's testimony – or version of the facts for that matter – they may not exclude Mr. Fryer's opinions based on the same.

## CONCLUSION

WHEREFORE, Defendants Broughton and the City of Barbourville respectfully request the Court deny Plaintiffs' Motion to Bar Certain Testimony of Police Practices Expert William Dee Fryer.

Respectfully submitted,

WARD, HOCKER & THORNTON, PLLC
Vine Center
333 West Vine Street, Suite 1100
Lexington, Kentucky  40507
Telephone: (859) 422-6000
Fax: (859) 422-6001

By:   */s/: Licha H. Farah, Jr.*
       Licha H. Farah, Jr.
       Alexandra DeMoss-Campbell
       *Counsel for City of Barbourville
       and Mike Broughton*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing was served via ECF electronic filing system upon the following:

Arthur Loevy
Jon Loevy
Michael Kanowitz
Elliott Slosar
Amy Robison Staples
Loevy & Loevy
311 N. Aberdeen , 3rd Floor
Chicago, IL 60607
*Counsel for Plaintiffs*

Shawna V. Kincer
Cody Weber
Matthew Johnson
Alea Amber Arnett
Kentucky State Police
919 Versailles Road
Frankfort, KY 40601
*Counsel for Mark Mefford, Bryan Johnson, Kelly Farris and Jacqualine Joseph  and Dallas Eubanks*

Charles D. Cole
L. Scott Miller
Derrick T. Wright
Sturgill, Turner, Barker & Moloney, PLLC
333 West Vine Street, Suite 1500
Lexington, KY 40507
*Counsel for Jason York and Jason Bunch*

Jason E. Williams
John F. Kelley, Jr.
Williams Farmer & Towe Law Group
P.O. Box 3199
London, KY 40743
*Counsel for Knox County, Kentucky, John Pickard and Derek Eubanks*

All on this the 11th day of October, 2019.

*/s/ Licha H. Farah, Jr.*
Licha H. Farah, Jr.
Alexandra DeMoss-Campbell