UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION LONDON

| | |
|---|---|
| AMANDA HOSKINS | ) |
| | ) |
| And | ) |
| | ) |
| JONATHAN TAYLOR | ) |
| | ) |
| Plaintiffs, | ) |
| | )   No. 6:17-CV-84-REW-HAI |
| v. | ) |
| | ) |
| KNOX COUNTY, et al, | ) |
| | ) |
| Defendants | ) |

**REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY**
**(Dr. Ross Tekulve)**

Comes now Defendant, **Knox County, et.al.,** by counsel and in further support of its motion to exclude the testimony of Dr. Ross Tekulve [Doc# 223] [1] asserts the following to the arguments in reply to the response filed by Plaintiff, **Jonathan Taylor** [ Doc# 234]:

In their effort to salvage the testimony of their medical expert, Plaintiff and his counsel emphasize Dr. Tekulve's qualifications as the primary reason for the admission of his opinions into evidence. Counsel notes that Dr. Tekulve is a board-certified general surgeon who during twelve (12) years of practice has performed "at least one hundred (100) colostomies and reversals in multiple hospitals throughout the state of Kentucky." [Doc#234, pg. 3]. However, the doctor's

---

[1] Because of the sensitive nature of Plaintiff Taylor's medical information, Defendant filed its initial motion to exclude the testimony of Dr. Tekulve under seal. However, Plaintiff's counsel filed their response in the record. It describes Mr. Taylor's injuries and the medical treatment he received. Assuming that Plaintiff waives any continued claim of confidentiality the undersigned counsel is not filing his reply under seal

prior training and experience does not provide adequate grounds allowing a jury to consider his opinions in this case.

As the expert himself admits, Plaintiff Taylor's injuries were more extensive and complicated than most cases involving a colostomy or its later reversal. In the 2008 accident, Mr. Taylor was ejected from the car and impaled on a tree. The tree pierced the rectum and ran through his abdomen (Tekulve Depo page 50.) [2]

The specialists at the University of Tennessee who performed the emergency surgery found "an evisceration of intra-abdominal content as well as an open pelvic fracture". The space was so large that they could not identify a large part of the colon or his rectum. (Tekulve Depo page 2) During a subsequent operation, it was noted that fifty percent (50%) of the anal sphincter muscular tissue was destroyed. (Tekulve Depo pages 50-51)

In light of the catastrophic nature of Plaintiff's injuries, Dr. Tekulve admitted that he was "…not technically that good… to perform the repair." (Tekulve Depo page 111 lines 13-15) He would instead refer Plaintiff to a "high-volume colorectal center". Any repairs including a coloanal anastomosis would be done in an "academic setting." (Tekulve Depo page 111 lines 4-9)

Besides his lack of specialized expertise, the doctor did not have an objective basis necessary to form accurate opinions as to the feasibility of any coloanal repairs.  Nor could he document any degradation in Plaintiff's sphincter tone over the course of the years so to link it to his incarceration for the murder of Katherine Mills or prior instances when he was jailed on other charges.

Dr. Tekulve examined Plaintiff on only one occasion, some ten (10) years after his accident. The exam lasted thirty minutes. (Tekulve Depo page 45,46) While he did perform a

---

[2] Dr. Tekulve's deposition was made an Exhibit to the sealed motion to exclude [ Doc# 223-Exhibit 2]

2

finger rectal exam, he could not tell what shape the rectum was in. (Tekulve Depo page 68) He did not perform any more sophisticated testing such as an anal manometry or an endoanal ultrasound. (Tekulve Depo page 121)

Dr. Tekulve did review Plaintiff's medical records documenting his surgery and his hospitalization immediately after the 2008 accident as well as documentation of subsequent check-ups. However, he could not find any testing that had been performed during those years to determine if there was sufficient healing to even consider the reversal of Plaintiff's colostomy. (Tekulve Depo page 20). On the contrary, he admitted that the surgeons who performed the initial repair made mention that there was a high probability that it would be a permanent colostomy and could not be reversed. (Tekulve Depo page 51)

Without any measurements of his sphincter tone, Dr. Tekulve could not accurately determine Plaintiff's condition in March 2012 when he was arrested for the murder of Katherine Mills. (Tekulve Depo page 52) Though stating generally that disuse of the pelvic floor and sphincter muscles would lead to atrophy, he could not tell the degree of musculature degeneration or the effect of the previous four (4) years upon the success of any colostomy reversal (Tekulve Depo page 53)

Without a credible basis for opinions, Dr. Tekulve's certification and experience as a general surgeon is not a sufficient basis for allowing his testimony at trial. In the case of Barnette v Grizzly Processing, LLC., 2012 U.S. Dist. LEXIS 11305 (E.D. Ky. 2012), Judge Thapar noted, "…a glittery resume and an impressive career do not necessarily open the door to federal court. Rather, Courts must ensure that an expert's opinion is reliable." (op.cit. at p 4)

An analogous situation was presented in the case of Tamraz v Lincoln Electric Company 620 F.3d 665 (6th Cir. 2010), the Sixth Circuit reversed a judgment that was rendered in favor of a

3

welder who claimed he contracted Parkinsonism as a result of inhaling fumes from manganese-based products used in welding supplies. At trial, the plaintiff had relied upon the testimony of a noted neurologist. The doctor opined that the plaintiff had "manganese-induced parkinsonism" with a reasonable degree of certainty. However, he also conceded that the etiological component of his conclusion was at most, a working hypothesis, not scientific knowledge.

