# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# SOUTHERN DIVISION AT LONDON
# CIVIL ACTION NO. 6:17-CV-00084-DLB

*Filed Electronically*

**AMANDA HOSKINS, et al.**                                                          **PLAINTIFFS**

**VS.**

**KNOX COUNTY, et al.**                                                             **DEFENDANTS**

---

### REPLY OF DEFENDANT JASON YORK IN SUPPORT OF
### MOTION TO BAR CERTAIN
### TESTIMONY OF PLAINTIFFS' EXPERT CHARLES DRAGO

---

Comes Defendant York, by counsel, and respectfully submits this reply in support of his motion to bar certain testimony by Plaintiffs' expert Charles Drago.

## INTRODUCTION

Plaintiffs filed this suit against Defendant York and others alleging claims arising out of the criminal investigation and their prosecution for the murder of Catherine Mills. Charles Drago is a former law enforcement officer who Plaintiffs have retained to testify on their behalf regarding police practices. York previously moved to bar certain testimony by Mr. Drago because some of his opinions are improper. Plaintiffs have since responded in opposition, and York submits this reply. The general standard that governs whether expert testimony is admissible is set forth by York's original motion and is not repeated herein. Additional law is referenced, however, as applicable to each issue below. A full copy of Mr. Drago's report with disclosed opinions is attached as Exhibit A to York's original motion. *See* D.E. #228-1. All other

1

cited materials have been previously filed of record during the summary judgment briefing as part of the Master Exhibit collection. *See* D.E. #200 (hereinafter "ME").

## ARGUMENTS ON REPLY

**I. To bar opinion or testimony regarding whether York misled the grand jury with fabricated misinformation not supported by evidence.**

One of Mr. Drago's disclosed opinions were directed to York's grand jury testimony. On that subject, York moved to bar any expert testimony and opinion because grand jury testimony cannot be used to support liability based on absolute immunity and privilege under federal and state law. *See Rehberg v. Paulk*, 566 U.S. 356, 375 (2012) (holding that a "grand jury witness is entitled to same immunity as a trial witness"); *Bryant v. Kentucky*, 490 F.2d 1273, 1274 (6th Cir. 1974) ("Under the law of Kentucky, a witness before a grand jury who provides false testimony is liable for a criminal action in perjury, but not for any civil action such as malicious prosecution since testimony in a judicial proceeding is privileged as a matter of public policy.")(citing *McClarty v. Bickel*, 159 S.W. 783 (1913)); *see also Smith v. Hodges*, 199 S.W.3d 185, 192 (Ky. App. 2005) (describing judicial proceedings privilege for witness testimony in general under Kentucky law).

Plaintiffs cite *King v. Harwood*, 852 F.3d 568, 591 (6th Cir. 2017) to contend "York is *not* protected by absolute immunity for his testimony at the grand-jury." *See* Pls. Resp., p. 3 (emphasis in original). Controlling precedent, including from *King* itself, directly refutes Plaintiffs on this point. *King* specifically upholds absolute immunity for grand jury testimony following *Rehberg*. *See* 852 F.3d at 584 ("*Rehberg* made clear that absolute immunity is to be afforded to *all* grand-jury witnesses, even law-enforcement officers ….")(emphasis in original).

2

Treating grand jury testimony as absolutely immune and privileged also required *King* to develop a special test to overcome the probable cause presumption that extends to grand jury indictments, which appears to be the point of confusion here. Rebutting the probable cause presumption traditionally considered whether the underlying grand jury testimony had included material omissions or untruths. The privileged nature of grand jury testimony, however, necessarily foreclosed that kind of grand jury scrutiny to establish liability. *King* recognized this resulting tension and resolved the issue by formulating a special liability test based on the law enforcement officer's "actions that are prior to, and independent of, his grand-jury testimony." *Id*. at 586.

