### COMMONWEALTH OF KENTUCKY
### KENTUCKY COURT OF APPEALS
### FILE NO. 2018-CA-000072

**PATRICK BAKER**                                                   **APPELLANT**

**V.**                           **APPEAL FROM KNOX CIRCUIT COURT**
                                 **HON. DAVID L. WILLIAMS, SPECIAL JUDGE**
                                   **INDICTMENT NO. 14-CR-00082**

**COMMONWEALTH OF KENTUCKY**                           **APPELLEE**

---

### BRIEF FOR APPELLANT, PATRICK BAKER

---

Submitted by:

Stefan J. Bing
Gess Mattingly & Atchison, P.S.C.
201 West Short Street
Lexington, Kentucky 40507
(859) 252-9000

William G. Crabtree
120 East Fourth Street
London, Kentucky 40741-1414
(606) 878-8888

The undersigned certifies that copies of this Brief were mailed, first class postage prepaid, to the Hon. David L. Williams, Circuit Court Judge, 112 Courthouse Square, P.O. Box 660, Burkesville Kentucky 42717; the Hon. Jackie Steele, Commonwealth's Attorney, 128 North Main Street, London, Kentucky 40741; and the Hon. Andy Beshear, Attorney General, Office of Criminal Appeals, 1024 Capital Center Drive, Frankfort, Kentucky 40601 on June 5, 2018. The undersigned further certifies that the record on appeal has been returned to the clerk of the trial court.

Stefan J. Bing

## INTRODUCTION

This is a case in which the Appellant, Patrick Baker, appeals as a matter of right from a judgment convicting him of reckless homicide, first-degree robbery, tampering with physical evidence, and impersonating a police officer, and sentencing him to nineteen (19) years in prison.

## STATEMENT CONCERNING ORAL ARGUMENT

Appellant believes that oral argument would be beneficial to the Court because the complexity of some of the electronic photographic evidence admitted at trial and discussed in Appellant's Brief may be confusing to the Court, and oral argument will give the Court an opportunity to inquire further about those issues.

## STATEMENT OF POINTS AND AUTHORITIES

INTRODUCTION................................................................................. i

STATEMENT CONCERNING ORAL ARGUMENT ................................... i

STATEMENT OF POINTS AND AUTHORITIES ................................... i-iii

STATEMENT OF THE CASE.............................................................. 1-7

1.   Commonwealth's Exhibits 2a & 2b .............................................. 4-5

2.   Commonwealth's Exhibit 4 ....................................................... 4-7

E.   Patrick is convicted of reckless homicide, first-degree robbery, impersonating a police officer, and tampering with physical evidence. ................................... 8

ARGUMENT................................................................................. 7-23

## I.   THE COMMONWEALTH'S IMPROPER SPECULATION DURING ITS CLOSING ARGUMENT ABOUT THE UNKNOWN CONTENTS OF PATRICK'S

i

**IPHONE DEPRIVED HIM OF A FAIR TRIAL AND CONSTITUTED REVERSIBLE ERROR** ............................................................................ 8-18

**A. Introduction and Background** .............................................................. 9-12

*Estep v. Commonwealth*, 64 S.W.3d 805, 810 (Ky. 2002).................................. 9, 10

**B.  Kentucky law holds that the Commonwealth's statements constitute reversible error** .......................................................................................................... 11-16

*Napier v. Commonwealth*, 268 Ky. 482, 105 S.W.2d 594 (1937). ..................................11

*Berger v. United States*, 295 U.S. 78 (1935)............................................................ 11-12

1. *Mack v. Commonwealth* .............................................................        12-13

*Mack v. Commonwealth*, 860 S.W.2d 275 (Ky. 1993)........................................    12, 13

2.  *Moore v. Commonwealth* ...................................................................... 13-15

*Moore v. Commonwealth*, 634 S.W.2d 426 (Ky. 1982) ...................................... 13, 14, 15

*Bowling v. Commonwealth*, Ky., 279 S.W.2d 23 (1955) .................................... 14

*Niemeyer v. Commonwealth*, Ky., 533 S.W.2d 218 (1976) .......................... 14, 15

3.    Other Kentucky cases also hold that the Commonwealth's statements constituted reversible error .....................................................................................        16

*Nolan v. Commonwealth*, 261 Ky. 384, 87 S.W.2d 946 (1935) ...................................... 16

**C.  The error was not harmless**.................................................................. 16-18

*St. Clair v. Commonwealth*, 451 S.W.3d 597 (Ky. 2014) .................................17

*Staples v. Commonwealth*, 454 S.W.3d 803 (Ky. 2014) ...................................17

*Crawford v. Washington*, 541 U.S. 36 (2004) .................................................17

*Talbott v. Commonwealth*, 968 S.W.2d 76 (Ky. 1998) ...................................17

**II.    THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ADMITTED COMMONWEALTH'S EXHIBITS 2A, 2B, and 4 UNDER KRE 403 BECAUSE THEY WERE UNDULY PREJUDICIAL, MISLEADING, AND CONFUSED THE JURY** ............................................................................................................ 18-23

*Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705 (Ky. 2009) ....................................18

*Webb v. Commonwealth*, 387 S.W.3d 319 (Ky. 2012). ....................................19

*Mitchell v. Commonwealth*, 423 S.W.3d 152 (Ky. 2014) .................................20

*United States v. Stearns*, 550 F.2d 1167 (9th Cir. 1997) .................................20

**CONCLUSION** ................................................................................... 23-24

**INDEX TO APPENDIX** ..............................................................................A1

## STATEMENT OF THE CASE

At approximately 5:00 a.m. on May 9, 2014, two men wearing ski masks and dark clothing kicked in the front door of Donald Mills's mobile home in Barbourville, Knox County, Kentucky. The men, at least one of whom was armed, announced they were law enforcement and attempted to rob Donald Mills ("Mills"), a known drug dealer, of drugs and cash he was known to keep at the house. During the course of the incident, Mills was shot and killed. At the time of his death, Mills's wife, two children, and a friend of the Mills children were present at the home.

On May 16, 2014, Christopher Wagner ("Wagner") was interviewed by the Kentucky State Police ("KSP").[1] Wagner told police that he and Appellant Patrick Baker ("Patrick") had been the two men involved in the break-in at the Mills residence and that other individuals had assisted in planning the robbery. Wagner also told police after the incident he and Patrick drove from Knox County to neighboring Bell County and buried a pistol. Based on information Wagner provided, a pistol was later recovered.[2] Patrick was subsequently arrested and indicted by the Knox County Grand Jury, along with four other alleged co-conspirators, for his alleged role in the death and robbery of Mills.

The trial that is the subject of this appeal began on October 30, 2017. Following a four-day trial, Patrick was found guilty of: (1) reckless homicide; (2) first-degree robbery; (3) impersonating a police officer; and (4) tampering with physical evidence.[3] The trial court rejected the jury's recommendation that the sentences run concurrently and sentenced Patrick to nineteen (19) years' imprisonment.[4]

---

[1] *See* Affidavit in Support of Search Warrant, TR at 12-15.
[2] *Id.*
[3] VR 11/02/17, 10:32:31.
[4] Judgment, TR at 905-908.