While conceding the doctor's qualifications, the appellate court disallowed his opinions as speculative. The panel noted that no matter how good an expert's credentials may be, they are not permitted to speculate 620 F. 3d at 671 *quoting from* Goebel v Denver & Rio Grande W. R. R. Co. 215 F. 3d 1083,1088(10th Cir. 2000). The panel went on to remark that although the doctor may be distinguished, "…the courtroom is not the place for scientific guess work, even of the inspired sort." 620 F. 3d at 671 *quoting from* Rosen v Ciba-Geigy Corp. 70 F. 3d 316, 319 (7th Cir. 1996)

Beyond the doctor's qualifications, Plaintiff's counsel contends that Dr. Tekulve's opinions are admissible simply because he frames his answers in terms of reasonable medical probability or certainty and that the use of these words satisfies the requisites of Rule 702 of the Federal Rules of Civil Procedure. Yet the answers given during his discovery deposition oftentimes use the terms "probable" and "possible" as if they were interchangeable.

For example, the doctor uses the terms "not impossible", "probable", and "possible" when testifying as to the feasibility of performing a colostomy reversal at this time:

```
13.    " Q    So are you saying that, presently, are you
14    saying as your opinion, that colostomy is a possibility
15    but not a probability?
16         MS. STAPLES:  Objection.
17      A    What -- what are you -- that keeping it is
18    a --
19      Q    A colostomy removal, I beg your pardon, I --Q· · A colostomy
             removal, I beg your pardon, I --
20· · · A· · A colostomy removal reversal is not completely
21· ·impossible, as it stands right now.
```

4

>  22· · · · Q· · Okay.· But to me, is it probable?
>  23· · · · A· · It's probable.· That's a fair statement
>  24.· · · Q· · All right.· I say that because in the next
>  25· ·paragraph, as we're going down, it says, "Unfortunately
>  1.     because of his five-years of incarceration, there was a
>  ·2· ·large gap in Mr. Taylor's therapy and medical progress.
>  ·3· ·As a result, Mr. Taylor has not had any improvement and
>  ·4· ·possibly had worsened due to disuse."· You used the word
>  ·5· ·possibly.
>  6.      A· · Correct.
>  ·7· · · · Q· · Do you mean probably, or do you mean possibly?
>  ·8· · · · A· · I mean possibly"
>
>                                    (Dr. Tekulve Depo page 51-52)

Again, this use of terminology was addressed in the Tamaraz decision. Noting that the expert had stated his opinions with a reasonable degree of medical certainty, the Court held that the "*ipse dixit* of the expert" alone is not sufficient to admit the admission of an opinion. *citing to* Gen. Elec. Co. v Joiner 522 U. S. 136,146 (1997) No matter the language, it is still the duty of the Court to exclude "knowledge" that is in fact "speculation".

In short, Dr. Tekulve's use of any "magic words" does not give credence to opinions that amount to mere guesswork.

## CONCLUSION

For the foregoing reasons, **Defendant, Knox County, et.al,** pray that its motion to exclude the testimony of Dr. Ross Tekulve be sustained and that this expert be excluded from testifying in this case.

> Respectfully Submitted,
>
> Jason E. Williams, Esq (KBA # 85092)
> John F. Kelley, Jr., Esq. (KBA # 38035)
> Williams & Towe Law Group
> 303 S. Main Street
> P.O. Box 3199
> London, KY 40743

By: /s/ John F. Kelley, Jr., Esq.
John F. Kelley, Jr., Esq.
Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following counsel. Also, a copy was mailed by first class mail and /or email to those attorneys.

Elliot Slosar, Esq.
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607
elliot@loevy.com

Derrick T. Wright, Esq.
Sturgill, Turner, Barker & Moloney, PLLC
333 W. Vine Street, Suite 1500
Lexington, Kentucky 40507
dwright@sturgillturner.com

Amy Staples, Esq.
LOEVY & LOEVY
18 Village Plaza – PM181
Shelbyville, KY 40065
amy@loevy.com

Alea Arnett, Esq.
Kentucky State Police Legal Office
919 Versailles Road, Room 300
Frankfort, Kentucky 40601
alea.arnett@ky.gov

Licah H. Farah, Jr., Esq.
Alexandra DeMoss Cambpell
Ward, Hocker & Thornton
333 West Vine Street, Suite 1100
Lexington, Kentucky 40507
LFarah@whtlaw.com

and a copy of same was emailed to Judge Robert E. Wier at Wier_chambers@kyed.uscourts.com

By: /s/ John F. Kelley, Jr., Esq.
John F. Kelley, Jr., Esq.
Counsel for Defendants