Plaintiffs' reliance on *King* is accordingly misplaced. *King* actually reinforces York's entitlement to absolute immunity for grand jury testimony under *Rehberg* and only recognizes potential liability for actions "independent of" his grand jury participation. Decisions from this Court consistently treat grand jury testimony as immune and reject it as a source of liability. *See Allen v. Rucker*, 304 F.Supp.3d 638, 643 (E.D. Ky. 2018)("Rucker's grand-jury testimony is beside the point because that testimony cannot be the basis for liability."); *Jones v. Clark County*, 5:15-CV-337-REW, 2019 WL 637769, at *6 n. 9 (E.D. Ky. Feb. 14, 2019)("Murray, as any grand-jury witness, is immune from lability for testimony."). Expert testimony and opinion based on York's grand jury testimony should be correspondingly barred.

Plaintiffs also argue York's grand jury testimony could be relevant to punitive damages or their Kentucky common law malicious prosecution claim. They cite no support, however, for their alternative argument that grand jury testimony may be admissible for other such purposes. Controlling authority, moreover, directly refutes them. *Rehberg* explains how "a trial witness has absolute immunity with respect to *any* claim based on the witness' testimony" within the Section

1983 context. 566 U.S. at 367 (emphasis in original). A judicial proceedings privilege extending to witness testimony likewise exists under Kentucky law. *See Smith v. Hodges*, 199 S.W.3d at 192. The Sixth Circuit has further recognized the application of this privilege specifically to the grand jury setting. *See Bryant v. Kentucky*, 490 F.2d at 1274. York's grand jury testimony is accordingly treated as privileged and inadmissible for all potential purposes in this case under either federal or state law.

II. **To bar opinion or testimony regarding whether York had probable cause to arrest Plaintiffs.**

Plaintiffs do not contest barring testimony and opinion from police practices experts regarding probable cause.

III. **To bar opinion or testimony regarding whether witness statements were false, involuntary, or the result of coercion or inducements.**

Expert testimony may be admissible to testify on generally acceptable police practices. Portions of Mr. Drago's disclosed report and opinions, however, appear to credit witness testimony that their statements were untrue or reach conclusions that the witness statements were involuntary or unreliable as a result of coercion or inducement. Two examples from Mr. Drago's report include indications that Kayla Mills was coerced and that York's leading questions were instrumental in eliciting a statement from James Allen Helton. *See* Drago Report, pp. 8, 18. Plaintiffs acknowledge Mr. Drago cannot opine on whether the witness statements were true or false. *See* Pls. Resp., p. 4 n. 4. Aside from the true-false distinction, however, Plaintiffs vaguely explain that Mr. Drago relies on witness depositions as the factual basis for his ultimate opinions. *See id*. They are correspondingly unclear whether Mr. Drago will rely on allegations of coercion or inducements to attempt to opine on whether the witness statements were involuntary or unreliable. On the related issues of involuntariness and unreliability, which Plaintiffs do not

directly reference, the Court should clarify and confirm that Mr. Drago cannot testify or opine on those subjects, either.

Indeed, federal precedent has rejected similar expert testimony to suggest a witness statement was involuntary or unreliable due to coercion. *See United States v. Jacques*, 784 F. Supp. 2d 59, 62-63 (D. Mass. 2011)(excluding expert who "proposed to testify that coerced-compliant false confessions have certain characteristics, that Defendant's confession shared those characteristics, and that, therefore, he had 'substantial basis for concern about the reliability of the defendant's confession'"). Federal courts have taken this approach because treating a statement as involuntary or unreliable "cannot be logically disconnected from the implicit opinion" that the witness statement must have been false. *Id.* at 63 ("An opinion that a defendant's statement 'I am guilty' is unreliable cannot be logically disconnected from the implicit opinion that the defendant is, in fact, *not* guilty."); *United States v. Benally*, 541 F.3d 990, 995 (10th Cir.2008) ("While [the defendant] emphasizes that Dr. Davis would not have opined as to whether she believed [the defendant] confessed falsely, with or without the opinion, the import of her expert testimony would be the same: disregard the confession and credit the defendant's testimony that his confession was a lie.").

Plaintiffs also cite no case law specifically allowing expert testimony regarding whether witness statements were involuntary or unreliable. The decisions and quoted passages that Plaintiffs reference pertain to the admissibility of police practice expert testimony in general. More on-point federal guidance, such as from *Jacques* and *Benally*, indicates Mr. Drago should be barred from testifying or opining whether witness statements were involuntary or unreliable. Mr. Drago likewise cannot testify or opine on whether any witness statements were true or false as Plaintiffs acknowledge.