Before and during Patrick's trial, evidence recovered from an iPad and iPhone 5s found at Patrick's residence was a fervently contested issue. On May 16, 2014, the same date that Wagner was interviewed, KSP executed a search warrant of Patrick's residence and seized, among other things, an iPhone 5s and an iPad. The search warrant did not authorize a search of the contents of those devices. Despite the clear scope of the warrant, KSP did, however, conduct a warrantless search of the iPad at the time it was seized and viewed photographs contained on the device. By his own admission, KSP Detective Johnson conceded he had "made the mistake of looking at the iPad" and that "it's not the proper procedure" to go forward with the search of the iPad's contents as he had done.[5]

On October 31, 2014, Detective Johnson signed an affidavit in support of a second search warrant to examine the contents of the iPad. The affidavit failed to mention the previous warrantless search that had already been conducted months before because the Commonwealth's Attorney "advised [him] in regards to [his] affidavit not to include anything [he] saw," during the search that occurred on May 16, 2014.[6] A warrant was issued and two (2) pertinent photographs from the iPad were recovered after an examination in January, 2015.

Similar issues arose in regard to the iPhone 5s that was recovered on May 16, 2014. The seized iPhone 5s was password-protected, and police were unable to obtain its contents without additional testing.[7] In order to access the contents of a password-protected iPhone, law enforcement officials commonly run a test which attempts to "crack" the password.[8] There is a risk that this testing process, also called an

---

[5] TR 323 (attached CD), Transcript of 7/19/2016 Suppression Hearing, at 46-47.
[6] *Id.* at 46.
[7] VR 10/30/17, 03:57:35.
[8] VR 10/30/17, 03:57:40.

"extraction," can erase all contents on the subject device.[9] On October 2, 2014, Patrick filed a motion requesting that a technology expert be permitted to examine the seized iPhone 5s.[10] On January 13, 2015, while Patrick's motion to examine the device was still pending, Patrick's trial counsel sent a follow-up letter to the Commonwealth's Attorney asking for "dates for my IT people to take a look at the iPad, iPhone, and laptop."[11]

KSP Sergeant Collins, prior to conducting the search of the iPhone 5s and without knowledge of Patrick's pending motion, called the Commonwealth Attorney's office for guidance on how to proceed with the extraction.[12] At no time before the testing, despite the Commonwealth Attorney's office having knowledge of Patrick's pending motion and the risks associated with the testing, did the Commonwealth consult with Patrick's counsel before instructing Sergeant Collins to proceed with the extraction. After four attempts to unlock the iPhone 5s, the extraction testing resulted in all "user generated or created data"[13] on the iPhone 5s being permanently erased,[14] leaving Patrick with no opportunity to inspect the device.

In fact, the only data recovered from the iPhone 5s that was seized on May 16, 2014, was the phone's SIM card and the phone number associated with that device.[15] No information confirming any iTunes account associated with that iPhone 5s was recovered.[16] This fact is crucially important as it defines the link between the iPad and the iPhone 5s.

---

[9] VR 10/30/17, 3:58:46.
[10] TR at 83-85.
[11] TR at 924.
[12] VR 10/30/17, 3:58:40; 3:59:05.
[13] VR 10/30/17, 4:32:00.
[14] VR 10/30/17, 3:58:00.
[15] TR 323 (attached CD), Transcript of 7/19/16 Suppression Hearing, at 8.
[16] Id. at 2, 5.

3

When two devices (specifically two Apple devices) are enabled to share photographs between them, permission for the devices to link and share content is granted via a user's iTunes account.[17] The holder of an iTunes account can control the sharing or linking of content between devices linked to their iTunes account according to their personal preference.[18] Any sharing of content, however, is done through accessing or permitting access to a specific iTunes account on both devices.[19] In specific reference to photographs shared between Apple devices, a photograph actually taken on a device will be stored on that device and will appear on that that device's "camera roll."[20] A photograph that was taken on one device but shared with another linked device will appear on the linked device's "photostream," but not its "camera roll."[21] Against this background, the photographs obtained from the seized iPad and purported to be linked to the seized iPhone 5s are discussed herein.

### 1.      Commonwealth's Exhibits 2a & 2b.

The first photograph obtained from the iPad depicted Elijah Messer, an alleged co-conspirator, and Mills at the Mills residence on the afternoon of May 7, 2014, two days prior to the incident.[22] Sergeant Collins testified at trial that he had obtained the photograph's "metadata" or "exit data."[23] "Metadata" or "exit data" is detailed information about a photograph, and can include the time a photograph was originally taken, the type of device used to take the photograph, edits or changes made to the

---

[17] VR 10/30/17, 4:19:39. Sergeant Collins's general discussion about photo sharing between Apple devices can be found at VR 10/30/17, 4:06:40 – 4:10:30.
[18] *Id.*
[19] VR 10/30/17, 4:19:25.
[20] VR 10/30/17, 4:12:00 (distinguishing between photos found in the iPad's "photostream" and the iPad's "camera roll"); VR 10/30/17, 4:08:00 (discussing "photostream").
[21] *Id.*
[22] VR 10/30/17, 4:05:15.
[23] VR 10/30/17, 4:05:15 – 4:18:00.

photograph, and the GPS coordinates of the location where the photo was taken. Sergeant Collins testified that the photograph depicting Messer and Mills had not been taken using the camera on the iPad seized from Patrick's home.[24] Instead, the metadata showed that the photograph originated on an "Apple iPhone 5s," and was, through some iTunes account, which was unknown, linked to the iPad's "photostream."[25] Sergeant Collins testified that he was not certain when the photograph was taken, by whom it was taken, or on what Apple iPhone 5s device it was originally taken.[26] Sergeant Collins did not identify the iTunes account that linked the photo with either device.[27]

The photograph and its metadata were introduced as Commonwealth's Exhibits 2a and 2b[28] over Patrick's objection.[29]

## 2.      Commonwealth's Exhibit 4.

The second photograph showed Patrick holding and apparently looking at a cell phone. Sergeant Collins testified that the photograph was also located in the iPad's "photostream," not its "camera roll." Defense counsel objected on the basis that the Commonwealth had not provided a proper foundation for admission of the photograph: "[Sergeant Collins] cannot say which phone it came from, whether it came from the

---

[24] VR 10/30/17, 4:07:30.
[25] Sergeant Collins testified that a photo taken with the iPad's camera would be located in the iPad's "camera roll," (see, e.g., discussion of Commonwealth's Exhibit 3, which was located in the iPad's camera roll, VR 10/30/17, 4:12:00), whereas photos taken on a different device and later transferred to the iPad would be located in the iPad's "photostream."
[26] VR 10/30/17, 4:09:00.
[27] TR 323 (attached CD), Transcript of 7/19/16 Suppression Hearing, at 8 (noting that the only information obtained from the iPhone was the SIM card; all user generated content was erased).
[28] Commonwealth's Exhibits 2a and 2b, attached hereto as **Appendix Tab 1**.
[29] VR 10/30/17, 4:01:44.

iPhone S they destroyed all the evidence on, or whether it came from another iPhone S. He can say it was streamed onto this iPad, but that's as far (inaudible)."[30]

Patrick's counsel also argued that the second photograph was not relevant[31] except for the improper purpose of encouraging the jury to infer that the photograph came from iPhone 5s that was seized from Patrick's residence on May 16, 2014. The Commonwealth responded that the iPad and the iPhone 5s were linked through "photostream." The judge overruled Patrick's objection and stated that "the relevance of the picture is they've got an iPhone 5s that's connected to his iPad in the approximate time period and he's present and that iPhone is there, and that picture that's connected to his iPad is on there that was taken."[32] The problem is that Sergeant Collins, again, did not actually testify to any link between the devices in evidence. Sergeant Collins testified that he could not even say "what type of device" took the photograph.[33] He could not testify that it was even an iPhone that originally took the photo, let alone whether it was Patrick's iPhone. As with the first photograph, the Commonwealth did not introduce any evidence that Patrick's iPhone was associated with the same iTunes account as the iPad examined by Sergeant Collins.