**IV.     To bar opinion or testimony relating to the statement by Kayla Mills to the extent it is based on unreliable hearsay information.**

Kayla Mills died in January 2013 while the prosecution against Plaintiffs was pending and she was never deposed in Plaintiffs' subsequent civil action against York. Portions of Mr. Drago's disclosed report and opinions relating to Mills are based on second-hand hearsay information from her mother Donna Mills. Expert reliance on hearsay information can be allowed; however, the hearsay information must be the type reasonably relied upon by experts in the field. Fed. R. Evid. 703; *Mannino v. International Mfg. Co.*, 650 F.2d 846, 851 (6th Cir. 1981).

Plaintiffs note Donna Mills was deposed and they contend police practices experts (such as Mr. Drago as well as York's expert) can reasonably rely on "deposition transcripts." *See* Pls. Resp., p. 8. Some of Donna Mills's deposition testimony referenced within Mr. Drago's report, however, included conversations between Donna Mills and her daughter Kayla Mills. *See* Drago Report, pp. 15-16. Any information supposedly reported by Kayla to her mother Donna is a second layer of hearsay. Plaintiffs fail to establish their expert can reasonably rely on such second-layer hearsay information from Kayla to Donna that Donna did not personally witness. Any testimony or opinions by Mr. Drago that rely, in whole or in part, on second-layer hearsay information from Kayla Mills must be accordingly barred. The information attributed by Donna to Kayla was very generalized, never subject to scrutiny, and susceptible to uncritical acceptance considering the inherently biased mother-daughter relationship.

Mr. Drago's report also relies on information from Kayla's March 2012 interview with York that Donna Mills partially attended and observed. Plaintiffs characterize this testimony from Donna Mills as "absolutely reliable." *See* Pls. Resp., p. 8. The circumstances, however, suggest otherwise. York recorded his interview with Kayla Mills and conducted that interview

6

with Kayla's attorney, Kenneth Boggs, present. Kayla Mills Audio Statement (PL 009650)(conventionally filed as ME 54). Her attorney, who has since died, never substantiated any inappropriate interview tactics by York. The interactions captured on the recording also are inconsistent with and do not corroborate the alleged pressuring and fact-feeding that Donna Mills attributes to York in her deposition testimony. *See id.* Donna Mills tries to explain the discrepancy by claiming York turned the recorder on and off during the interview, which Mr. Drago's report likewise references. *See* Drago Report, pp. 16-17. Yet, her explanation that York turned the recorder on and off first appears in her deposition testimony in this civil lawsuit in September 2018 long after Boggs had died. By contrast, a report from an earlier August 2016 interview of Donna Mills by one of Plaintiffs' criminal investigators (while Boggs was still alive) makes no reference to any allegation of York turning the recorder on and off. *See* L. Evans Dep., pp. 274-75 (ME 43). The investigator's testimony indicated she would have documented that information if Donna Mills had reported it to her. *See id.* at 275. Donna Mills's "absolutely reliable" description of York's conduct during the March 2012 interview of Kayla is accordingly not as reliable as portrayed.

Plaintiffs also contend the "devastating admissions" by York "corroborate the reliability of Donna Mills' testimony." *See* Pls. Resp., p. 9. As during summary judgment briefing, however, Plaintiffs overstate the "understanding" between York and Kayla's attorney and any alleged threat from her potential arrest. There was never any binding commitment to Kayla Mills or her attorney by York regarding whether Kayla would be charged and prosecuted in connection with the murder investigation. The extent of York's understanding with her attorney was to withhold executing an arrest warrant for Mills pending an interview because York's prior attempts to speak with her were unsuccessful. *See* J. York dep., pp. 156-67 (ME 2). Mills

received no immunity and there was no agreement to preclude her future arrest or prosecution. York testified whether he moved forward with her arrest would depend on her level of involvement. *See id.*, p. 161-62. Mills provided an alibi in addition to the information that incriminated Taylor. York did not proceed to arrest Mills because he felt she was not involved based on the new information. *See id.*, p. 31. No legal authority prohibited York from reconsidering probable cause to charge Mills in light of receiving new information pertaining to her. York's testimony accordingly does not corroborate Donna Mills.