In fact, Sergeant Collins would later testify that some of the photographs he recovered from the iPad's photostream "could have been on that phone or could have been on another phone."[34] The defense renewed its objection to admission of the

---

[30] VR 10/30/17, 4:14:55.
[31] VR 10/30/17, 4:18:02.
[32] VR 10/30/17, 4:18:09.
[33] VR 10/30/17, 4:20:45.
[34] VR 10/30/17, 4:29:20.

6

photographs, but the objection was overruled.[35] The trial court did not state why the photograph was relevant, and the photograph was introduced as Commonwealth's Exhibit 4.[36]

To summarize, Commonwealth's Exhibit 2 (the photo of Elijah Messer and Donald Mills) originated on **an** Apple iPhone 5s and was located in the iPad's photostream. Commonwealth's Exhibit 4 (the photo of Patrick) did not originate on the iPad, and Sergeant Collins could not say on what kind of device the photograph originated. And, as noted above, the Commonwealth did not introduce any evidence that the iTunes account associated with the iPad was the same as the account associated with Patrick's iPhone. It is on the basis of the admission of these photographs into evidence and improper discussion of these two photographs at trial that Patrick now appeals.

## ARGUMENT

Patrick appeals his conviction and sentence as a matter of right pursuant to KRS 22A.020(1) on two grounds: (1) the trial court committed reversible error by overruling Patrick's objection to the Commonwealth's improper statements concerning evidence alleged to be on the iPad seized on May 16, 2014 during closing arguments; and (2) the trial court erred under KRE 403 by admitting Commonwealth's Exhibits 2a, 2b, and 4 because their probative value was substantially outweighed by the danger they would be unduly prejudicial, mislead the jury, and confuse the issues.

---

[35] VR 10/30/17, 4:21:10.  In pretrial proceedings, Patrick moved to suppress (TR 179-189) all evidence recovered from the iPad based on Detective Johnson's May 16, 2014 warrantless search, described above. The court denied the motion on the basis of the inevitable discovery and independent source exceptions to the search warrant requirement (TR 364-369) Patrick renewed the motion at trial, which was denied (VR 10/30/17, 4:01:44).

[36] Commonwealth's Exhibit 4, attached hereto as **Appendix Tab 2**.

I.    **THE COMMONWEALTH'S IMPROPER SPECULATION DURING ITS CLOSING ARGUMENT ABOUT THE UNKNOWN CONTENTS OF PATRICK'S IPHONE DEPRIVED HIM OF A FAIR TRIAL AND CONSTITUTED REVERSIBLE ERROR.**

A.    **Introduction and Background**

As background, during the pretrial stages of his case, Patrick moved for a missing evidence instruction as a result of the Commonwealth's conduct surrounding the destruction of the user-generated content of Patrick's iPhone 5s. The purpose of a missing evidence instruction is "to cure any Due Process violation attributable to the loss or destruction of *exculpatory* evidence by a less onerous remedy than dismissal or the suppression of relevant evidence."[37] The trial court held an evidentiary hearing.

The trial court agreed with Patrick and ruled that "the decision not to reveal the imminent examination was intentional" and "[g]iven the fact that the Commonwealth was on notice of the Defendant's desire to examine the evidence, the decision to attempt an extraction without first notifying defense counsel demonstrated some degree of bad faith."[38] Thus, the trial court agreed to give the instruction, which ultimately was read to the jury as follows:

> The Commonwealth has lost evidence involved in this case, specifically information contained on an iPhone 5s. In your deliberations, you may infer, but you are not required to infer, that this evidence, if available now, would be favorable to the defendant's case.[39]

During its closing argument, the Commonwealth commented about the missing evidence instruction. At first, it appeared that the Commonwealth was about to explain that the instruction did not <u>require</u> the jurors to infer that the iPhone had evidence favorable to Patrick's case, only that they <u>may</u> do so. That certainly would have been

---

[37] *Estep v. Commonwealth*, 64 S.W.3d 805, 810 (Ky. 2002) (emphasis in original).
[38] TR 367.
[39] Jury Instruction No. 23, TR at 862.

proper comment by the Commonwealth. But, that is not what happened; rather, the Commonwealth's Attorney "assured" the jury that the contents of phone, if available, would actually be <u>harmful</u> to Patrick's case:

> Bill Collins. Bill Collins is the one who examined the iPhone, and it got wiped. And the Court has provided you all with a missing evidence instruction, and that's on Page 33. And this says (reading from instruction) "The Commonwealth has lost evidence involved in the case, specifically the information contained on an iPhone 5s." We don't deny it and I told you all that from the get-go. (reading from instruction) "In your deliberations," and here's the important part, "you may infer, but you are not required to infer, that this evidence, if available, would have been favorable to the Defendant's case." I submit to you if this ... **trust me** I wish we had this. I wish we had this. I wish we had the contents of this iPhone. Because **I can assure you**, based upon what we know from the iPad, the photostreaming, **it would not have been beneficial to the defendant, but would have been beneficial ...**[40]

The defense preserved this issue for appeal by objecting and a bench conference was held.[41] Patrick's trial counsel argued that no one knew what the contents of the iPhone were because they were erased, and the Commonwealth was "now trying to ask them to <u>imply</u> what" was on the phone. In other words, the Commonwealth was blatantly commenting about **facts not in evidence**. The trial court overruled the objection and told the parties to "just move on," and did not admonish the jury.[42]

Immediately, after the bench conference, the Commonwealth continued to speculate about the iPhone, encouraging the jury to make inferences about its contents:

> With the photostream on the iPad and **an** iPhone S through Patrick Baker's iTunes account I think is what ... don't hold me to that ... I think it's some kind of iTunes account or Apple ... whatever the account was that the photostream went through. **Also, we could have tied that iPhone to THOSE photos also.** And how do we know the iPad was Patrick's? We were also able to retrieve a picture ... here's a picture of Patrick

---

[40] VR 11/2/17, 1:49:59.
[41] VR 11/2/17, 1:50:47.
[42] VR 11/2/17, 1:51:08.