V. **To bar opinion or testimony relating to the statements by Joe King, Daniel Wilson, and Amber Simpson because expert testimony is not needed to understand the issues regarding York's alleged interactions with them.**

York moved to bar expert testimony and opinions regarding his interactions with Joe King, Daniel Wilson, and Amber Simpson because specialized police practices knowledge is unnecessary for the jury to understand the alleged fabrication of evidence involving statements from those witnesses. Amber Simpson testified York fabricated her statement by feeding her details while the recorder was off and having her repeat the details in her own words after the recorder was back on, which York denies. King and Wilson denied making any statements to York, while York claims he documented information from them but did not record their statements at their request.

For these witnesses, the issue between them and York essentially turns on credibility whether to believe the witnesses regarding how York allegedly fabricated their statements or to credit York's version of events of his interaction with them. A jury can otherwise understand that witness coaching (as alleged by Simpson) or making-up information and attributing it to a witness (as alleged by King and Wilson) is improper without needing specialized knowledge and opinion testimony from a police practices expert. Federal courts generally exclude expert

8

testimony when the issues are so clear and within the jury's understanding as the case is here. *See Sommerfield v. City of Chicago*, 254 F.R.D. 317, 329 (N.D. Ill. 2008).

Plaintiffs attack York for citing only a "single out of circuit case relating to a completely different issue." *See* Pls. Resp., p. 10. Other court decisions, however, commonly apply this general principle to bar expert police practices testimony regarding whether the use of force was improper. *See*, *e.g.*, *Pena v. Leombruni*, 200 F.3d 1031, 1034 (7th Cir. 1999)(describing use of deadly force issue was within lay competence because the circumstances that police confronted were "unambiguously dangerous"); *McCloughan v. City of Springfield*, 208 F.R.D. 236, 240 (C.D. Ill. 2002)(explaining how "the Court does not believe that a jury needs an expert witness to tell them that it is improper—under proper police procedure or even common decency—to kick someone in the head when he is being restrained on the ground."). Allowing expert testimony on subject matter that lay jurors can understand merely serves to unduly prejudice the jury and impermissibly bolster the credibility of the party's witnesses by having the expert mirror their preferred version of events. *See United States v. Hall*, 93 F.3d 1337, 1344 (7th Cir. 1996)(addressing expert testimony that "duplicates the jury's knowledge" and recommending "exclusion of the expert testimony to avoid the risk of unduly influencing the jury"); *United States v. Cruz*, 981 F.2d 659, 664 (2d Cir. 1992)(requiring experts to address subject matter "reasonably perceived as beyond the ken of the jury" and explaining how "expert testimony cannot be used solely to bolster the credibility of the [party's] fact-witnesses by mirroring their version of events").

Such analogous guidance supports excluding expert testimony and opinion regarding whether York fabricated statements from Simpson, King, and Wilson because the nature of the fabrication issue as to each of those witnesses is within the jury's understanding. The decisions

and quoted passages that Plaintiffs reference in opposition are not informative because they pertain to the admissibility of police practice expert testimony in general. Plaintiffs otherwise identify no authority that supports admitting expert testimony and opinion on the subjects of alleged witness-coaching or falsifying witness statements.[1]

## VI. To bar opinion or testimony relating to the reported identification and/or identification procedures relating to Michael Crump.

Another opinion by Mr. Drago that York moved to excluded related to York allegedly reporting a positive identification by Michael Crump. York and another KSP trooper visited Crump to perform a sketch of the male subject that Crump saw near the home of the murder victim while driving past there on the morning the victim was found dead. Pictures were later taken of Plaintiff Taylor with a hood over his head similar to the sketch. It is undisputed Crump subsequently moved out of state. York believed Crump had moved to Oklahoma and he recalled he may have sent pictures of Taylor to local police to show to Crump, but York never received confirmation that Crump could positively identify Taylor. *See* J. York dep., pp. 346-47. Crump's testimony indicates he never even interacted with police whem living in Oklahoma or seen pictures from them while living out of state. *See* M. Crump dep., pp. 22, 64-65 (ME 20).