(shows the jury Commonwealth's Exhibit 4) not to mention the emails and the iTunes account was included on the iPad finding it's Patrick's.[43]

To recap, the Commonwealth had <u>never</u> examined the contents of the iPhone. It did not know what was on the iPhone. It could not present direct evidence to the jury that the one photo taken on "**an** iPhone S" was taken on **Patrick's** iPhone 5s. Its contents were destroyed before anyone could examine it. And, the trial court had previously ruled that the Commonwealth acted in bad faith when it ordered the extraction to be performed without consulting with Patrick's counsel.

Additionally, Sergeant Collins testified that he could not determine on which device Commonwealth's Exhibit 4 was originally taken. He could not even testify that it was taken on an iPhone at all. Thus, the Commonwealth's statement that it "could have tied that iPhone to <u>those photos</u> (plural) also" was a mischaracterization of Sergeant Collins's testimony. With this type of digital evidence which is often difficult to explain to lay persons, any statement by the Commonwealth that mischaracterizes the evidence presents a dangerous risk of confusing the jury.

Nevertheless, the Commonwealth not only urged the jury to disregard the missing evidence instruction, but it actually went further and essentially testified that it could "assure" them that the evidence would not be beneficial to Patrick. The Kentucky Supreme Court has plainly stated that "there is <u>no basis</u> for an instruction permitting the jury to infer that all missing evidence, if available, would be <u>adverse to the defendant</u> and <u>favorable to the Commonwealth</u>."[44] That is, however, exactly what the Commonwealth "assured" the jury. The intended and actual effect was to, for all intents and purposes,

---

[43] VR 11/2/17, 1:51:15 - 1:51:58 (emphasis added).
[44] *Estep v. Commonwealth*, 64 S.W.3d 805, 810 (Ky. 2002) (emphasis added).

vitiate the Court's missing evidence instruction or, worse, to mischaracterize for the jury the law of the case as determined by the trial court.[45]

Thus, while Patrick ultimately did receive the missing evidence instruction, its impact was negated by the Commonwealth's flagrant statements to the jury that it should ignore the instruction or, even worse, infer the opposite. By doing so, the Commonwealth was free to unfairly speculate about facts not in evidence. Certainly, the Commonwealth could not have engaged in such speculation if it had not erased the iPhone in the first place and its contents were known. The Commonwealth enjoyed an unfair advantage it otherwise would not have if it had not acted in bad faith in the first place. Condoning that practice creates perverse incentives for the Commonwealth. The Commonwealth should not be permitted to benefit at trial from its own bad faith conduct. This Court should plainly and unambiguously admonish this behavior and provide a harsh disincentive for prosecutors to do so in the future.

**B.**     **Kentucky law holds that the Commonwealth's statements constitute reversible error.**

Longstanding Kentucky and U.S. Supreme Court precedent holds that the Commonwealth's comments constitute reversible error, due in large part to a prosecutor's influence over a jury, the mantle of respect bestowed upon him, and his duty to "to see that the law is enforced properly."[46] In *Berger v. United States*,[47] the court stated:

> [T]he average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, **improper suggestions, insinuations,**

---

[45] The Commonwealth misrepresented to the jury the law of the case; that is, the Commonwealth told the jury that it could disregard an instruction given to them by the trial court and infer instead that the iPhone contained evidence that would not be beneficial to Patrick's case.
[46] *Napier v. Commonwealth*, 268 Ky. 482, 105 S.W.2d 594, 598 (1937).
[47] 295 U.S. 78 (1935).

**and, especially, assertions of personal knowledge** are apt to carry much weight against the accused when they should properly carry none.[48]

The Kentucky Supreme Court in *Mack v. Commonwealth*, *Moore v. Commonwealth*, and other cases has held that similar improper comments by a prosecutor about evidence not in the record constitute reversible error.

### 1.    *Mack v. Commonwealth.*

In *Mack v. Commonwealth*,[49] the Kentucky Supreme Court considered whether the "trial court erred in overruling objections to improper and unfairly prejudicial arguments by the Commonwealth's Attorney."[50] During his closing argument during the guilt/innocence phase of the trial, the prosecutor remarked, "[w]e've only heard the tip of the iceberg. You didn't hear the full story in a trial in open court under oath of all these witnesses subject to the rules of evidence."[51] The defense objected, but he continued: "You've heard that portion that comes through in legal proceedings, and that's all."[52] Mack was convicted of sodomy and sexual abuse.

On appeal, Mack argued that the Commonwealth's comments deprived him of due process resulting in an unfair trial because the prosecutor had improperly speculated about evidence that was not in the record. The Supreme Court agreed and held that the prosecutor's comments constituted reversible error:

> The trial court committed **reversible error** in condoning the prosecutor's **patently improper** and prejudicial argument. We are amazed that the prosecutor, the court below and the Commonwealth all appear to characterize these remarks as fair comment on the evidence; in fact they constitute **unfair speculation** on **anything but the evidence**. We see nothing fair in telling the jury that there exists a vast store of incriminating

---

[48] *Id.* at 88 (emphasis added).
[49] 860 S.W.2d 275 (Ky. 1993).
[50] *Id.* at 276.
[51] *Id.*
[52] *Id.*

evidence, the presentation of which is obstructed by "rules of evidence" and "legal proceedings" (broadly, due process). A defendant cannot confront **phantom witnesses**, or cross-examine real witnesses on a "full story" consisting of **mere suggestion**. The argument enticed the jury to override due process of law as a baneful impediment to justice, and was made **doubly prejudicial** by weight of the trial court's imprimatur. The effect was to deprive the defendant of a fair trial.[53]

Mack's convictions were reversed and his sentence vacated.

There is virtually no difference between the prosecutor's comments in *Mack* and the Commonwealth's comments in Patrick's case. The Commonwealth in *Mack* told the jury that it had not heard all of the evidence, and that the evidence it did not hear, if available, would strengthen the Commonwealth's case. At Patrick's trial, the prosecutor "assured" the jury that Patrick's iPhone contained inculpatory evidence that the jury had not seen. The Commonwealth's "assurances" constituted "unfair speculation on anything but the evidence."

Like in *Mack*, the prosecutor's comments here were "patently improper" and implied that "there exist[ed] a vast store of incriminating evidence," which was now unavailable. The statement was designed to "entice the jury to override due process of law" requiring it to decide Patrick's guilt or innocence based only on the evidence in the record, not on "mere speculation" as to what all the evidence might be. Additionally, the trial court's imprimatur made the prosecutor's conduct "doubly prejudicial."