To begin, the contention by Plaintiffs and Mr. Drago that York falsely reported Crump as positively identifying Taylor lacks foundation and should be barred.[2] Crump's testimony also

---

[1] Plaintiffs also note York's expert offers opinions relating to Simpson, King, and Wilson to argue that York cannot "square away" his motion to exclude Mr. Drago's testimony and opinions regarding those same witnesses. *See* Pls. Resp., pp. 10-11. The overlapping subject matter, however, is merely the result of how the expert disclosure process is sequenced and completed before pretrial motions are filed and decided by the Court. Plaintiffs' expert disclosures were first while York's expert disclosures were second. The purpose of York's police practices expert was to rebut Plaintiffs' expert without knowing or anticipating what opinions from Plaintiffs' expert this Court may bar. York recognizes rebuttal from his expert is unnecessary for any issues that the Court excludes.

[2] Plaintiffs and Mr. Drago indicate York misinformed the grand jury that Crump had positively identified Taylor. *See* Drago Report, p. 25. York contends they are misconstruing his grand jury testimony on that point. That issue is moot, however, because grand jury testimony is privileged and not admissible as explained above. York's contemporaneous reports do not otherwise attribute a positive identification to Crump and his preliminary hearing

refutes whether an attempted photo show-up using the pictures of Taylor ever occurred. Expert testimony and opinion regarding an issue that never materialized should likewise be barred because it cannot support liability and will only confuse the jury instead of assisting the trier of fact as to an actionable claim. Yet, Plaintiffs believe an attempted photo show-up is relevant and can assist the jury by underscoring the efforts York took to allegedly frame them. Even on this alternative ground, however, Plaintiffs attack on York grossly overreaches. The most York did was take pictures of Taylor and send them to another law enforcement agency in Oklahoma for follow-up with Crump. York was not personally involved with any efforts by the Oklahoma law enforcement agency from that point. Taking pictures of a suspect is not otherwise wrongful and the other agency could properly use the pictures in an array. Plaintiffs and their expert accordingly engage in pure speculation whether an improper photo show-up was attempted by an outside law enforcement agency without York's involvement. Mr. Drago's testimony and opinion on the subject of an attempted identification procedure must be barred because an expert cannot reasonably rely upon such an attenuated factual foundation.

**VII.    To bar opinion or testimony relating to any alleged *Brady* noncompliance.**

York also moved to exclude testimony and opinion from Mr. Drago regarding whether York complied with *Brady* disclosure requirements because expert testimony on this subject cannot assist the trier of fact inasmuch as Plaintiffs have no *Brady* claim. Plaintiffs acknowledge they have no *Brady* claim but contend the issue is relevant to establishing whether York withheld evidence from the prosecutor that may have impacted the continuation of their criminal charges for purposes of their malicious prosecution claims. *See* Pls. Resp., p. 15. However, whether York made any alleged "material omissions" already fits within the applicable malicious prosecution

---

testimony specifically clarified that Crump had not identified Taylor but only provided a description of the male subject he saw. *See* York Preliminary Hearing Testimony, pp. 10-11 (ME 66).

framework without needing to inject extraneous expert testimony on the subject of criminal trial obligations under *Brady* that will unnecessarily confuse and complicate potential trial issues. *See King v. Harwood*, 852 F.3d at 591. It is otherwise for the jury to decide what information, if any, York withheld from the prosecution and whether that information was material. Expert testimony from Mr. Drago on these questions would be usurping the role of the jury.

Respectfully Submitted,

*s/Derrick T. Wright*
L. Scott Miller
Charles D. Cole
Derrick T. Wright
Sturgill, Turner, Barker & Moloney, PLLC
333 W. Vine Street, Suite 1500
Lexington, Kentucky 40507
(859) 255-8581—Telephone
(859) 231-0851—Fax
ccole@sturgillturner.com
dwright@sturgillturner.com
smiller@sturgillturner.com
ATTORNEYS FOR DEFENDANT
JASON YORK

**CERTIFICATE OF SERVICE**

I hereby certify that on November 12, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, and served all counsel of record via the CM/ECF system:

*s/Derrick T. Wright*
COUNSEL FOR DEFENDANT
JASON YORK