### 2. *Moore v. Commonwealth*

*Mack* is not a stand-alone case. In *Moore v. Commonwealth*,[54] the appellant argued that the trial court erred by permitting the Commonwealth to reference during its closing argument excluded portions of a recorded interview with the defendant following

---

[53] *Id.* at 276-77 (emphasis added).
[54] 634 S.W.2d 426 (Ky. 1982).

his arrest for murder. The Commonwealth said "I know you didn't get to hear all the tape recorded statement. I wish you could have." Later, the Commonwealth again told the jury ". . . you heard that part of the tape. Wish you could have heard it all."[55] Moore was convicted of murder, kidnapping, and robbery. On appeal, the defendant argued that those comments did not comply with the "fundamental fairness requirement of due process."[56]

The Supreme Court agreed and reversed Moore's convictions.[57] The Court noted that it "is a fundamental precept that a prosecutor must conduct himself with '. . . due regard to the proprieties of his office and to see that the legal rights of the accused, as well as those of the Commonwealth, are protected."[58] The court quoted *Niemeyer v. Commonwealth*[59] for the principles under which the conduct of a prosecutor is judged:

> One of the finest offices the public can give to a member of the legal profession in this state is that of Commonwealth's Attorney. Its very status becomes a mantle of power and respect to the wearer. Though few are apt to wear it lightly, some forget, or apparently never learn, to wear it humbly. No one except for the judge himself is under a stricter obligation to see that every defendant receives a fair trial, a trial in accordance with the law, which means the law as laid down by the duly constituted authorities, and not as the prosecuting attorney may think it ought to be.[60]

The Court held that the prosecutor's two comments about how he "wished" that the jury could have heard the excluded portions of the recorded interview "were improper and prejudicial to the rights of the defendant."[61] According to the court, "**[t]he only inference is that the inadmissible part of the tape contained incriminating evidence**" and the

---

[55] *Id.* at 437.

[56] *Id.*

[57] The Court also reversed Moore's convictions based on improper questions about a witness's pending felony charges during cross-examination. *Id.* at 437.

[58] *Id.* (quoting *Bowling v. Commonwealth*, Ky., 279 S.W.2d 23, 24 (1955)).

[59] Ky., 533 S.W.2d 218 (1976).

[60] *Id.* at 437-38 (quoting *Niemeyer*, 533 S.W.2d at 222).

[61] *Id.* at 438.

"effect of these comments was to negate and circumvent the ruling of the trial court and to try the appellant **by innuendo**."[62]

Here, the Commonwealth wanted the jury to believe that certain photos that were found on Patrick's iPad had originated on Patrick's iPhone 5s. But, because it could not present direct evidence of that to the jury, it instead attempted to do so by encouraging the jury to simply infer it, in direct defiance of the trial court's missing evidence instruction. The Commonwealth attempted to try Patrick "by innuendo," *i.e.*, what the contents of his iPhone might have been. Like in *Moore*, the Commonwealth wanted for Patrick to receive a fair trial, not in accordance with the law, but by what the prosecuting attorney thought "it ought to be."

In fact, the Commonwealth's comments at Patrick's trial were even more improper than those at issue in *Moore*. There, the prosecutor only told the jurors that he "wished" that they could hear facts not in the record. In Patrick's case, the prosecutor went further and "assured" the jury that the destroyed evidence would be harmful to Patrick's case. Like in *Moore*, the "only inference" to be drawn by the prosecutor's comments was that Patrick's iPhone contained incriminating evidence. As the Court noted in *Moore*, the office of the Commonwealth's Attorney carries a "mantle of power and respect to the wearer." When the Commonwealth says "trust me" and "I can assure you" to a jury it should do so most carefully because those statements carry considerable weight when made by a prosecutor. When it made those statements about prejudicial evidence not in the record, Patrick was deprived of a fair trial.

---

[62] *Id.* (emphasis added).

### 3.   Other Kentucky cases also hold that the Commonwealth's statements constituted reversible error.

In addition to *Mack* and *Moore*, Kentucky's highest court also has held that similar statements constitute reversible error in other cases. In *Nolan v. Commonwealth*,[63] for example, the prosecutor told the jury that he wished he could call a victim from the grave to testify that the defendant had shot him "for nothing."[64] In reversing the defendant's murder conviction on grounds that the "accused did not have a fair trial,"[65] Kentucky's highest court held:

> this melodramatic argument, resorted to by the Commonwealth's attorney as a means for bringing before the jury, in violation of the court's prior ruling, evidence which it had emphatically excluded, was altogether improper and to be condemned as an instance of flagrant misconduct on the part of the offending attorney, who by such improper methods attempted to secure a conviction at all hazards.[66]

The court stated in that case that both the trial court (in permitting the statements) and the Commonwealth (in making them) acted improperly.

### C.   The error was not harmless.

The legal principle—that a prosecutor may not "assure" a jury that facts not in evidence are harmful to the defendant's case—is so fundamental to due process that Patrick anticipates that the Commonwealth will concede that the prosecutor's comments were improper. The Commonwealth undoubtedly will agree that it may not try a defendant by, as courts have said, "innuendo," "unfair speculation," "mere suggestion,"

---

[63] 261 Ky. 384, 87 S.W.2d 946 (1935).
[64] *Id.* at 950.
[65] *Id.* at 951 ("Impressed with the force of appellant's contention, both as to the court's error in permitting this improper argument of evidence before it, which it had excluded, as well as the misconduct of the offending attorney in presenting it, we are led to conclude that by reason thereof the accused did not have a fair trial and are constrained to award the appellant the right to another trial, wherein these errors we deem reversibly prejudicial will not again occur.").
[66] *Id.* at 950.

or "phantom witnesses." Because it is clear that its comments were "patently improper," the Commonwealth is likely to argue that the above error was merely "harmless" in light of other evidence against Patrick presented at trial. The Court should reject that argument when the Commonwealth makes it.

Harmless error analysis applied to constitutional error, like due process violations,[67]

> involves considering the improper evidence in the context of the entire trial and asking whether there is a 'reasonable possibility that the evidence complained of might have contributed to the conviction.' A properly preserved constitutional error is reversible, in other words, unless it was 'harmless beyond a reasonable doubt.' **The question is not simply whether there was sufficient evidence to support the conviction aside from the improper evidence.** The question, rather, is whether the improper evidence was of a weight, was of a striking enough nature, or played a prominent enough role in the Commonwealth's case to raise a **reasonable possibility that it contributed to the conviction**.[68]

During jury deliberations, the jury sent the trial court a written note asking the following question: "Was this photo attached to Patrick Bakers (sic) iPhone/iPad accounts?"[69] The photograph in question was Commonwealth's Exhibit 4, the photograph of Patrick holding and looking at a cell phone. The court responded to the jury that it was required to use its memory of the evidence.

That the jury asked a question about how that photograph related to Patrick's iPhone and iPad demonstrates that the jury actively considered the photographic evidence in its deliberations. It also shows that the jury was confused about the evidence as it was presented during the Commonwealth's case-in-chief. Finally, it demonstrates the

---

[67] *See, e.g., St. Clair v. Commonwealth*, 451 S.W.3d 597, 631 (Ky. 2014) (noting that the jury's consideration of improper evidence violates due process, and was constitutional error).

[68] *Staples v. Commonwealth*, 454 S.W.3d 803, 826–27 (Ky. 2014) (citing *Crawford v. Washington*, 541 U.S. 36 (2004), and *Talbott v. Commonwealth*, 968 S.W.2d 76, 84 (Ky. 1998)) (internal citations omitted) (emphasis added).

[69] TR at 828.

"reasonable possibility" that the Commonwealth's assurances about the contents of Patrick's phone contributed to his conviction. The error cannot be harmless.

## II. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ADMITTED COMMONWEALTH'S EXHIBITS 2A, 2B, AND 4 UNDER KRE 403 BECAUSE THEY WERE UNDULY PREJUDICIAL, MISLEADING, AND CONFUSED THE JURY.

The trial court abused its discretion by admitting the photographs recovered from Patrick's iPad which originated on another device—Commonwealth's Exhibits 2a, 2b, and 4.[70] They should have been excluded under KRE 403, which states:  "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."[71] Kentucky case law has provided definitions for those terms. "The *probative value* of evidence is measured by the strength of its tendency to prove one side or the other of a **material issue** in the case."[72] "Evidence is *unfairly prejudicial* only if it ... may cause a jury to base its decision on something other than the established propositions in the case."[73] Additionally, *"'[c]onfusion of the issues'* is generally used to exclude evidence that creates side issues that distract jurors from the real issues of the case."[74] Finally, *"'[m]isleading the jury'* refers primarily to the **possibility of the jury overvaluing the probative value of a particular item of evidence** for reasons other than the emotional reaction associated with unfair prejudice."[75]

---

[70] This issue was preserved by Patrick's objections during trial. See VR 10/30/17, 04:01:44 (Exhibits 2a and 2b); VR 10/30/17, 04:14:55 and VR 10/30/17, 04:21:10 (Exhibit 4).
[71] KRE 403 (emphasis added).
[72] *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 717 (Ky. 2009) (emphasis added).
[73] *Id.* at 716 (emphasis added).
[74] *Id.* (emphasis added).
[75] *Id.* (emphasis added).

There are three inquiries that a trial court must make under KRE 403:

> (i) assessment of the probative worth of the evidence whose exclusion is sought; (ii) assessment of the probable impact of specified undesirable consequences likely to flow from its admission (i.e., "undue prejudice, confusion of the issues, or misleading the jury, ... undue delay, or needless presentation of cumulative evidence"); and (iii) a determination of whether the product of the second judgment (harmful effects from admission) exceeds the product of the first judgment (probative worth of evidence).[76]

At Patrick's trial, the photographs were unfairly prejudicial because they allowed the jury to draw unfair inferences about "something other than the established propositions in the case," *i.e.*, that Patrick took the photographs on his iPhone 5s. The evidence was also confusing and the Commonwealth presented it in a way that was misleading to the jury. Indeed, as noted above, the jury sent a written note asking about the link between the iPhone and iPad. Their probative value was also minimal because the strength of their tendency to prove a "material issue" in the case was minimal.

A trial court's evidentiary ruling is reviewed for an abuse of discretion.[77] "The test for an abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles."[78] Patrick preserved this error for appeal by objecting to their admission on the basis that the Commonwealth could not prove where they had originated, and that their relevance and probative value were minimal when weighed against whether they confused the jury and allowed it to draw unfair inferences.[79]

The Court has held that the admission of photographs that had "the potential for 'wrong emphasis' by the jury is sufficient to deny admission of the photographs" is

---

[76] *Webb v. Commonwealth*, 387 S.W.3d 319, 326 (Ky. 2012).
[77] *Id.* at 324.
[78] *Id.* at 324.
[79] VR 10/30/17, 04:01:44; VR 10/30/17, 4:18:02.

erroneous.[80] In *Mitchell v. Commonwealth*, the trial court admitted photographs of (1) a sweater hanging from the door of a pickup truck, and (2) the appellant wearing the same sweater. The sweater's importance was that police officers testified that the man they saw carrying property to a stolen truck was wearing the sweater, and "[t]hus, if the sweater belonged to the Appellant it would tend to tie him to the truck."[81] In fact, the police officers testified that they found the sweater in the living room of the residence into which the appellant had run during a police pursuit, moved it to the truck and took the picture. The appellant argued on appeal that the photographs were admitted in violation of KRE 403 and KRE 901 (authentication).

> This Court agreed, and held:

> A picture may also be inadmissible, although technically accurate, because it portrays a scene that is materially different from a scene that is relevant to one of the issues at trial. Before admitting a photograph into evidence, the trial court must find that the dangers of such distortion or **wrong emphasis** are **sufficiently remote** so that the trier of fact may consider the photographs for the purposes offered. These are principally questions of authentication.[82]

In Patrick's case, there was no allegation that the Commonwealth "staged" any of the photographs. To that extent, this case differs from *Mitchell*.

*Mitchell*'s rationale, however, should apply here. While it may be difficult to compare an easily understood "staged" photograph with a photograph's electronic metadata stored in an electronic device's "photostream," the principle that the trial court "must find that the dangers of such distortion or wrong emphasis are sufficiently remote" before admitting a photograph into evidence still applies. The trial court failed to find that

---

[80] *Mitchell v. Commonwealth*, 423 S.W.3d 152, 163 (Ky. 2014) (quoting *United States v. Stearns*, 550 F.2d 1167, 1170 (9th Cir. 1997)).

[81] *Id.*

[82] *Id.* (emphasis added).

the dangers that the jury at Patrick's trial would put the wrong emphasis on the photographs were sufficiently remote. Indeed, that is exactly what happened.

Exhibit 2a was the photograph depicting Elijah Messer and Donald Mills. Exhibit 2b was the photo's metadata. The Commonwealth apparently wished to introduce evidence that Patrick had been together with both men days before the incident, which it believed was relevant to Patrick's guilt or innocence. Patrick was not depicted in the picture, so the Commonwealth depended on the jury believing that Patrick actually took the photograph. Sergeant Collins testified that it was not taken on Patrick's iPad, and was taken on an Apple iPhone 5s. Thus, the Commonwealth hoped that the jury would believe that Patrick took it on his iPhone 5s and later transferred it to the iPad.

Exhibit 4 was the photograph of Patrick holding a cell phone. The Commonwealth stated that the photograph was relevant because it suggested that Patrick owned the iPad, which was not a material issue at trial and was established in other ways, including emails, a Skype account, and an iTunes account.[83] But, it was also misleading because it allowed the jury to draw unfair inferences. First, since Patrick is depicted holding a cell phone, it is a reasonable assumption that he could not have taken the photograph on his phone. Second, Sergeant Collins could not testify what type of device took the photograph. Unlike with Commonwealth's Exhibit 2a and 2b, there was absolutely no basis for the jury to be allowed to infer that Commonwealth's Exhibit 4 could have been taken on Patrick's iPhone 5s beyond mere speculation.

Indeed, even the trial court confused the evidence and made incorrect assumptions when overruling the defense's objection as to relevance: "the relevance of [Commonwealth's Exhibit 4] is they've got an iPhone 5s that's connected to his iPad in

---

[83] The Commonwealth found the iTunes account associated with the iPad, but not the iPhone 5s.

the approximate time period and he's present and that iPhone is there, and that picture that's connected to his iPad is on there that was taken."[84] In fact, Sergeant Collins did not know whether the photo came from an iPhone. Nor could he testify whether the iPad and iPhone were associated with the same iTunes account, which is how photos are shared, because that data was erased from the iPhone.

Additionally, the Commonwealth's statements during its closing argument about how photographs are shared between devices were misleading and confused the jury:

> With the photostream on the iPad and an iPhone S through Patrick Baker's iTunes account I think is what ... don't hold me to that ... I think it's some kind of iTunes account or Apple ... whatever the account was that the photostream went through. Also, we could have tied that iPhone to those photos also.[85]

That explanation, however, mischaracterizes the evidence in the record about where the photos originated. There was no evidence that Commonwealth's Exhibit 4 came from an iPhone. The Commonwealth did not recover the iTunes account associated with the iPhone. Overall, the Commonwealth's explanation was confusing and misleading because it allowed the jury to infer that <u>all</u> of the photos originated on Patrick's iPhone, when in fact that was not known.

It is no surprise, then, that the jury asked a written question during deliberations about Commonwealth's Exhibit 4. Specifically, the jury asked about whether a photograph "was attached to Patrick Bakers (sic) iPhone/iPad accounts."[86] The jury was told that the Commonwealth "could have tied that iPhone to those photos,"[87] but it apparently did not remember or understand the testimony about which device took the

---

[84] VR 10/30/18, 14:18:08.
[85] VR 11/02/17, 1:51:17.
[86] TR at 828.
[87] VR 11/2/17, 01:51:15- 01:51:58.

photograph. The jury also asked about the iPhone account, which strongly implies that the jury mistakenly believed the Commonwealth had recovered the account associated with the iPhone. It did not. The jury was confused about the evidence.

Whatever minimal probative value the photographs may have had was far outweighed by the "possibility of the jury overvaluing" their probative value. However the photographs tended to prove that Patrick Baker knew Donald Mills and Elijah Messer or that the iPad belonged to Patrick, the concomitant risk that the jury would be confused about other aspects of the photographs far exceeded their probative value. The trial court abused its discretion and the photographs should have been excluded under KRE 403.

## CONCLUSION

Patrick Baker did not receive a fair trial. The Commonwealth flagrantly and improperly urged the jury to try Patrick based on innuendo, speculation, and suggestion about certain photographs recovered from Patrick's iPad. The Commonwealth's comments during its closing argument were simply a microcosm of its overall handling of Patrick's electronic devices, from the May 2014 warrantless search to the Commonwealth's bad faith conduct relating to the deletion of the contents of Patrick's iPhone. To compound those issues, admission of the photographs was improper in the first place because their presentation to the jury was misleading and caused confusion, which far outweighed their minimal probative value. It is rare that a court can be certain about precisely which evidence the jury considered during its deliberations. But in this case, the Court can see that the jury was actively considering the photographic evidence and were confused about how that evidence related to Patrick's electronic devices, and

that there was a "reasonable possibility" they "might have contributed to the conviction." Thus, the error cannot be harmless as a matter of law.

For the foregoing reasons, Patrick respectfully requests that the Court reverse his convictions and remand his case for a new trial.

Respectfully submitted,

Stefan J. Bing
Gess Mattingly & Atchison, P.S.C.
201 West Short Street
Lexington, Kentucky 40507

William G. Crabtree
Attorney at Law
120 East Fourth Street
London, Kentucky 40741-1414

ATTORNEYS FOR APPELLANT

By: _____
Stefan J. Bing

# APPENDIX

# INDEX TO APPENDIX

Commonwealth's Exhibit 2a; Commonwealth's Exhibit 2b ....................................  1

Commonwealth's Exhibit 4 ........................................................................................  2

December 15, 2017 Judgment and Sentence on Plea of Not Guilty (TR 905-908).....  3



| | |
|---|---|
| File | IMG_2939.JPG |
| File Time | 05/08/2014 00:12:55 EDT |
| GPS Time | 2014:05:07 18:45:41 |
| Exif Time | 2014:05:07 14:45:42 Local |
| Camera | Apple iPhone 5s |
| Software | 7.1.1 |
| Coordinates | 36.9530 N, -83.6853 W |
| Source | private/var/mobile/Media/PhotoStreamsData/1028768668/102APPLE/IMG_2939.JPG |

**Commonwealth's EXHIBIT**

26





| AOC-450          Doc. Code: JSPN | JUDGMENT AND SENTENCE ON PLEA OF NOT GUILTY (JURY TRIAL) | Case No. 14-CR-00082-001 |
|---|---|---|
| Page 1 of 4<br>Commonwealth of Kentucky<br>Court of Justice | | Court: CIRCUIT<br><br>County: KNOX |

COMMONWEALTH OF KENTUCKY                                                                        PLAINTIFF

V.

**PATRICK BAKER**
ADDRESS:
23 Alpine Pass
London, KY 40741



DEFENDANT

[ ]  **Costs Waived Due to Indigence**        [ X ] **Installment/Deferred Payments**        (see page 3 for greater detail)

| SEX | RACE | BIRTHDATE | HAIR | EYES | HEIGHT | WEIGHT | SOCIAL SECURITY # | OPERATOR LIC NO. & STATE |
|---|---|---|---|---|---|---|---|---|
| M | W | 04/12/1978 | BL | BE | 5'11" | 170 | 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 | KYB9413796() |

**FOR YOUTHFUL OFFENDER provide School Name and Address:**

Defendant appeared in open court on <u>July 25, 2014</u> [ ] without counsel OR [X] with counsel, Honorable <u>Randall Jewell</u>. By Agreement with the attorney for the Commonwealth, Defendant **entered a plea of NOT GUILTY for the following charges contained in the Indictment:**

**(1) CT. 1 Murder**
committed on or about <u>May 9, 2014</u> when Defendant was <u>36</u> years old;

**(2) CT. 2 Robbery, 1st Degree**
committed on or about <u>May 9, 2014</u> when Defendant was <u>36</u> years old;

**(3) CT. 3 Unlawful Imprisonment, 1st Degree**
committed on or about <u>May 9, 2014</u> when Defendant was <u>36</u> years old;

**(4) CT. 4 Impersonating a Peace Officer**
committed on or about <u>May 9, 2014</u> when Defendant was <u>36</u> years old;

**(5) CT. 5 Tampering With Physical Evidence**
committed on or about <u>May 9, 2014</u> when Defendant was <u>36</u> years old;

**(6) CT. 6 Wanton Endangerment, 1st Degree**
committed on or about <u>May 9, 2014</u> when Defendant was <u>36</u> years old;

**(7) CT. 7 Wanton Endangerment, 1st Degree**
committed on or about <u>May 9, 2014</u> when Defendant was <u>36</u> years old;

AOC-450
Page 2 of 4

Case No. **14-CR-00082-001**

**(8) CT. 8 Wanton Endangerment, 1ˢᵗ Degree**
committed on or about **May 9, 2014** when Defendant was **36** years old;

**(9) CT. 9 Wanton Endangerment, 1ˢᵗ Degree**
committed on or about **May 9, 2014** when Defendant was **36** years old;

On **October 30, October 31, November 1, and November 2, 2017** the case was tried before a jury which returned the **following verdict:**

| **Charge** | **Sentence** |
|---|---|
| (1) Reckless Homicide, Five (5) Years to run concurrent with Count II, III, and IV. | |
| (2) Robbery, 1st Degree, Twelve (12) Years to run concurrent with Count I, III, and IV. | |
| (3) Impersonating a Peace Officer, One (1) Year to run concurrent with Count I, II, and IV. | |
| (4) Tampering With Physical Evidence, One (1) Year to run concurrent with Count I, II, and III. | |

For the purpose of **sentencing**, Defendant appeared in open court on **December 4, 2017,**
[ ]  without counsel  [ X ]  with counsel, Honorable **Billy Taylor,**

The Court inquired of Defendant (and counsel, if any) whether there was any legal cause why judgment should not be pronounced, and afforded Defendant (and counsel, if any) the opportunity to make statements in Defendant's behalf and to present any information in mitigation of punishment. The Court informed Defendant (and counsel, if any) of the factual contents and conclusions contained in the written Presentence Investigation Report (PSI) prepared by the Division of Probation and Parole and provided Defendant's attorney (if any) with a copy of the PSI although not the sources of confidential information. Defendant [X] agreed with the factual contents of the PSI **OR** [ ] was granted a hearing to controvert factual contents of the PSI.  Having given due consideration to the PSI prepared by the Division of Probation and Parole, and to the nature and circumstances of the crime, as well as the history, character and condition of Defendant, and any matters presented to the Court by the Defendant (or counsel, if any) **the Court finds:**

[X]  the Victim suffered death or serious physical injury;

[X]  imprisonment is necessary for protection of the public because:

   [X]  there is a likelihood that during a period of probation with an alternative sentencing plan or conditional discharge Defendant will commit a Class D or Class C felony or a substantial risk that Defendant will commit a Class B or Class A felony;

   [X]  Defendant is in need of correctional treatment that can be provided most effectively by the defendant's commitment to a correctional institution;

   [X]  probation, probation with an alternative sentencing plan, or conditional discharge would unduly depreciate the seriousness of the Defendant's crime;

   [ ]  Defendant is ineligible for probation, probation with an alternative sentencing, or conditional discharge because of the applicability of KRS 532.80, KRS 439.3401, or KRS 533.060;

[ ]  Defendant is eligible for probation, probation with an alternative sentencing plan, or conditional discharge as hereinafter ordered on AOC-455.

2

AOC-450
Page 3 of 4

Case No. **14-CR-00082-001**

Insufficient cause having been shown why judgment should not be pronounced, it is ADJUDGED BY THE COURT that Defendant is **GUILTY** of the following charge (s):

(1) **Reckless Homicide**
(2) **Robbery, 1st Degree**
(3) **Impersonating a Peace Officer**
(4) **Tampering With Physical Evidence**

**A.**   **Defendant is sentenced to:**

**1.**   **Courts Costs, Restitution, Fees and Fines**
**Defendant is ORDERED to pay:**

[X]   Court Costs of $130.00
[ ]   Restitution in the amount of $_____.
[ ]   Fees in the amount of $_____.
[ ]   Fine(s) in the amount of $_____

**2.**   **Method of Payment**

[ ]   Court Costs are **WAVIED**  due to Defendant having been found to be a "poor person" under KRS 453.190(2)
[ ]   At time of **SENTENCING**,  all Court Costs, Restitution, Fees and Fines shall be paid in full.
[X]   **Payment is DEFFERRED.**  All amounts shall be PAID IN FULL by _____, 2_____.
[X]   An **INSTALLMENT SCHEDULE IS ESTABLISHED.**  Beginning _____, 2____, Defendant is **ORDERED** to pay $_____      [ ] weekly        [ ] every other week       [ ] monthly
[X ] other **Pay Court Costs within sixty (60) days from release from custody.** until paid in full.

**3.**   **Directions for Payment of Restitution**

As specified in KRS 532.032 and 532.033, Defendant shall pay restitution pursuant to these conditions Restitution shall be paid through the

[ ]   Circuit Court Clerk with a 5% service fee;

[ ]   County Attorney; **OR**

[ ]   Commonwealth's Attorney

for the benefit of (name of specific person or organization)_____

**4.**   **Imprisonment**

**In addition to any monetary amount specified above, Defendant is sentenced to:**

[ ]   imprisonment for a maximum term of _____ [ ] probated **OR** [ ] probated with an alternative sentence as stated in the attached Order of Probation. (No fine imposed on KRS Chapter 31 indigent defendant).

[ ]   imprisonment  for a maximum term of _____ conditionally discharged as stated in the attached Order of Conditional Discharge. (No fine imposed on KRS Chapter 32 indigent defendant).

3

AOC-450
Page 4 of 4

Case No. 14-CR-00082-001

[X]    imprisonment for a maximum term of

**Reckless Homicide, Five (5) Years to run consecutively with Count II, III, and IV,**
**Robbery, 1st Degree, Twelve (12) Years to run consecutively with Count I, III, and IV,**
**Impersonating a Peace Officer, One (1) Year to run consecutively with Count I, II, and IV,**
**Tampering With Physical Evidence, One (1) Year to run consecutively with Count I, II, and III,**
**For a total of Nineteen (19) Years to serve in the State Penitentiary, as per order of the Judge.**

to run [ ] concurrently
[ ] consecutively with a sentence previously imposed on _____, _____.


**B.**    **It is ORDERED that Defendant's bond:**

[X ] be released. If bond was posted by Defendant, bond [ ] shall be [ ] shall not be applied to payment of remaining fines and costs; [ ] other _____,

[ ] is **not released** until [ ] further order of the Court [ ] payment of all fines and costs
[ ] other

**C.**    **It is further ORDERED that:**

[ ] upon release from incarceration or parole, Defendant, being found guilty of a felony under KRS Chapter 510, 529.100 involving sexual activity, 530.020, 530.064(1)(a), 531.310 or 531.320, is sentenced to a five (5) year period of **conditional discharge.**

[ ] pursuant to KRS 17. 510(2) Defendant has been convicted of a sex crime a crime against a minor, or has been committed as a sexually violent predator, and has been informed of the **duty to register** with the appropriate local Probation and Parole Office. (See JC-4).

[ ] Defendant shall not be released from probation supervision until **restitution** has been paid in full and all other aspects of probation have been successfully completed.

[ ] by a preponderance of evidence, the Court finds **hate was a primary factor** in the commission of the crime by the Defendant. KRS 532.031(2).

[ ] being sentenced to a term of incarceration for a nonstatus juvenile offense, moving traffic violation, criminal violation, misdemeanor, or Class D felony, Defendant is ordered to pay **costs of incarceration** in the amount of $_____ as allowed by KRS 532.352. Said costs shall be reimbursed to (specify state or local government)_____.

[X] Defendant shall be delivered to the custody of the Department of Corrections as such location within this Commonwealth as Corrections shall designate.

[ ] pursuant to KRS 17.170, Defendant having been convicted of a felony offense under KRS Chapter 510 (Sexual Offense) or KRS 530.020 (Incest), shall have a **sample of blood** taken by the Department of Corrections for DNA law enforcement identification purposes and inclusion in law enforcement identification databases.

[X] Defendant is hereby **credited with time spent in custody prior to sentencing**, namely _____ days as certified by the Jailer of **Department of Corrections** towards service of the maximum term of imprisonment (or toward payment of a fine at the rate of $5.00 per day). RCr 4.58

Date:  __12/04/__, 2017

HONORABLE DAVID L. WILLIAMS, JUDGE

4